**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: _____

TIKD SERVICES LLC;

               Plaintiff,

    v.

THE FLORIDA BAR; MICHAEL J. HIGER;
JOHN F. HARKNESS; LORI S. HOLCOMB;
JACQUELYN P. NEEDELMAN; GOLD AND
ASSOCIATES, P.A., d/b/a THE TICKET
CLINIC; MARK S. GOLD; TED L.
HOLLANDER; ROBERT AZCANO;
JEFFERY R. LOTTER; AND ROBERT R.
WILLHOIT,

               Defendants.

**COMPLAINT FOR DAMAGES**
**AND INJUNCTIVE RELIEF**

**<u>JURY TRIAL DEMANDED</u>**

## Table of Contents

I.     Introduction and summary ..................................................................................4

II.    The parties........................................................................................................6

III.   Jurisdiction and venue.......................................................................................7

IV.    Background facts ..............................................................................................8

       A.     TIKD .........................................................................................................8

       B.     The Ticket Clinic .........................................................................................9

       C.     The Florida Bar ........................................................................................10

       D.     The Florida Bar is not immune from federal or state antitrust liability ................13

V.     The Defendants' conspiracy in restraint of trade ...............................................15

       A.     The Florida Bar and The Ticket Clinic target TIKD and lawyers
              representing TIKD customers ........................................................................15

       B.     The Florida Bar and The Ticket Clinic continue their campaign against
              TIKD and its attorneys ................................................................................17

       C.     The Florida Bar refuses to correct The Ticket Clinic's false and
              anticompetitive statements or renounce its own anticompetitive acts .................21

       D.     The Florida Bar and The Ticket Clinic continue their conspiracy in
              restraint of trade in a joint effort to exclude TIKD from the market ...................22

       E.     The Defendants' conspiracy bears fruit as lawyers refuse to represent
              TIKD customers or cover for lawyers representing TIKD customers ..................23

VI.    Claims for relief .............................................................................................25

       Count I:     Combination and conspiracy in unreasonable restraint of trade in
                    violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 ...........................26

       Count II:    Monopolization, attempted monopolization, and combination and
                    conspiracy to monopolize in violation of Section 2 of the Sherman
                    Act, 15 U.S.C. § 2 ...............................................................................27

Count III:    Combination and conspiracy in unreasonable restraint of trade in violation of Fla. Stat. Ann. § 542.18 ........................................................... 28

Count IV:    Monopolization, attempted monopolization, and combination and conspiracy to monopolize in violation of Fla. Stat. Ann. § 542.19 ............. 29

Count V:    Tortious interference with business relationships ........................................ 29

VII.    Relief sought ........................................................................................................... 30

VIII.    Jury demand ............................................................................................................ 33

I.      **Introduction and summary.**

1.      Plaintiff TIKD Services LLC is an innovative Florida company that has come up with a better way for drivers to deal with traffic tickets.  TIKD combines the convenience of cell phones and the internet with a price guarantee and network of independent attorneys to offer an easy, one-stop experience:  a driver who receives a traffic ticket uploads the ticket, pays TIKD a fixed price, obtains an independent attorney to defend the ticket, and receives a guarantee from TIKD that the ticket will cost no more money, regardless of the outcome.

2.      TIKD carefully designed its services to comply with Florida law.  TIKD provides the technology and price guarantee; independent Florida lawyers provide the legal services.  By combining technology, data analysis, and a network of independent lawyers, TIKD has created an innovative and better way to make legal services available to the general public.  TIKD reduces the cost, inconvenience, and uncertainty of traffic tickets.  TIKD's service is enormously popular with Floridians:  over 5,000 Floridians have used TIKD since it launched in February 2017.

3.      Unfortunately, not everyone welcomes innovation and competition.  From the moment TIKD received publicity, it has been subject to a coordinated attack by The Florida Bar and a competitor in an effort to drive it out of business and to prevent lawyers from representing TIKD's customers.

4.      Even before TIKD launched in Florida, The Florida Bar began an "investigation" based on a baseless assertion that TIKD was practicing law in Florida.  TIKD has fully cooperated with this "investigation," but more than ten months later, the Bar's "investigation" continues with no end in sight.  Although The Florida Bar has no authority to decide what is, and what is not, the practice of law, the Bar has, through its actions and inaction, fostered the public

impression that TIKD's services are illegal.  The Bar issued an informal "opinion" with the intent and effect of scaring lawyers away from working with TIKD by giving the false impression working with TIKD would violate ethical rules.  When TIKD gave the Bar notice that private practice attorneys were claiming the Bar had determined that TIKD's services are illegal and asked the Bar to refute these claims, the Bar did nothing.  TIKD has repeatedly sought to meet with The Florida Bar to explain that its services are perfectly legal under Florida law, but the Bar has refused TIKD's requests.

5.     During the course of the Bar's interminable "investigation," The Ticket Clinic, a private law firm specializing in speeding ticket defense, complained to the Bar that TIKD "appeared to be" engaged in "the unlicensed practice of law."  Ticket Clinic lawyers have filed ethics complaints with The Florida Bar against every attorney they could find who has worked with TIKD's customers.  Inside and outside courtrooms, Ticket Clinic lawyers have threatened competing lawyers with bar complaints and disbarment if they represent TIKD customers.

6.     The Florida Bar and The Ticket Clinic lawyers are engaged in anticompetitive actions that violate the Sherman Antitrust Act and Florida antitrust law.  Their acts, deliberate silences, and threats have been effective in eliminating competition.  Individually and together, the Bar and The Ticket Clinic are conspiring in restraint of trade.

7.     The Florida Bar and The Ticket Clinic are reducing competition, increasing prices, and causing TIKD and its cooperating lawyers substantial economic harm.  Lawyers have quit working with TIKD, have refused to work with TIKD, and have refused to cover for lawyers working with TIKD.  TIKD has lost at least $3,800,000 in revenue due to these anticompetitive actions.  TIKD files this lawsuit to obtain injunctive relief preventing further anticompetitive actions and to recover treble damages under federal law of at least $11,400,000.

## II.     The parties.

### A.     The Plaintiff.

8.      Plaintiff TIKD Services LLC is a Delaware limited liability company with its principal place of business located in Miami-Dade County, Florida.

### B.     The Defendants.

9.      Defendant The Florida Bar is an agency of the State of Florida and is controlled by licensed Florida attorneys.  It may be served with citation by serving its Executive Director John F. Harkness at 651 E Jefferson Street, Tallahassee, FL 32399.

10.      Defendant Michael J. Higer is President of The Florida Bar.  He may be served with process at his place of employment, Berger Singerman, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, or wherever he may be found.

11.      Defendant John F. Harkness is Executive Director of The Florida Bar.  He may be served with process at his place of employment, 651 E Jefferson Street, Tallahassee, FL 32399, or wherever he may be found.

12.      Defendant Lori S. Holcomb is the Division Director of the Ethics and Consumer Protection Division of The Florida Bar.  She may be served with process at her place of employment, 651 E Jefferson Street, Tallahassee, FL 32399, or wherever she may be found.

13.      Defendant Jacquelyn P. Needelman is the Unlicensed Practice of Law Counsel for the Miami Branch of The Florida Bar.  She may be served at her place of employment, 444 Brickell Avenue, Suite M100, Miami, Florida 33131, or wherever she may be found.

14.      Defendant Gold and Associates, P.A., d/b/a The Ticket Clinic (the "Ticket Clinic") is a Florida corporation with its principal place of business located in Miami-Dade

County, Florida.  It may be served with citation by serving its registered agent for service of process, Chris Hernandez, at 18500 NE. 5th Avenue, 2nd Floor, Miami, FL 33179.

15.     Defendant Mark S. Gold is the president of and an attorney employed by The Ticket Clinic.  He may be served with process at his place of employment, 2298 South Dixie Highway, Miami, FL 33133, or wherever he may be found.

16.     Defendant Ted. L. Hollander is an attorney employed by The Ticket Clinic.  He may be served with process at his place of employment, 2219 Belvedere Road, West Palm Beach, FL 33406, or wherever he may be found.

17.     Defendant Robert Azcano is an attorney employed by The Ticket Clinic.  He may be served with process at his place of employment, 1333 W Colonial Dr., Orlando, FL 32804, or wherever he may be found.

18.     Defendant Jeffery R. Lotter is an attorney employed by The Ticket Clinic.  He may be served with process at his place of employment, 1333 W Colonial Dr., Orlando, FL 32804, or wherever he may be found.

19.     Defendant Robert R. Willhoit is an attorney employed by The Ticket Clinic.  He may be served with process at his place of employment, 513 W Vine Street, Kissimmee, FL 34741, or wherever he may be found.

**III.     Jurisdiction and venue.**

20.     Plaintiff brings this lawsuit against Defendants seeking monetary and injunctive remedies for the Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, pursuant to 15 U.S.C. §§ 15(a) and 26, their violation of Florida antitrust law, and The Ticket Clinic Defendants' tortious interference.

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1336, and 1337 and 15 U.S.C. §§ 15(a) and 26.

22.     This Court has personal jurisdiction over each Defendant because each Defendant resides in Florida and/or has substantial, continuous contacts with Florida.

23.     Venue is proper in this District because Defendant The Ticket Clinic resides in this District and all Defendants are residents of Florida.  *See* 28 U.S.C. §§ 1391(b)(1), (c). Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District.  28 U.S.C. § 1391(b)(2).

## IV.    Background facts.

### A.    TIKD.

24.     Plaintiff TIKD Services LLC ("TIKD") provides a technology platform and financial guarantee that offers drivers a simpler way to deal with traffic tickets.  For a fixed, pre-determined charge (which may be paid in installments), TIKD retains an independent attorney to defend a driver's traffic ticket and caps the driver's financial exposure for resolving that traffic ticket at the amount of TIKD's charge.

25.     The attorneys who represent TIKD's customers are not TIKD's employees.  They are independent practitioners over whom TIKD does not exercise any direction or control.  The attorneys and ticketed drivers voluntarily enter into direct attorney-client relationships in which TIKD does not participate.  TIKD pays the lawyers a flat rate per representation.  The attorneys do not pay TIKD any fees.

26.     TIKD does not guarantee the outcome of any ticket, but it pays any fine or court costs imposed, thereby providing the financial service of capping the drivers' financial exposure to the traffic ticket.  TIKD does not guarantee its customers will not receive "points" on their

drivers' licenses, but it guarantees a full refund of the amount paid to TIKD if points are assessed, while still covering any associated fine or court costs on the ticket.

27.     TIKD's retention of attorneys for its customers is legal under Florida law.  It is analogous to a liability carrier retaining and paying independent attorneys to represent its insureds, in exchange for the payment of insurance premiums.  Florida law permits attorneys to receive payment for their services from third parties, so long as the attorneys' independence is not compromised.  TIKD does not interfere with the attorneys' independence.  TIKD's service of capping its customer's financial exposure to fines and court costs on their traffic tickets is not the practice of law; indeed, it is a service attorneys do not provide.

28.     TIKD and its employees do not provide legal advice or legal representation.  All lawyering is done by independent, licensed Florida attorneys, without TIKD's participation or control.  TIKD has thousands of satisfied customers and no known consumer complaints.  TIKD is not practicing law or otherwise violating Florida law.

29.     The combination of services TIKD offers to consumers is innovative.  Attorneys who work with TIKD customers gain a competitive edge over attorneys who do not.

**B.     The Ticket Clinic.**

30.     Defendant Gold & Associates, P.C., d/b/a The Ticket Clinic ("The Ticket Clinic") is a law firm that specializes in traffic ticket defense.  The Ticket Clinic has numerous offices across Florida and Southern California.  The Ticket Clinic and its attorneys in Florida are in direct competition with the lawyers who handle tickets for TIKD's customers.

31.     The Ticket Clinic, which was founded by Defendant Mark Gold nearly 30 years ago, holds itself out to be "one of the nation's first and oldest law firms concentrating on defending drivers charged with traffic offenses."  Today, The Ticket Clinic claims to employ 300

people[1] and claims to have 28 offices in Florida.[2]   The Ticket Clinic has market power in the market for legal services to defend traffic tickets issued in Florida.  Upon information and belief, The Ticket Clinic controls—by a wide margin—the largest market share among Florida firms for such legal services.  In fact, according to Defendant Gold, he "created the entire industry," and "[n]o one has been able to imitate what we do."[3]

32.   Having amassed (and still amassing) considerable wealth through The Ticket Clinic's power in the Florida market,[4] Gold forecasts changes in his business model aimed at retaining The Ticket Clinic's current market share and expanding into new markets. Specifically, according to Gold, The Ticket Clinic is "moving toward a national platform that's less brick-and-mortar and more web-based and app-based."[5]   TIKD poses a direct competitive threat to The Ticket Clinic's efforts to retain its market power in Florida and expand its power elsewhere.

**C.   The Florida Bar.**

33.   Defendant The Florida Bar is an organization whose membership is comprised of all persons admitted by the Supreme Court of Florida to practice law in the state.  *See* Rules Regulating The Florida Bar ("Bar Rules") 1-3.1 (July 1, 2017).  The Florida Bar's stated purpose is "to inculcate in its members the principles of duty and service to the public, to improve the administration of justice, and to advance the science of jurisprudence."  Bar Rule 1-2.

34.   The Florida Bar is governed and administered by a 52-member Board of Governors, all of whom are elected by the members of the Bar in good standing.  Bar Rule 1-4.1;

---

[1] Jessica Lipscomb, "The Ticket Clinic Accused of Selling Bogus Driving School Diplomas," Miami New Times (Jan. 24, 2017), available at http://www.miaminewtimes.com/news/the-ticket-clinic-accused-of-selling-bogus-driving-school-diplomas-9087088.
[2] *See* https://www.theticketclinic.com/location.
[3] *See* Lipscomb, above note 1.
[4] *Id.*
[5] *Id.*

1-4.2(a).  Fifty of the fifty-two members of the Board of Governors must be members of the Bar in good standing.  Bar Rule 1-4.1.  A majority constitutes a quorum for the transaction of all business.  Bar Rule 2-3.11.  The Florida Supreme Court has no supervisory role over the Board of Governors' or the Bar's day-to-day activities or decision-making process.  The Supreme Court may, but need not, ratify or amend, after the fact, acts taken by the Board of Governors and the Bar.  Bar Rule 1-4.2(c).

35.     Only members in good standing are eligible to hold any elective office in The Florida Bar.  Bar Rule 2-4.4.  The Florida Bar operates largely through its staff, committees, sections, and divisions.  Among its committees are grievance committees, unauthorized practice of law committees, and a professional ethics committee.  Bar Rule 1-4.3.  The Board of Governors appoints members of the committees; the president replaces vacancies that occur during a member's term.  Bar Rule 2-8.

36.     While the Board of Governors is described as "an arm of the Supreme Court of Florida for the purpose of seeking to prohibit the unlicensed practice of law," Bar Rule 1-8.2, the Supreme Court does not actively supervise the Board or the Bar's investigations, enforcement activities, or other actions or statements about the practice of law unless an action is filed with the Supreme Court.

37.     Members of the Bar may request professional ethics opinions from the staff of the Bar or the professional ethics committee.  Bar Rule 2-9.4(a).  The opinions may be "appealed" to the Board of Governors, *id*, but there is no procedure for review and adoption of such opinions by the Florida Supreme Court.  Ethics opinions issued by Bar ethics counsel are to be identified as a "staff opinion" and are available only "for inspection or production."  Bar Rule 2-9.4(d).

Names and identifying information of anyone mentioned in a staff opinion is to be deleted before the opinion is released to anyone other than the requester. *Id*.

38.    Bar grievance committees are composed of "not fewer than 3 members," two-thirds of whom shall be lawyers. Bar Rule 3-3.4(c). The chair and vice-chair of the committees must be members of The Florida Bar. Bar Rule 3-3.4(e). All records of attorney grievance proceedings are confidential. Bar Rule 3-7.1(a).

39.    The Florida Bar has a standing committee on unlicensed practice of law and at least one circuit committee on unlicensed practice in each judicial circuit. Bar Rule 10-1.2. The Bar employs "UPL counsel" "to perform such duties, as may be assigned, under the direction of the executive director." Bar Rule 10-2.1(j). The standing committee must consist of twenty-five members, a majority of which are Bar members. Bar Rule 10-3.1(a). One-third of the committee constitutes a quorum. *Id*. The Board of Governors may use UPL counsel, bar counsel, and other necessary employees, including investigators, to assist the standing committee. Bar Rule 10-3.3. The Florida Supreme Court does not actively supervise the Bar's UPL counsel, the UPL committees, or the Board of Governors' actions.

40.    The Florida Bar circuit UPL committees are composed of "not fewer than 3 members," two-thirds of whom are lawyers. Bar Rule 10-4.1(a). The chair must be a member of The Florida Bar. Bar Rule 10-4.1(b). A quorum consists of three members or a majority, whichever is less. Bar Rule 10-4.1(c). The circuit committees are tasked with investigating reports of unlicensed practice of law and reporting to bar counsel. Bar Rule 10-4.1(e). Circuit committees are authorized to close cases, to settle cases with "cease and desist affidavits," and to forward to UPL staff counsel recommendations for litigation to be reviewed by the standing committee. *Id*. They are not actively supervised by the Florida Supreme Court.

41.     Nothing in the Bar Rules authorizes bar counsel, circuit committees, or the standing committee to issue opinions on whether any set of conduct constitutes the unlicensed practice of law.

**D.     The Florida Bar is not immune from federal or state antitrust liability.**

42.     Just two years ago, the United States Supreme Court issued a landmark antitrust ruling in *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 135 S. Ct. 1101 (2015) ("*Dental Examiners*").  In *Dental Examiners*, the Supreme Court held that state agencies which are controlled by persons who participate in the occupation the agency regulates are subject to antitrust liability, unless the agency's acts are actively supervised by politically accountable state officials and are taken pursuant to a clearly articulated state policy intended to restrict competition.  *Id.* at 1114.  The Supreme Court observed, quite logically, that "[w]hen a state empowers a group of market participants to decide who can participate in its market, and on what terms, the need for supervision is manifest."  *Id.*

43.     Like the North Carolina dental board that was held to be not immune from antitrust liability, The Florida Bar is composed of licensed professionals who participate actively in the market the Bar regulates.  Indeed, The Florida Bar followed the *Dental Examiners* case closely and hoped for a different ruling.  The Bar was so worried, in fact, that it filed an amicus brief, arguing that unless the Supreme Court granted the North Carolina dental board immunity, The Florida Bar would face antitrust liability based on its unsupervised regulation of the market for legal services.[6]  The Florida Bar specifically predicted that, unless the Supreme Court

---

[6] *See* Brief of North Carolina State Bar, The North Carolina Board of Law Examiners, The West Virginia State Bar, the Nevada State Bar and The Florida Bar, as *Amici Curiae* in Support of Petitioner, No. 13-534, *The North Carolina State Board of Dental Examiners v. Federal Trade Commission* (filed May 30, 2014).  Available at https://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/BriefsV4/13-534_pet_amcu_ncsb-etal.authcheckdam.pdf (last visited October 24, 2017).

extended antitrust immunity to cover the dental board, the Bar would face civil liability for treble damages and attorney's fees, and possibly criminal prosecution, under federal antitrust laws.[7]

44.    The Supreme Court rejected The Florida Bar's argument.  The Court held that the North Carolina dental board was not immune from federal antitrust laws, and that its anticompetitive conduct which had effectively excluded teeth whiteners from the North Carolina market violated the Sherman Antitrust Act.  *Dental Examiners*, 135 S. Ct. at 1114-15.

45.    Subsequently, some state bar associations took action in an effort to reduce their legal exposure under *Dental Examiners*.  The Washington State Bar Association suspended issuing advisory opinions that could be interpreted as having anticompetitive effects in the legal services market.[8]  The North Carolina State Bar sponsored legislation requiring the state attorney general to actively supervise its actions taken against perceived competitors alleged to be engaged in the unauthorized practice of law.[9]  The legislation did not pass, and the North Carolina State Bar promptly faced a $10.5 million lawsuit for illegally excluding LegalZoom's legal service contracts from sale in North Carolina.[10]

46.    Despite the position it took before the Supreme Court, The Florida Bar made no changes to its structure, supervision, or processes after the *Dental Examiners* case was decided. As its *amici* brief admitted and accurately predicted, the *Dental Examiners* case means the Bar's anticompetitive activities are now fully subject to the reach of federal and state antitrust laws and the remedies available under those laws:  treble damages, preliminary and permanent injunctions, and attorney's fees.

---

[7] *Id*. at 3.
[8] *See* https://www.bna.com/washington-bar-suspends-n57982065288/ (last visited October 24, 2017).
[9] *See* Senate Bill 353, North Carolina General Assembly (filed March 32, 2105); Ronald L. Gibson, *An Update on Legislation and Litigation*, N.C. State Bar J. at 7-8 (Summer 2015).
[10] *See* Complaint for Damages and Injunctive Relief, *LegalZoom.com, Inc. v. North Carolina State Bar, et al.*, No. 1:15-CV-439 (M.D.N.C. June 3, 2015) available at
http://online.wsj.com/public/resources/documents/2015_0604_legalzoom.pdf (last visited October 24, 2017).

Plaintiff brings this action under the federal and state antitrust laws to challenge and seek redress from certain anticompetitive, exclusionary, and monopolistic conduct by the Florida State Bar, The Ticket Clinic, and other actors.  Given the clear absence of state-action immunity, the Defendants' acts described below violate the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2.

## V.     The Defendants' conspiracy in restraint of trade.

### A.     The Florida Bar and The Ticket Clinic target TIKD and lawyers representing TIKD customers.

47.     Shortly after announcing its business in Florida, public attention was drawn to TIKD's promising goal of upending the often frustrating and time-consuming process of fighting traffic tickets.  Notably, in a December 15, 2016, article, the *Miami Herald* described how, within "a whole industry of ticket lawyers," TIKD offers a business model that is more appealing to consumers than the traditional model offered by competitors like The Ticket Clinic.[11]  Indeed, the *Miami Herald* quoted a TIKD customer "who had used Ticket Clinic once and found the process cumbersome," and who was relieved to find TIKD's process "ridiculously easy."[12]

48.     However, as reported by one Miami news station, "[t]he TIKD app launched in South Florida and quickly became a sensation but not everyone loves it.  Traffic ticket titan Mark Gold, founder of The Ticket Clinic, is trying to get it shut down."[13]  In reaction to TIKD's unique competitive threat, Gold, The Ticket Clinic, and The Florida Bar embarked on a multi-pronged campaign aimed at putting TIKD out of business.

---

[11] Nancy Dahlberg, "Nabbed?  Tech startup will fight your traffic ticket-with a no-points guarantee," Miami Herald (December 14, 2016), available at http://www.miamiherald.com/news/business/technology/article120874823.html.
[12] *Id.*
[13] David Sutta, "New Traffic Ticket App TIKD Has Some Ticked Off," CBS Miami (April 18, 2017), available at http://miami.cbslocal.com/2017/04/18/traffic-ticket-app-tikd-ticket-clinic-battle/.

49.     First, in a December 28, 2016, letter to TIKD, The Florida Bar stated that it had "opened an unlicensed practice of law" investigation of TIKD "based on the article published in the Miami Herald on December 15, 2016."[14]

50.     Next, Ted Hollander, a Ticket Clinic lawyer, filed a hand-written complaint with The Florida Bar against TIKD on February 27, 2017.[15]  In its entirety, Hollander's complaint stated the following:  "TIKD.com seems to be a service that provides legal help, but is operated by non-lawyers.  It seems to violate UPL rules."  Hollander cited no statute, rule, or case law to support his two-sentence complaint.  Hollander's complaint was objectively baseless.

51.     Next, on April 7, 2017, Gold called an attorney representing TIKD customers to tell him that, unless he ended his relationship with TIKD, Gold would report him to The Florida Bar and have him disbarred.  Clearly coordinating his action with Gold, that same day Hollander called a different attorney representing TIKD customers to convey the same message:  if he continued representing TIKD customers, Hollander would report him to The Florida Bar and have him disbarred.  Gold's and Hollander's threats were aimed at harassing these attorneys, interfering with TIKD's business relationships, and eliminating competition.

52.     In fact, Hollander, on behalf of The Ticket Clinic, began filing baseless ethics complaints with the Bar against lawyers who represented TIKD customers.  The intent and effect of these ethics complaints was to sow doubt and fear among those lawyers so they would cease representing TIKD customers, lose the advantage offered by working with TIKD, and stop competing with The Ticket Clinic.

53.     Finally, on the same day Gold and Hollander threatened two lawyers, The Ticket Clinic sued TIKD in Florida state court, alleging TIKD was "improperly and illegally

---

[14] Exhibit 1, attached.
[15] Exhibit 2, attached.

compet[ing] with The Ticket Clinic" by allegedly engaging in "Unauthorized Practice of Law." The Ticket Clinic's lawsuit was baseless and filed without regard to the merits of its claims.

54.    TIKD was forced to respond with its own lawsuit against The Ticket Clinic and Gold, alleging that Gold and Hollander's April 7, 2017, calls to lawyers representing TIKD customers constituted tortious interference.  After TIKD moved to dismiss The Ticket Clinic's lawsuit as baseless, the parties entered into a settlement agreement effective August 10, 2017, and both lawsuits were dismissed without prejudice.

55.    TIKD believed it had bought peace with The Ticket Clinic until the Florida Bar completed its UPL investigation:  TIKD agreed not to refile a claim against The Ticket Clinic and Gold based on the facts alleged in its state court lawsuit until the Bar's UPL investigation was completed, or for eight months from the date of the settlement, whichever came first. However, TIKD was wrong.  The settlement did not buy peace.  Rather, The Ticket Clinic and the Florida Bar actually *accelerated* their campaign to put TIKD out of business.[16]

**B.    The Florida Bar and The Ticket Clinic continue their campaign against TIKD and its attorneys.**

56.    Within two weeks of the August 10, 2017, settlement, Hollander was publicly announcing his expectation that the Bar would shut down TIKD, stating he was "confident that the Bar will take the necessary steps to end [TIKD's] service."[17]

57.    Ticket Clinic attorneys resumed filing baseless ethics complaints with The Florida Bar against lawyers who represented TIKD customers.  As before, these complaints were an anticompetitive weapon aimed at coercing lawyers to cease working with TIKD and thus stop competing with The Ticket Clinic.

---

[16] As noted below, TIKD does not base its claims against The Ticket Clinic or its lawyers on any actions taken by them before August 11, 2017.

[17] Nancy Dahlberg, "Want to fight a traffic ticket with your phone? Lawyers want to stop you," Miami Herald (August 23, 2017), available at http://www.miamiherald.com/news/business/article168989742.html.

58.     Shortly after Hollander's public declaration of his "confidence" that the Florida Bar would shut down TIKD, the Bar issued a written staff opinion dated August 29, 2017 (the "Bar Staff Opinion").  The Florida Bar's staff, acting as agents of The Florida Bar, opined that participating in a program suspiciously similar to TIKD "raises ethical concerns regarding fee splitting with a nonlawyer, solicitation, indirect attorney client relationships, the unlicensed practice of law and financial assistance to clients."

59.     The Bar Staff Opinion was not supervised by the Florida Supreme Court.  Nor was it issued pursuant to a clearly articulated state policy.  Indeed, nothing in the Bar Rules authorizes The Florida Bar to issue an opinion on what constitutes the unauthorized practice of law.

60.     The Bar did not publish its Staff Opinion on its website or otherwise publicize the opinion.  It did not send a copy to TIKD or TIKD's counsel, even though its UPL investigation remained pending.  The Ticket Clinic, however, somehow obtained a copy of the Bar Staff Opinion and began to use it offensively and deceptively against TIKD, with the Bar's tacit and then express consent.

61.     Upon information and belief, the Bar Staff Opinion was intended to appear to address TIKD's business, but was drafted to be intentionally vague to provide the Bar plausible deniability.  However, the Bar understood, knew, and intended that the Bar Staff Opinion would be used by The Ticket Clinic and its attorneys to deter lawyers from representing TIKD customers and thereby competing with The Ticket Clinic.  The Bar understood, knew, and intended that its Bar Staff Opinion would be mispresented as an official "opinion" or "finding" by the Bar that TIKD's business was illegal and that any attorney representing TIKD attorneys would be violating Florida ethics rules.

62.     The delivery of the Bar Staff Opinion to The Ticket Clinic, combined with The Ticket Clinic's anticompetitive use of the Opinion described below, was part of a concerted action to exclude TIKD from the relevant market.

63.     Touting the Staff Opinion as proof that the Bar had concluded TIKD's business was illegal, Hollander told traffic offense lawyers in Volusia County on September 19, 2017, that they should not "cover" cases for an attorney named Jeremy Simon, because Simon represented TIKD customers.  Hollander conveyed this message in open court, in a court in which the presiding officer was a former employee of Hollander.

64.     Similarly, an attorney and an associate who had agreed to cover TIKD customers' cases were approached by two different attorneys employed by The Ticket Clinic in two different court houses to pressure them to stop covering cases for Simon and TIKD.  Later that day, after The Ticket Clinic's attorneys reported this attorney's work with TIKD customers to others at The Ticket Clinic, Hollander called the attorney directly and falsely claimed "two findings were made by The Florida Bar regarding TIKD cases," suggested that working with TIKD amounted to unethical fee sharing, and told the attorney to "call the Bar Ethics and Bar Counsel Jackie Needelman" to confirm what he was saying.

65.     Julia McKee, another attorney who had agreed to cover TIKD cases for Simon, on September 26, 2017, at the Orange County Courthouse, was confronted by Defendant Jeffery Lotter of The Ticket Clinic.  Lotter, after confirming that McKee was covering cases for Simon, told McKee she was "seriously risking [her] license by doing this," and she should "call The Florida Bar ethics hotline."  Defendant Lotter also alleged that "the attorney that was here before [McKee] called the hotline" and then stopped working on cases for TIKD.  Mr. Lotter's threat was made in front of two court clerks, the bailiff, and a courtroom deputy.

66.     Minutes later, McKee received multiple phone calls and text messages from Defendant Robert Willhoit of The Ticket Clinic and his wife.  In one text message identified as "urgent," McKee was urged to talk with Willhoit.  When McKee called, Willhoit told McKee that he worked for The Ticket Clinic, and that McKee's name "came up" on a "group text" among lawyers affiliated with The Ticket Clinic.  Willhoit falsely claimed "the Bar issued a letter saying that TIKD is not allowed because it's UPL or fee splitting," and he said that his "boss" at The Ticket Clinic "says for you to call Jackie Needelman" at The Florida Bar.

67.     On September 26, 2017, the same day The Ticket Clinic's lawyers warned McKee that she should "call The Florida Bar" because she was "risking her license," Defendant Lori Holcomb told counsel for TIKD that she believed TIKD was engaging in unlicensed practice of law.  Holcomb cited no applicable authority; despite repeated requests by TIKD for authority supporting Holcomb's statement, none has been provided.

68.     The next day, again in the Orange County Courthouse, Defendant Robert Azcano of The Ticket Clinic saw McKee at the 10:00 a.m. docket and immediately communicated McKee's presence to the other Ticket Clinic conspirators.  Minutes later, McKee received a call from Willhoit, who told her that lawyers on The Ticket Clinic "group text" wanted to know if she had called Needelman yet.  Willhoit was included on the TIKD-related "group text" because, in the past, he had covered a hearing for Simon.  When The Ticket Clinic learned that Willhoit covered for Simon, he was added to the group text to ensure that he did not cover any more cases for TIKD customers.

69.     On September 28, 2017, Simon, having been told by The Ticket Clinic to call the Bar, spoke with Needelman.  Needelman told Simon that a committee of the Bar had "found" or

"recommended" that TIKD was engaged in unlicensed practice of law.  No committee had made

such a "finding" or "recommendation," or was authorized to do so.

<b>C.    The Florida Bar refuses to correct The Ticket Clinic's false and anticompetitive statements or renounce its own anticompetitive acts.</b>

70.    Fed up with The Ticket Clinic's smear campaign based on the Florida Bar's

interminable UPL investigation and Bar Staff Opinion, on September 28, 2017, TIKD's

attorneys wrote the Bar.[18]  TIKD requested, among other things, that the Bar confirm, publicly,

that it had not yet reached any conclusion or made any finding that TIKD was engaged in the

unauthorized practice of law or fee-splitting; that the Bar's UPL Standing Committee is not a

court and does not make findings or conclusions; and that only the Florida Supreme Court can

decide whether TIKD is engaged in the unlicensed practice of law.[19]  These were reasonable

requests directed towards ending the anticompetitive actions of The Ticket Clinic and the Bar

occurring while the Bar's investigation continued.

71.    The Florida Bar refused, without explanation.  On September 29, 2017, Holcomb

advised TIKD's counsel that the Bar would make no public statement to dispel the impression

that it had already decided TIKD was engaged in the unlicensed practice of law and fee-splitting,

and that any lawyer representing TIKD's customers is committing ethical violations.

72.    TIKD had also requested that it be allowed to appear before the Bar's UPL

Standing Committee when it considered the Bar's investigation of TIKD at its meeting on

October 13, 2017, so that TIKD could explain how it was in full compliance with Florida law.[20]

Again, the Bar refused, without explanation.  The Chair of the Standing Committee simply stated

that "you will not be able to participate in the October 13, 2017, meeting of the Standing

---

[18] Exhibit 3, attached.
[19] *Id*.
[20] Exhibit 4, attached.

Committee on the Unlicensed Practice of Law as requested in your letter of September 28, 2017."[21]   Denied the right to appear in person, TIKD provided a 9-page, single-spaced explanation of its business and its compliance with Florida law to committee members.[22]   TIKD carefully laid out how it had structured its service to avoid the unlicensed practice of law, fee-splitting, or other legal or ethical pitfalls.   The Standing Committee provided no acknowledgement or response to TIKD's submission.  Despite TIKD's submission, the Standing Committee did not close the Bar's investigation of TIKD, which continues to drag on into its eleventh month without resolution.

> **D.    The Florida Bar and The Ticket Clinic continue their conspiracy in restraint of trade in a joint effort to exclude TIKD from the market.**

73.    Armed with the Bar Staff Opinion, The Ticket Clinic continued to threaten lawyers.  On October 6, 2017, Hollander sent a copy of the Bar Staff Opinion to Christopher White, an attorney representing TIKD customers.

74.    Frustrated that White nonetheless continued to represent TIKD customers, Hollander filed an ethics complaint against White with The Florida Bar on October 12, 2017.

75.    That same day, Hollander also filed an ethics complaint with The Florida Bar against McKee for her work with TIKD customers.  Both complaints are objectively baseless.

76.    Hollander also circulated the Bar Staff Opinion to attorneys representing TIKD customers in Broward County, threatening those attorneys with bar complaints.  As a result of those threats, these attorneys ceased working on TIKD cases in Broward County.

77.    The Bar knew about The Ticket Clinic's anticompetitive conduct.  By refusing to publicly correct the Ticket Clinic's misstatements, the Bar knowingly facilitated the Ticket Clinic's anticompetitive conduct.

---

[21] Exhibit 5, attached.
[22] Exhibit 6, attached.

78.     On at least one occasion, the Bar also facilitated the Ticket Clinic's conduct through direct, improper information-sharing between Needelman and Hollander.  After one of his Ticket Clinic conspirators threatened a lawyer with an ethics complaint and told the lawyer to call Needelman, Hollander called Needelman to confirm that the target attorney had, in fact, called.  Needelman improperly shared with Hollander that she was called by an anonymous attorney presumed to be the attorney targeted by the Ticket Clinic.  This information was then used by Hollander in an ethics complaint he filed against the target attorney.

**E.      The Defendants' conspiracy bears fruit as lawyers refuse to represent TIKD customers or cover for lawyers representing TIKD customers.**

79.     The Ticket Clinic and The Florida Bar have driven lawyers away from TIKD, thereby damaging TIKD's business and the business of lawyers who currently or formerly worked with TIKD.  Hollander admitted as much in his correspondence with the Bar in connection with one of his ethics complaints.  In an August 21, 2017, letter to the Bar, Hollander crowed about the success of his anticompetitive acts, telling the Bar "it appears . . . [the attorney] has ceased his affiliation with TIKD.  I applaud him for that decision."

80.     Many lawyers have ended their work with TIKD customers in response to The Ticket Clinic's and the Bar's anticompetitive actions, including the following:

- On August 14, 2017, an attorney who had covered cases for Simon in Orlando informed Simon that he would no longer cover cases because he had "heard the bar has had issues with [TIKD's] app and The Ticket Clinic in particular is going after anyone who uses it . . . so sorry I can't cover."

- On August 28, 2017, a lawyer covering tickets for Simon decided that he would no longer cover any cases for TIKD because he did not "want a bar complaint."  The attorney further revealed that "if you speak with the Bar [UPL] attorney [Jackie

Needelman], she relates bad things" in connection with TIKD. The attorney explained that he "was deeply concerned after speaking with [Needelman] which is why [I] can't do any Tikd stuff."

- On September 19, 2017, an attorney who covered cases for Simon in Volusia County reported that he would no longer work on TIKD cases after being pressured by Defendant Hollander. The attorney feared he would be "blackballed" if he continued to work on TIKD cases.

- On October 6, 2017, an attorney who covered cases for Simon in Tampa reported that he could no longer cover tickets for Simon because he "got the call from Ted [Hollander]," and "supposedly there is a staff opinion from The Florida Bar from August 29th."

- On October 19, 2017, an attorney working with TIKD received a letter from a law firm in Fort Lauderdale that had, until that time, covered traffic ticket cases for him. The letter stated that "[w]hile in court today it came to our attention," presumably through a Ticket Clinic attorney, "that the point of inception for these cases was through the Tick'd App." The letter asked that the attorney "refrain from contacting our office for coverage for any future matters" because the attorney's cases originated from TIKD.

- In this same time period, attorneys covering TIKD cases in Manatee County, Pasco County, and Broward County reported that they would no longer cover TIKD cases out of fear of Bar complaints by The Ticket Clinic.

81. In a final attempt to convince the Bar to correct its course of conduct, TIKD requested to meet with Bar leadership. The Bar refused in a single sentence: "Upon consideration, we are declining your request to have a meeting."[23]

---

[23] Exhibit 7, attached.

82.    The Defendants' anticompetitive conduct has dramatically impacted TIKD's business and the business of lawyers who represented or are still representing TIKD customers. It has resulted in a reduction of competition among lawyers providing ticket defense representation.  But for the Defendants' conduct, TIKD would be offering its services in every county in Florida and would be competing with The Ticket Clinic in every county where it operates.  TIKD estimates its current lost revenue due to the Defendants' conduct at more than $3,800,000.  This financial loss is a direct result of the campaign waged by The Ticket Clinic and The Florida Bar aimed at denying TIKD access to the business relationships it needs to compete.

## VI.    Claims for Relief.

83.    Additional individuals, firms, and other entities not named as Defendants in this Complaint also conspired with Defendants by aiding, abetting, and performing acts in furtherance of this conspiracy.  The Defendants are liable for the acts committed by their co-conspirators.

84.    Defendants' activities and the conduct of Defendants and their co-conspirators occurred in and/or affected a substantial portion of interstate commerce, including trade and commerce to, from, and within this District.  Defendants' horizontal agreements to exclude TIKD and attorneys working for TIKD has had a market-wide impact affecting interstate commerce.  Plaintiff's and The Ticket Clinic's competing services are provided to both residents and non-residents of Florida, and their services generate revenues from out-of-state.  Indeed, Plaintiff's platform is designed to be just as accessible to non-residents as it is to residents. Plaintiff TIKD and Defendant The Ticket Clinic also operate in multiple states, and both wish to expand into other states.  The Ticket Clinic's anticompetitive actions seek to prevent TIKD from expanding nationally, thereby facilitating its own expansion.

85.     For purposes of Plaintiff's claims below, the relevant market in which to evaluate Defendants' conduct is the provision of access to legal services to defend traffic tickets issued in Florida (the "Relevant Market").

86.     The Florida Bar, through its agents, engaged in a concerted effort to exclude TIKD from the Relevant Market by enabling and reinforcing The Ticket Clinic's anticompetitive propaganda campaign.   Because The Florida Bar is, itself, controlled by attorneys, and is therefore composed of market participants in the Relevant Market and competitors of TIKD, The Florida Bar engaged in concerted action separate, apart, and in addition to its direct coordination and conspiracy with The Ticket Clinic.   Further, The Florida Bar's reinforcement of The Ticket Clinic's anticompetitive message plainly exceeds The Florida Bar's narrow authority to investigate alleged unauthorized practice of law and file proceedings before the Florida Supreme Court.

**Count I:      Combination and conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.**

87.     Plaintiff incorporates by reference as if fully set forth the allegations in all other paragraphs of this Complaint.   Plaintiff does not base claims against The Ticket Clinic or its lawyers on any acts taken by them prior to August 11, 2017.

88.     As described above, beginning at least as early as December 28, 2016, and continuing through the filing of this Complaint, Defendants and their co-conspirators entered into a continuing agreement, understanding, combination and/or conspiracy in unreasonable restraint of trade, resulting in harm both to competition generally and to Plaintiff specifically, in violation of Section 1 of the Sherman Act.

89.     The unlawful combination and conspiracy by Defendants and their co-conspirators, in which they are refusing to deal with and seeking to exclude TIKD and attorneys

representing TIKD customers from the Relevant Market, constitutes a boycott, a collective refusal to deal, and the exclusion of competitors from the Relevant Market by market participants with market power, and thus a per se antitrust violation.  The unlawful combination and conspiracy by Defendants and their co-conspirators also resulted in an unreasonable restraint of trade.

90.    Defendants' unlawful combination and conspiracy injured competition in the Relevant Market, including by reducing consumer choice, reducing the output of legal services, and raising prices, and proximately caused Plaintiff's economic loss and damages, which it seeks to recover.

**Count II:**      **Monopolization, attempted monopolization, and combination and conspiracy to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.**

91.    Plaintiff incorporates by reference as if fully set forth the allegations in all other paragraphs of this Complaint.  Plaintiff does not base claims against The Ticket Clinic or its lawyers on any acts taken by them prior to August 11, 2017.

92.    As described above, beginning at least as early as December 28, 2016, and continuing through the filing of this Complaint, Defendants and their co-conspirators have monopolized, through the willful acquisition, maintenance, and/or enhancement of monopoly power; attempted to monopolize; and/or combined and conspired to monopolize the Relevant Market, resulting in harm both to competition generally and to Plaintiff specifically, in violation of Section 2 of the Sherman Act.

93.    Defendants' unlawful monopolization, attempted monopolization, and/or combination and conspiracy to monopolize both injured competition in the Relevant Market, including by reducing consumer choice, reducing the output of legal services, and raising prices, and resulted in the unlawful exclusion of Plaintiff from the Relevant Market.  Defendants'

unlawful monopolization, attempted monopolization, and/or combination and conspiracy to monopolize proximately caused Plaintiff economic loss and damages, which Plaintiff seeks to recover.

**Count III:    Combination and conspiracy in unreasonable restraint of trade in violation of Fla. Stat. Ann. § 542.18.**

94.     Plaintiff incorporates by reference as if fully set forth the allegations in all other paragraphs of this Complaint.  Plaintiff does not base claims against The Ticket Clinic or its lawyers on any acts taken by them prior to August 11, 2017.

95.     As described above, beginning at least as early as December 28, 2016, and continuing through the filing of this Complaint, Defendants and their co-conspirators entered into a continuing agreement, understanding, combination and/or conspiracy in unreasonable restraint of trade, resulting in harm both to competition generally and to Plaintiff specifically, in violation of Fla. Stat. Ann. § 542.18.

96.     The unlawful combination and conspiracy by Defendants and their co-conspirators, in which they are refusing to deal with and seeking to exclude TIKD and attorneys representing TIKD customers from the Relevant Market, constitutes a boycott, a collective refusal to deal, and the exclusion of competitors from the Relevant Market by market participants with market power, and thus a per se antitrust violation.  The unlawful combination and conspiracy by Defendants and their co-conspirators also resulted in an unreasonable restraint of trade.

97.     Defendants' unlawful combination and conspiracy injured competition in the Relevant Market, including by reducing consumer choice, reducing the output of legal services, and raising prices, and proximately caused Plaintiff's economic loss and damages, which it seeks to recover.

**Count IV:**      **Monopolization, attempted monopolization, and combination and conspiracy to monopolize in violation of Fla. Stat. Ann. § 542.19.**

98.     Plaintiff incorporates by reference as if fully set forth the allegations in all other paragraphs of this Complaint.  Plaintiff does not base claims against The Ticket Clinic or its lawyers on any acts taken by them prior to August 11, 2017.

99.     As described above, beginning at least as early as December 28, 2016, and continuing through the filing of this Complaint, Defendants and their co-conspirators have monopolized, through the willful acquisition, maintenance, and/or enhancement of monopoly power; attempted to monopolize; and/or combined and conspired to monopolize the Relevant Market, resulting in harm both to competition generally and to Plaintiff specifically, in violation of Fla. Stat. Ann. § 542.19.

100.     Defendants' unlawful monopolization, attempted monopolization, and/or combination and conspiracy to monopolize both injured competition in the Relevant Market, including by reducing consumer choice, reducing the output of legal services, and raising prices, and resulted in the unlawful exclusion of Plaintiff from the Relevant Market.  Defendants' unlawful monopolization, attempted monopolization, and/or combination and conspiracy to monopolize proximately caused Plaintiff economic loss and damages, which Plaintiff seeks to recover.

**Count V:**      **Tortious interference with business relationships.**
                  **(against The Ticket Clinic Defendants only)**

101.     Plaintiff incorporates by reference as if fully set forth the allegations in all other paragraphs of this Complaint.  Plaintiff does not base claims against The Ticket Clinic or its lawyers on any acts taken by them prior to August 11, 2017.

102.    Plaintiff has business relationships with the independent attorneys who represent TIKD customers, and under those business relationships Plaintiff has protectable legal rights.

103.    The Ticket Clinic and Defendants Gold, Hollander, Azcano, Lotter, and Willhoit (collectively, the "Ticket Clinic Defendants") had knowledge of Plaintiff's business relationships with these independent attorneys, as demonstrated by The Ticket Clinic Defendants' express reference to those relationships when communicating with the attorneys themselves and with The Florida Bar.

104.    The Ticket Clinic Defendants interfered with Plaintiff's business relationships, and that interference was through improper, intentional, malicious, and unjustified means.  The Ticket Clinic Defendants' interference was undertaken with the intent to harm Plaintiff's business reputation and cause financial damage to Plaintiff.

105.    The Ticket Clinic Defendants lacked any privilege to interfere with Plaintiff's business relationships.

106.    As a result of The Ticket Clinic Defendants' tortious interference, Plaintiff has suffered damages, including loss of revenue from existing and potential customers, loss of goodwill, and other damage to TIKD's brand and reputation.

## VII.    Relief Sought.

107.    Defendants' illegal and unreasonable anticompetitive and monopolistic conduct, as described above, has caused Plaintiff substantial economic harm.  Defendants' and their co-conspirators' illegal conduct has prevented Plaintiff from serving customers by coercing attorneys to cease working with TIKD, and it has deprived Florida consumers access to convenient, low-cost, and efficient legal services.

108.   TIKD's economic success and growth was severely and directly impacted when Defendants began colluding among themselves and with other market participants to deny TIKD access to and relationships with traffic ticket attorneys.  Specifically, because of Defendants' anticompetitive actions, TIKD has been forced to temporarily shut down its services in many counties in Florida.  It has also been forced to reject customers and refund payments to customers due to an absence of attorneys to represent those customers.  Based on TIKD's sales and growth before Defendants' interference and based on direct evidence of customers lost, TIKD estimates that Defendants' anticompetitive conduct has caused TIKD more than $3,800,000 in lost revenue and increased costs.  Because Defendants' conspiracy to interfere with and prevent TIKD from forming business relationships with traffic ticket attorneys is ongoing, TIKD's damages are increasing each day, and it will seek to recover all additional damages it incurs during the pendency of this lawsuit.

109.   The economic injuries Plaintiff has suffered and will suffer are injuries the antitrust laws intend to prevent and that flow from that which makes the Defendants' acts unlawful.  Plaintiff's injuries were caused by Defendants' actions aimed at excluding both TIKD and attorneys representing TIKD customers from the Relevant Market.   Defendants' exclusionary tactics and concerted refusal to deal harmed competition in the Relevant Market by depriving customers access to competitors' services, depriving customers of a more efficient service, reducing innovation in the Relevant Market, and increasing prices by reducing the output of legal services.

110.   Plaintiff is entitled to recover treble damages pursuant to 15 U.S.C. § 15(a) and Fla. Stat. Ann. § 542.22.   Plaintiff therefore seeks an award of damages of more than $11,400,000 against all Defendants, jointly and severally.  Because Defendants' illegal conduct

is ongoing, TIKD's damages are increasing each day, and it will seek treble recovery of all additional damages it incurs during the pendency of this lawsuit.

111.     Plaintiff also seeks to recover costs, prejudgment interest, and attorneys' fees pursuant to 15 U.S.C. § 15(a) and Fla. Stat. Ann. § 542.22.

112.     Plaintiff seeks temporary and permanent injunctive relief against the Florida Bar prohibiting the Bar, its officers, agents, and employees, and all persons who act in active concert with any of them, from continuing any of the anticompetitive actions addressed in this complaint, including but not limited to making any public or private statements that TIKD is engaged in the unlicensed practice of law, fee-splitting, or other illegal or unethical activities, while the Bar's investigation of TIKD is pending.

113.     To remedy the effects of Defendants' illegal conduct, Plaintiff further seeks an order directing The Florida Bar to (i) retract its Staff Opinion; (ii) send a copy of the Court's orders granting temporary and permanent injunctive relief to each of its members within thirty days of the entry of each order; (iii) cause the publication of each order and related statement in The Florida Bar Journal within sixty days of the entry of each order; and (iv) prepare and issue a statement that The Florida Bar has not, nor is it authorized to, determine that TIKD is engaged in the unlicensed practice of law or other illegal activity, and only the Florida Supreme Court is authorized to make such a determination after a full and fair trial in which TIKD is permitted to participate.

114.     Plaintiff seeks temporary and permanent injunctive relief against The Ticket Clinic Defendants and their officers, agents, and employees, and all persons who act in active concert with any of them, from continuing any of the anticompetitive actions addressed in this

complaint, including but not limited to filing baseless unlicensed practice of law complaints, baseless attorney ethics complaints or baseless lawsuits, or threatening to file such matters.

115.    Injunctive relief is appropriate because the harm TIKD has suffered and will continue to suffer in the absence of such relief is difficult to quantify.  Before Defendants sought to put TIKD out of business in Florida, TIKD was positioned to capitalize on its status as the leading innovator in the market for providing access to legal services to defend traffic tickets. Indeed, TIKD's growth in its first few months of operation in Florida were explosive, and it is difficult to quantify how much business TIKD would have won but for Defendants' multi-pronged effort to derail TIKD's business.

116.    Plaintiff seeks such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

## VIII.   Jury demand.

117.    Plaintiff demands a jury trial on all issues so triable.  Fed. R. Civ. P. 38(b).

## IX.    Prayer for Relief.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)    adjudge and declare that Defendants have engaged in unlawful conduct in violation of § 1 of the Sherman Act, 15 U.S.C. § 1;

(2)    adjudge and declare that Defendants have engaged in unlawful conduct in violation of § 2 of the Sherman Act, 15 U.S.C. § 1;

(3)    adjudge and declare that Defendants have engaged in unlawful conduct in violation of Fla. Stat. Ann. § 542.18;

(4)    adjudge and declare that Defendants have engaged in unlawful conduct in violation of Fla. Stat. Ann. § 542.19;

(5)     award Plaintiff actual damages, trebled by law, plus costs of suit, prejudgment interest, and attorneys' fees pursuant to § 4 of the Clayton Act, 15 U.S.C. §15 and Fla. Stat. Ann. § 542.22;

(6)     enter a temporary and, upon final judgment, a permanent injunction as set forth above; and

(7)     grant such further relief at law or in equity as the Court deems just and appropriate.

Respectfully submitted,

/s/  Ramón A. Abadin
Ramón A. Abadin
Florida Bar No. 707988
ramon.abadin@sedgwicklaw.com
SEDGWICK LLP
One Biscayne Tower, Suite 1500
Two South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305)670-4777
Facsimile: (877) 540-6951


  Peter D. Kennedy
Peter D. Kennedy
Texas Bar No. 11296650
pkennedy@gdhm.com
pro hac vice admission pending
David A. King
Texas Bar No. 24083310
dking@gdhm.com
pro hac vice admission pending
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Ave., Suite 2200
Austin, Texas 78701
Telephone: (512) 480-5764
Facsimile: (512) 536-9908

**ATTORNEYS FOR PLAINTIFF**
**TIKD SERVICES LLC**