**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:17-cv-24103-MGC

TIKD SERVICES LLC,

Plaintiff,

vs.

THE FLORIDA BAR, *et al.*,

Defendants.
_____________________________________/

**THE FLORIDA BAR DEFENDANTS' MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants The Florida Bar (the "Bar"), Michael J. Higer, John F. Harkness, Lori S. Holcomb, and Jacquelyn P. Needelman (collectively, the "Bar Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), hereby move this Court for entry of an order dismissing the Complaint, and state as follows:

## INTRODUCTION

The Bar Defendants are immune from the allegations raised in the Complaint. As alleged in the Complaint, the Bar is an agency of the State of Florida, an arm of the Florida Supreme Court ("FSC"), specifically authorized to conduct investigations of the unlicensed practice of law ("UPL"). (Doc. 1 ("Compl.") ¶¶ 9, 36.) Therefore, the Bar Defendants are immune from suit in federal court under the Eleventh Amendment. *Kaimowitz v. Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993); *see also Henry v. Fla. Bar,* No. 16-15869, 2017 WL 2992075, at *2 (11th Cir. July 14, 2017); *Brown v. Fla. Bar*, 243 F. App'x 552, 553 (11th Cir. 2007). This immunity applies to both legal and equitable claims. *Uberoi v. Supreme Court of Fla.*, 819 F.3d 1311, 1313 (11th Cir. 2016). Furthermore, the individual Bar Defendants have "*absolute* immunity from civil liability for all acts in the course of their official duties" related to UPL matters. *See* R. Regulating Fla. Bar 10-10.1 (emphasis added). Additionally, this Court should abstain from ruling on claims against the Bar Defendants based on *Younger* abstention.

*Henry*, 2017 WL 2992075, at *2. Finally, the Bar Defendants are immune from suit under the state and federal antitrust laws under the "state action doctrine" and section 542.20, Florida Statutes, as well as under the *Noerr-Pennington* doctrine. To the extent Plaintiff TIKD Services LLC ("Plaintiff" or "TIKD") intended to name the individual Bar Defendants in their personal capacities, the principles of qualified immunity also require dismissal.

Beyond the immunity issues, the Complaint should be dismissed because Plaintiff has failed to state a claim under the antitrust laws. In short, the Bar Defendants do not participate in the alleged relevant market; any "monopoly" in the relevant market is lawful; the Complaint fails to allege a "dangerous probability of success" regarding its claim for attempted monopolization; and the Complaint contains no allegation showing a specific intent to monopolize as required to state a claim for an attempt to monopolize and for a conspiracy to monopolize.

Lastly, because the suit is plainly an attempt to interfere with the Bar Defendants' rights to free speech and petition for redress, it violates the prohibitions of Florida's Anti-SLAPP law, section 768.295, Florida Statutes, and should be promptly dismissed with a fee award on that basis alone.

## MEMORANDUM OF LAW

### Legal Standards

A challenge under Federal Rule of Civil Procedure 12(b)(1) presents either a facial attack or a factual attack. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint . . . ." *Id.* In resolving a factual attack, a court may consider evidence outside the pleading, such as testimony and affidavits. *Id.* Here, the lack of jurisdiction is apparent from the Complaint, although the Bar Defendants reserve the right to support this argument with further evidence if the Court has any doubts after reviewing the face of the pleading.

When a complaint is challenged under Federal Rule of Civil Procedure 12(b)(6), a court accepts as true all well-pleaded factual allegations and disregards unsupported conclusions of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted).

## Allegations of the Complaint

TIKD alleges that the Bar opened a UPL investigation based on an objectively "baseless" assertion that TIKD was practicing law in Florida. (Compl. ¶¶ 4, 50.) Notably, TIKD references and acknowledges Chapter 10 of the Rules Regulating the Florida Bar which govern the investigation and prosecution of UPL. (*Id.* ¶¶ 39-40.) TIKD does not allege, however, that the Bar's handling of this Complaint was improper under Chapter 10, and does not allege that the Bar should have ignored or disposed of the Complaint without further action. In fact, TIKD incorporates exhibits into its Complaint showing that TIKD not only acknowledged the applicability of Chapter 10, but further acknowledged an agreement to change its business practices to ensure compliance with such rules. (Doc. 1-6 at 2-3.)

Based on this investigation and a number of other allegations of statements made by employees of the Bar, TIKD alleges that the Bar Defendants monopolized and attempted to monopolize the relevant market for "the provision of access to legal services to defend traffic tickets issued in Florida" (Compl. ¶ 85) and that the Bar Defendants conspired with the Ticket Clinic and its owners to restrain trade and monopolize that relevant market.

## I. The Bar Defendants Are Immune

### *A. Eleventh Amendment Immunity*

The Eleventh Amendment makes clear that the Bar, as an arm of the FSC, is immune from TIKD's claims. *Kaimowitz*, 996 F.2d at 1155. "The Eleventh Amendment prohibits actions against state courts and state bars." *Id.* This immunity applies to TIKD's legal and equitable claims. *Uberoi*, 819 F.3d at 1313 (Applying Eleventh Amendment immunity to suit against FSC, and stating that the district "court . . . lacked jurisdiction over that claim because sovereign immunity independently bars it. Eleventh Amendment sovereign immunity prohibits federal courts from entertaining suits brought by citizens against a state, including its agencies and departments. That bar exists whether the relief sought is legal or equitable." (internal citations and quotation marks omitted)).

The Complaint does not state directly in what capacities TIKD sues the individual Bar Defendants. To determine in what capacity an officer is sued, the court looks to the Complaint and the course of proceedings. *Colvin v. McDougall*, 62 F.3d 1316, 1317 (11th Cir. 1995). The only allegations against Mr. Higer and Mr. Harkness are that they are, respectively, the Bar's President and the Executive Director (Compl. ¶¶ 10-11), which

indicates they are being sued only in their official capacities. There are no allegations as to conduct by Mr. Higer or Mr. Harkness of any kind, much less allegations that they engaged in unlawful conduct. There are additional allegations against Ms. Holcomb and Ms. Needelman, but these relate only to communications carried out in connection with their positions at the Bar, which also indicates they are being sued only in their official capacities. (*See id.* ¶¶ 12-13, 67, 69, 71, 78.) To the extent the Bar Defendants are being sued in only their official capacities as employees or officers of the Bar, the Eleventh Amendment also bars any claim for damages against these individuals. *See Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993); *Henry*, 2017 WL 2992075, at *2 ("The individual defendants are likewise immune as state officials from Henry's claims against them in their official capacities for monetary damages.").[1] These individual Bar Defendants also have "absolute immunity from civil liability for all acts in the course of their official duties" as to the UPL investigation. R. Regulating Fla. Bar 10-10.1. To the extent the individual Bar Defendants are being sued in their personal capacities, they are entitled to qualified immunity, as shown in Section C below.

*B.* *State Action Immunity*

The Bar Defendants are also entitled to state action immunity on all of the claims asserted by TIKD. "In *Parker v. Brown*, 317 U.S. 341 [(1943)], the Supreme Court held that the Sherman Act does not apply to the anticompetitive conduct of states acting as sovereigns." *Askew v. DCH Reg'l Health Care Auth.*, 995 F.2d 1033, 1037 (11th Cir. 1993). "Following this principle, federal courts have routinely denied attempts to bring a Sherman Act cause of action against a state, state bar, or state Supreme Court," including the Bar. *Ramos v. Tomasino*, No. 16-cv-80681-BLOOM/Valle, 2016 WL 8678546, at *2 (S.D. Fla. Aug. 25, 2016), *aff'd in pertinent part, remanded in part on other grounds*, No. 16-15890, 2017 WL 2889472 (11th Cir. July 7, 2017); *Otworth v. Fla. Bar*, 71 F. Supp. 2d 1209, 1220 (M.D. Fla. 1999) ("The Supreme Court of Florida has properly acted within its sovereign authority when enacting the Rules Regulating the Florida Bar. . . . The Florida Bar is compelled to act, or refrain from taking action, by the Supreme Court of Florida. . . . As the mandate requiring membership

[1] TIKD has not pled facts sufficient to establish any exception to Eleventh Amendment immunity.

in the Florida Bar cannot be divorced from the Florida Supreme Court's sovereign powers, the actions taken by the Florida Bar are exempt from antitrust liability.").[2]

TIKD incorrectly argues that the Bar is no longer entitled to state action immunity due to the decision in *North Carolina State Board of Dental Examiners v. Federal Trade Commission,* 135 S. Ct. 1101 (2015). To the contrary, the analysis in *Dental Examiners* confirms that state action immunity applies here. The facts in this case involve far more active supervision by the FSC than existed in *Dental Examiners* and therefore compel a different result. In fact, *Dental Examiners* reaffirms the longstanding principles underlying *Parker* immunity, as that immunity has been applied to the Bar by the Eleventh Circuit even after *Dental Examiners* was decided.

Indeed, two years after *Dental Examiners*, the Eleventh Circuit affirmed dismissal under Rule 12(b)(6) of Sherman Act claims against the Bar on the basis of state action immunity stating,

> [T]he Florida Bar is "*an official* arm of [the Florida Supreme] Court," acting at all times under the supervision and control of the Court. *Dade-Commonwealth Title Ins. Co. v. N. Dade Bar Ass'n*, 152 So. 2d 723, 726 (Fla. 1963). The Rules Regulating the Florida Bar provide that the Florida Bar is subject to the authority, continued direction, and supervision of the Florida Supreme Court. R. Reg. Fla. Bar. 2-3.2(a). Further, the Florida Supreme Court has the authority "to prescribe standards of conduct for lawyers, to determine what constitutes grounds for discipline of lawyers, to discipline for cause attorneys admitted to practice law in Florida, and to revoke the license of every lawyer whose unfitness to practice law has been duly established." R. Reg. Fla. Bar. 3-1.2. Florida rules of judicial administration specifically permit court records related to cases "disposed of by order involving individuals licensed or

---

[2] *See also Genins v. State Bar of Ga.*, No. CIVA CV205-116, 2006 WL 2699076, at *5 (S.D. Ga. 2006) ("The Georgia Supreme Court is an arm of the State of Georgia." (internal quotation marks and citation omitted)); *McFarland v. Folsom*, 854 F. Supp. 862, 878 (M.D. Ala. 1994) ("Precisely identical Sherman Act claims have been brought against various state bars, and against the Alabama State Bar in particular. Courts have consistently held in the cases cited below that the Sherman Act is inapplicable."); *Foley v. Ala. State Bar*, 481 F. Supp. 1308, 1311 (N.D. Ala. 1979) ("The disciplinary rules of the Alabama State Bar are subject to the approval of the Alabama Supreme Court . . . . The disciplinary rules of the Bar are in effect rules of the Supreme Court of Alabama. As such, the rules fall squarely within the state action exception to the Sherman Anti-Trust Act, and accordingly, plaintiffs' claim under the Sherman Anti-Trust Act must fail." (internal citations omitted)), *rev'd in part on other grounds*, 648 F.2d 355 (5th Cir. 1981).

> regulated by the court" to be destroyed after 10 years. Fla. R. Jud. Admin. 2.430(c)(3)(B).
>
> Here, the remaining counts of Ramos's complaint are barred by *Parker* immunity, which gives state entities and officials acting pursuant to state law immunity from antitrust liability. Counts 1 and 2 expressly style themselves as alleging violations of the Sherman Act, and claim that the defendants conspired to monopolize the attorney admissions process and deny him the ability to practice law by destroying his records. Counts 3 and 4 were not expressly labeled as Sherman Act violations, but they both repeated allegations regarding the destruction of records, they both alleged that the defendants held a monopoly over the records and his ability to gain admission to practice law, and they both cite the *Parker* immunity doctrine, which arises only in the antitrust context. Because these counts seek relief based on the same allegations of antitrust violations, they are all barred by *Parker*.

*Ramos*, 2017 WL 2889472, at *4 (emphasis and alterations in original). Moreover, an October 2015 decision from the Southern District of Florida dismissed Sherman Act claims against the Bar after flatly rejecting the argument that *Dental Examiners* applied:

> Specifically, the immunity analysis set forth in *Parker* and recently applied again by the Supreme Court in [*Dental Examiners*] is not applicable to Rosenberg's claims against The Florida Bar because The Florida Bar is an arm of the state (a sovereign entity)—not a non-sovereign actor that is authorized by the State to regulate its own profession.

*Rosenberg v. State of Fla.*, No. 15-22113-CIV-Lenard/Goodman, ECF No. 102, slip op. at 15 (S.D. Fla. Oct. 14, 2015) (omnibus order granting motions to dismiss and addressing other motions).

TIKD's conclusory argument that the Bar no longer enjoys state action immunity cannot be reconciled with the Eleventh Circuit's recent decision in *Ramos* and the ruling from the Southern District of Florida in *Rosenberg*. TIKD's own assertion that only the FSC can determine what constitutes the unlicensed practice of law (Compl. ¶ 70) only underscores the fact that the Bar is an investigative arm of the FSC acting under the express authority and direction of the FSC.

1. <u>The Facts in *Dental Examiners* Established No State Action Immunity</u>

As acknowledged in *Rosenberg*, *Dental Examiners* does not apply here because in that case the state had "delegate[d] control over a market to a non-sovereign actor." 135 S. Ct. at 1110 (citing *Parker*, 317 U.S. at 351). The North Carolina State Board of Dental Examiners

("Dental Board") was a legislatively created body consisting of eight members, six of whom were required to be dentists, one a dental hygienist, and the last a "consumer" appointed by the Governor. *Id.* at 1108. The six dentist members were elected by other licensed dentists in North Carolina through a vote conducted by the Dental Board itself. *Id.*

Here, as TIKD acknowledges, the Bar is "an arm of the Supreme Court of Florida for the purpose of seeking to prohibit the unlicensed practice of law." (Compl. ¶ 36 (citing R. Regulating Fla. Bar 1-8.2).) The rules and policies that are at issue are promulgated by the FSC, not the Bar. The FSC is in sole possession of the ultimate authority to enforce such its regulations—as asserted and conceded by Plaintiff. In *Dental Examiners*, in response to complaints from other dentists, the Dental Board opened an investigation into nondentist teeth whitening and "issued at least 47 cease-and-desist letters on its official letterhead to nondentist teeth whitening service providers and product manufacturers." 135 S. Ct. at 1108. "Many of those letters directed the recipient to cease 'all activity constituting the practice of dentistry'; warned that the unlicensed practice of dentistry is a crime; and strongly implied (or expressly stated) that teeth whitening constitutes 'the practice of dentistry.'" *Id.* "In early 2007, the [Dental] Board persuaded the North Carolina Board of Cosmetic Art Examiners to warn cosmetologists against providing teeth whitening services." *Id.* "Later that year, the Board sent letters to mall operators, stating that kiosk teeth whiteners were violating the Dental Practice Act and advising that the malls consider expelling violators from their premises." *Id.* As the Court found, "[t]hese actions had the intended result," and "[n]ondentists ceased offering teeth whitening services in North Carolina." *Id.* In this case, there is no allegation that the Bar Defendants have taken any action to order TIKD or its "coverage counsel" to cease and desist their activities or other similar conduct.

2. <u>The Facts Alleged in This Case Establish State Action Immunity</u>

Unlike the facts in *Dental Examiners*, the process being challenged here is replete with active supervision by the sovereign. "Pursuant to the provisions of article V, section 15, of the Florida Constitution, the Supreme Court of Florida has inherent jurisdiction to prohibit the unlicensed practice of law." R. Regulating Fla. Bar 10-1.1 ("Jurisdiction"). "The Florida Bar, as an official arm of the court, is charged with the duty of considering, investigating, and seeking the prohibition of matters pertaining to the unlicensed practice of law and the prosecution of alleged offenders." R. Regulating Fla. Bar 10-1.2 ("Duty of the Florida Bar").

All of the rules and policies TIKD challenges were reviewed and approved by the FSC which is a sovereign branch of state government, unlike the North Carolina Board of Dental Examiners which was a non-sovereign state agency.

Bar counsel is required, under Rule 10-5.1(b) and (c) of the Rules Regulating the Florida Bar promulgated by the FSC, to review complaints of UPL, and Bar counsel may refer a UPL file to the appropriate Circuit Committee for further investigation or action. Rule 10-6 provides a detailed procedural framework for the investigation, which includes review by the Circuit Committee and by the UPL Standing Committee. R. Regulating Fla. Bar 10-6.3. Unlike the supermajority of dentists on the Dental Board, who were themselves elected by other dentists, the Bar's UPL Standing Committee consists of 13 lawyers and 12 non-lawyers, all of whom are appointed by the FSC, one of the three branches of sovereign government created by the Florida Constitution. *See* R. Regulating Fla. Bar 10-3.1. Likewise, each Circuit Committee consists of at least three persons, at least one-third of whom are non-lawyers, and all of whom are appointed by the FSC. R. Regulating Fla. Bar 10-4.1.

If the UPL Standing Committee recommends litigation, a Designated Reviewer, who is a member of the Bar's Board of Governors, can make a report and recommendation to the Board of Governors agreeing or disagreeing with the Standing Committee. R. Regulating Fla. Bar 10-6.3 ("Recommendations and Disposition of Complaints"). Then, if the Board of Governors approves pursuing litigation, the Bar must petition the FSC pursuant to Rule 10-7 ("Proceedings before a Referee").

Proceedings before the Supreme Court include assignment to a judge or retired judge as referee (R. Regulating Fla. Bar 10-2.1(g)), a full opportunity for the respondent to take discovery under the Florida Rules of Civil Procedure (R. Regulating Fla. Bar 10-7(c)(4)), and a full opportunity for the respondent to present its argument (*see* R. Regulating Fla. Bar 10-7.1(f)). The Respondent can make objections to that Report. R. Regulating Fla. Bar 10-7.1(f)(1). "After review, the [FSC] shall determine as a matter of law whether the respondent has engaged in the unlicensed practice of law" and whether to provide any other relief. R. Regulating Fla. Bar 10-7.1(f)(2).[3] Thus, the process under attack by TIKD is directly supervised by the FSC and meticulously governed by FSC-promulgated rules.

---

[3] *See also In re Judicial Review of Final Agency Decision of N.C. Bd. of CPA Examiners*, No. 16 CVS 12212, 2017 WL 1745650, at *8 (N.C. Super. Ct. May 1, 2017) ("The holding in *Dental*

TIKD also complains that the Bar's communications about the status of the investigation were not actively supervised. But those communications were not final agency action and, more importantly, are expressly supervised by the FSC through rules on the "Disclosure of Information" and "Response[s] to Inquiry" in conjunction with a UPL investigation. R. Regulating Fla. Bar 10-8.1(d) ("Disclosure of Information") & 10-8.1(e) ("Response to Inquiry"). Disclosure of limited information regarding the status of a pending UPL matter is not only expressly permitted, but indeed required by Rule 10-8.1(e) since the FSC has determined it is public information: "Representatives of The Florida Bar, authorized by the board of governors, *shall* reply to inquiries regarding a pending . . . unlicensed practice of law investigation as follows: . . . . (2) . . . the fact that an unlicensed practice of law investigation is pending and the status of the investigation shall be public information." R. Regulating Fla. Bar 10-8.1(e) (emphasis added).

TIKD also complains about the Bar staff's issuance of a written ethics opinion. But that ethics opinion was a non-binding opinion specifically authorized by the Bar's rules promulgated in accordance with Rule 2-9.4 issued by the FSC:

> The board of governors shall adopt rules of procedure governing the manner in which opinions on professional ethics may be solicited by members of The Florida Bar, issued by the staff of The Florida Bar or by the professional ethics committee, circulated or published by the staff of The Florida Bar or by the professional ethics committee, and appealed to the board of governors of The Florida Bar.

R. Regulating Fla. Bar 2-9.4.[4]

---

*Examiners* has no application to this case" where, among other things, "the Board's disciplinary action against Petitioners is subject to active supervision by the State through the very judicial review process invoked by Petitioners in this case. The North Carolina Administrative Procedure Act's judicial review process constitutes active state supervision by requiring this Court to substantively review the Board's order and by empowering it to 'reverse or modify the decision.'").

[4] *Fla. Bar re Rules Regulating Fla. Bar*, 494 So. 2d 977, 977 (Fla.) (noting that adoption of the these rules occurred as part of a substantial revision and after oral argument), *corrected on other grounds by* 507 So. 2d 1366 (Fla. 1986); *see also Fla. Bar Re: Amendment to Rules Regulating Fla. Bar*, 605 So. 2d 252, 277 (Fla. 1992); *In re Amendments to Fla. Rules of Judicial Admin. Pub. Access to Judicial Records*, 608 So. 2d 472, 475 (Fla. 1992) (adding provision regarding confidentiality); *Amendment to Rules Regulating Fla. Bar*, 875 So. 2d 448, 449 (Fla. 2004).

The opinion was also, on its face,[5] prepared in strict accordance with Rule 1 of The Florida Bar Procedures for Ruling on Questions of Ethics.[6] The Bar's procedures make clear that staff opinions are "advisory only and are not the basis for action by grievance committees, referees, or the board of governors except on the application of the respondent in disciplinary proceedings." *Id.* In addition, an ethics opinion is only provided to a member of the Bar in good standing concerning that member's own contemplated conduct. Rule 2(a)(1), Florida Bar Procedures for Ruling on Questions of Ethics. A written staff opinion is provided upon formal request only after identification details are removed, and it is not published by the Bar. Rule 3(a)(2), (c), Florida Bar Procedures for Ruling on Questions of Ethics. Oral staff opinions are treated confidentially. Rule 3(a)(1), Florida Bar Procedures for Ruling on Questions of Ethics. Under this framework, there is a realistic assurance of advancing the articulated policy without improper anticompetitive effects. The Complaint overlooks these safeguards, and also alleges that "nothing in the Bar Rules authorizes The Florida Bar to issue an opinion on what constitutes the unauthorized practice of law." (Compl. ¶ 59). To the contrary, Rule 10-9.1 of the Rules Regulating the Florida Bar specifically authorizes UPL advisory opinions. But those opinions are only advisory and are not final or binding.

TIKD further complains that the Bar Staff Opinion at issue was prepared in an intentionally vague way to harm TIKD, but the Bar was simply following the Rules exactly as promulgated by the FSC.[7] *Cf. Ramos*, 2017 WL 2889472, at *4 (dismissing claims under

---

[5] In addressing a Rule 12(b)(6) motion, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The Bar Staff Opinion has been incorporated by reference (Compl. ¶¶ 58-63) and attached *by the Plaintiffs* to their Motion for Preliminary Injunction (Doc. 12-2). The Bar Defendants do not dispute its authenticity. "If an allegation in the Complaint is based on a writing and the writing contradicts the allegation, the writing controls." *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1323 (N.D. Ala. 2004), *aff'd*, 461 F.3d 1325 (11th Cir. 2006); *see also Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 3d 1074, 1079 & n.4 (N.D. Cal. 2014).

[6] The procedures may be accessed via the following link: https://www.floridabar.org/ethics/ethotline/ethotline001/.

[7] Rule 2-9.4(d) requires as follows: "Confidentiality. Each advisory opinion issued by Florida Bar ethics counsel shall be identified as a 'staff opinion' and shall be available for inspection or production. The names and any identifying information of any individuals mentioned in a staff opinion shall be deleted before the staff opinion is released to anyone other than the

Rule 12(b)(6) due to state action immunity where, among other things, the records in Ramos's disbarment cases were properly destroyed pursuant to the Florida Rules of Judicial Administration, which specifically allow for the destruction of records related to cases disposed without opinion after 10 years).

TIKD also argues that the issuance of a non-binding advisory Bar opinion should not receive state action immunity because the FSC does not supervise the contents of the opinion. (Compl. ¶ 59.) But "[a]ctive supervision need not entail day-to-day involvement in an agency's operations or micromanagement of its every decision." *Dental Examiners*, 135 S. Ct. at 1116. Perhaps more importantly, informal staff opinions are non-binding and can be appealed to the Florida Bar Standing Committee on Professional Ethics and then to the Board of Governors, which uses its subcommittee, the Board Review Committee on Professional Ethics, pursuant to Florida Bar Procedures. The FSC does not review the Bar's ethics opinions because no case or controversy exists. Furthermore, contrary to TIKD's allegation (Compl. ¶ 59), the Bar rules do address formal advisory opinions on UPL, which are sent to the FSC for review and approval, after a publicly noticed hearing is held before the UPL Standing Committee. R. Regulating Fla. Bar 10-9.1(f), (g). TIKD appears to compare the 47 cease-and-desist letters threatening prosecution in *Dental Examiners* to a single non-binding, voluntary ethics opinion, prepared and issued consistent with the Rules, and which itself is replete with qualifying language about its limited effect, including a statement that "[a]dvisory opinions are intended to provide guidance to the inquiring attorney and are not binding; the advisory opinion process is not designed to be a substitute for a judge's decision or the decision of a grievance committee."[8] (Doc. 12-2 at 28.) Moreover, contrary to the allegations of the Complaint that the Bar Staff Opinion opined on "what constitutes the unauthorized practice of law" (Compl. ¶ 59), the Bar Staff Opinion simply references it as a question raised by the inquiry and advises the inquirer how to obtain guidance on UPL issues ("You may wish to consider addressing this question with The Florida Bar [UPL] Department." (Doc. 12-2 at 28-29)).

---

member of The Florida Bar making the original request for the advisory opinion." R. Regulating Fla. Bar 2-9.4(d).

[8] *See supra note* 5.

Here, the Bar has no power to determine that any specific conduct constitutes UPL and to the extent that a finding, opinion, or recommendation is made or expressed by Bar Counsel, the Circuit Committee, the Standing Committee, the Designated Reviewer, the Board of Governors, or anyone else, there is no determination on whether the respondent is engaged in UPL until the FSC rules. The Florida Constitution itself authorizes the FSC to do so. *See* Art. V, § 15, Fla. Const. There could be no higher supervisory "review [of] the substance" than this. *See Dental Examiners*, 135 S. Ct. at 1116. "Further," explains *Dental Examiners*, "the state supervisor may not itself be an active market participant." *Id.* at 1117. That element is also readily satisfied here where members of the FSC are not active market participants in the provision of legal services or the provision of access to legal services. Clearly, Plaintiff's reliance on *Dental Examiners* is misplaced.

*C.* *Qualified Immunity*

The individual Bar Defendants are also entitled to qualified immunity if sued in their individual capacities. "The doctrine of qualified immunity provides complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Manzini v. Fla. Bar*, 511 F. App'x 978, 981 (11th Cir. 2013) (internal quotation marks omitted). In determining whether a public official was acting within his or her discretionary authority, the Court must determine: "(1) whether the official was performing a function that, but for the alleged constitutional infirmity, would have fallen within her legitimate job description, and (2) whether that function was carried out through means that were within her power to utilize." *Id.* (internal quotation marks and alteration omitted). Counsel for the Bar is entitled to qualified immunity where the alleged misconduct was done in connection with duties set forth in the Rules Regulating the Florida Bar.

1. Mr. Higer and Mr. Harkness

There are no specific allegations against Mr. Higer and Mr. Harkness, much less allegations of unlawful conduct. They cannot be assigned liability merely due to their leadership roles.

2. Ms. Needelman

The only conduct alleged against Ms. Needelman concerns her official duties as Bar counsel. There are a number of allegations that non-Bar staff advised others to call Ms.

Needelman (Compl. ¶¶ 64, 66, 68), but very limited allegations of her own conduct. Paragraph 69 of the Complaint alleges that an attorney called Ms. Needelman, and she told him "that a committee of the Bar had 'found' or 'recommended' that TIKD was engaged in unlicensed practice of law." (*Id.* ¶ 69.) This disclosure of limited information regarding the status of a pending UPL matter is not only expressly permitted, but indeed *required* by Rule 10-8(e) of the Rules Regulating the Florida Bar. Second, the terms "recommended" or "found" were entirely consistent with the language of Rule 10-4.1.[9]

TIKD also alleges that a private attorney told a TIKD coverage counsel that "'if you speak with the Bar [UPL] attorney [Jackie Needelman], she relates bad things' in connection with TIKD," and explained he "was deeply concerned after speaking" with her. (Compl. ¶ 80.) But there is no allegation as to what Ms. Needelman actually said and there is no showing that she communicated anything other than what is required under the Rules. The Complaint does not allege that Ms. Needelman said anything that was untruthful or provided any information beyond what is described above regarding an investigation.

The Complaint also alleges that Ms. Needelman was asked, *in her official capacity*, by someone who had filed a Bar complaint, whether she received an anonymous call from someone whom his colleague had encouraged to call her. (*Id.* ¶ 78.) Ms. Needelman allegedly confirmed she had received such call. (*Id.*) There is no allegation that Ms. Needelman disclosed any confidential information in so doing or otherwise acted outside the scope of her official duties in responding to this call. Based on these allegations, Ms. Needelman is entitled to qualified immunity.

3. <u>Ms. Holcomb</u>

The Complaint alleges that Ms. Holcomb told Plaintiff's counsel Mr. Abadin "that she believed TIKD was engaging in unlicensed practice of law." (Compl. ¶ 67.) But Mr. Abadin's own contemporary correspondence attached to the Complaint summarizing that conversation

---

[9] Rule 10-4.1 provides that the UPL "Circuit Committee" has the "duty" to "make prompt report of its investigation and *findings* to bar counsel," which includes "(4) forwarding to UPL staff counsel *recommendations* for litigation to be reviewed by the standing committee." R. Regulating Fla. Bar 10-4.1(e) (emphasis added).

not only makes no mention of that alleged statement, but actually contradicts that allegation. As he stated in that letter:

> As discussed above, you confirmed the Bar has not issued any such opinions or made any such findings. Rather, a UPL complaint brought by attorney Ted Hollander from The Ticket Clinic is being investigated by the Bar's UPL committee system, and has been forwarded from a local circuit committee to the UPL Standing Committee for consideration in October. We all agree that only The Florida Supreme Court has the authority to decide if TIKD's business model is the practice of law.

(Doc. 1-3 at 2.) In any event, this conversation was conducted in the course of Ms. Holcomb's official duties as Division Director of the Ethics and Consumer Protection Division, which includes the UPL division. Her statements related solely to the pending investigation of TIKD, and were made to the attorney for TIKD. Ms. Holcomb is also entitled to immunity for declining to make a "public statement to dispel the impression that it had already decided TIKD was engaged in the unlicensed practice of law and fee-splitting, and that any lawyer representing TIKD's customers is committing ethical violations." (Compl. ¶ 71.) Ms. Holcomb was not required to go beyond what she is authorized to disclose and cannot be compelled to make such statements under threat of litigation. *Trianon Park Condo. Ass'n v. City of Hialeah,* 468 So. 2d 912, 918 (Fla. 1985) ("[T]here is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals. In addition, there is no common law duty to prevent the misconduct of third persons.").

*D.* *Immunity under Rule 10-10.1 of the Rules Regulating the Florida Bar*

Bar staff members Mr. Harkness, Ms. Needelman, and Ms. Holcomb are also entitled under Rule 10-10.1 of the Rules Regulating the Florida Bar to absolute immunity for all of their acts in the course of their official duties related to UPL. There are no specific allegations against Mr. Harkness or Mr. Higer, and any such allegations would necessarily relate to their support of the UPL investigation. The allegations against Ms. Holcomb and Ms. Needelman relate only to their official duties supporting the UPL committees and process, as described above, and are therefore absolutely immune.

*E.* *Noerr-Pennington Immunity*

The framework of the Bar proceedings under Chapter 10 of the Rules Regulating the Florida Bar set forth a lawful process for investigating and ultimately petitioning the FSC for

prosecution of UPL when deemed warranted. Even if the Bar's conduct is not exempt under the state action doctrine, the Bar's conduct is immune under the *Noerr-Pennington* doctrine due to the Bar expressing its non-binding opinions on what constitutes UPL and, if necessary, petitioning the FSC to determine that TIKD's business practices constitute UPL. TIKD's Complaint, if allowed to proceed, would restrain the Bar's First Amendment right to express its non-binding opinion on important public issues and to petition the FSC to take action on those issues. *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136-37 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965); *SilverHorse Racing, LLC v. Ford Motor Co.*, No. 6:16-CV-53-ORL-22KRS, 2016 WL 7137273, at *3 (M.D. Fla. Apr. 27, 2016). Although *Noerr–Pennington* immunity originated in the context of efforts to influence administrative or legislative officials, the doctrine was later extended to immunize from antitrust liability attempts to influence adjudicative bodies. *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1558-59 (11th Cir. 1992). Moreover, the "*Noerr–Pennington* doctrine does not only apply 'to the acts of petitioning themselves,' but also 'extends to the resulting government action.'" *S&M Brands, Inc. v. Summers*, 393 F. Supp. 2d 604, 629 (M.D. Tenn. 2005), *aff'd*, 228 F. App'x 560 (6th Cir. 2007)

Furthermore, *Noerr-Pennington* applies to activities both before and after litigation is actually filed with the FSC, including pre-litigation communications and other activities incident to litigation. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006) (applying *Noerr-Pennington* immunity to pre-suit communications between parties on the basis that "to exercise its petitioning rights meaningfully, a party may not be subjected to liability for conduct intimately related to its petitioning activities"); *see also McGuire Oil Co.*, 958 F.2d at 1560 (holding that concerted threats of litigation are protected under *Noerr–Pennington*). Accordingly, all communications related to the investigation, processing of the complaint, and discussing the matter with TIKD's counsel are also immune.

*F. Immunity Under Section 542.20, Florida Statutes*

The Bar Defendants are also immune under the Florida Antitrust Act. Section 542.20, Florida Statutes, provides that "[a]ny activity or conduct exempt under Florida statutory or common law or exempt from the provisions of the antitrust laws of the United States is exempt from the provisions of this chapter." Accordingly, the immunity discussed above also requires dismissal of the state antitrust claims in Counts III and IV. *Duck Tours Seafari, Inc. v.*

*City of Key West*, 875 So. 2d 650, 653 (Fla. 3d DCA 2004) ("[T]he doctrine of state action immunity which has developed under federal antitrust law is also an available defense to a suit against a municipality for a violation of Florida's antitrust laws.").

## II. *Younger* Abstention

This Court should also dismiss the Complaint against the Bar Defendants based on the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention "requires federal courts not to interfere with ongoing state criminal proceedings if certain criteria are met," and it has been extended to ongoing state civil proceedings, including state bar disciplinary proceedings. *Thompson vs. Fla. Bar*, 526 F. Supp. 2d 1264, 1272, 1282 (S.D. Fla. 2007) (applying *Younger* abstention to dismiss complaint challenging bar disciplinary proceedings). "Thus, when a plaintiff asks a federal court to enjoin or otherwise affect an ongoing state bar disciplinary proceeding, the federal court must abstain" where there are ongoing bar disciplinary proceedings, the proceedings implicate important state interests, and there is an opportunity to raise the federal issues in the state proceedings. *Id.*; *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982) (holding that federal action seeking injunctive relief from ongoing bar disciplinary proceedings was barred by doctrine of *Younger* abstention); *see also Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 724 (6th Cir. 1993) (approving *Younger* abstention where federal challenge included antitrust claims); *Sibley v. Fla. Supreme Court*, No. 4:07CV331 RH/WCS, 2007 WL 2698278, at *1 (N.D. Fla. Sept. 11, 2007); *Mason v. Fla. Bar*, No. 6:05-CV-627-28JGG, 2005 WL 3747383, at *7 (M.D. Fla. Dec. 16, 2005), *R&R adopted*, No. 6:05CV627ORL28JGG, 2006 WL 305483 (M.D. Fla. Feb. 7, 2006); *Pelfresne v. Vill. of Rosemont*, 952 F. Supp. 589, 593 (N.D. Ill. 1997) (granting motion to dismiss on the grounds of *Younger* abstention and noting that party could raise its federal antitrust issues in the state proceeding). Here, where the Bar's investigation is in process and will, if appropriate, result in a petition before the FSC for determination under state law, *Younger* abstention is especially appropriate.

## III. TIKD Fails to Allege Any Facts Sufficient to State a Claim on Which Relief Can Be Granted

### *A. <u>TIKD Fails to Allege a Proper Relevant Product Market</u>*

TIKD alleges that the "the relevant market in which to evaluate Defendants' conduct is the provision of access to legal services to defend traffic tickets issued in Florida (the

'Relevant Market')." (Compl. ¶ 85.) But, as the Complaint alleges, the Bar is engaged "as an arm of the Supreme Court of Florida" in the regulation of the practice of law, not providing "access to legal services." (*See id.* ¶ 36.) The Complaint alleges that the members of the Florida Bar practice law, but the Bar itself does not engage in the practice of law nor does the Bar provide "access to legal services." And TIKD contends that it does not directly provide legal services. (*Id.* ¶ 2.) The Bar Defendants do not participate in the alleged relevant market and cannot monopolize or attempt to monopolize a market in which they do not participate. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.,* 376 F.3d 1065, 1075 (11th Cir. 2004).

Furthermore, "access to legal services" and "legal services" are not interchangeable substitutes and TIKD's failure to provide clarity about the relevant market are sufficient grounds for dismissal. *See, e.g.*, *JES Props., Inc. v. USA Equestrian, Inc.*, 253 F. Supp. 2d 1273, 1282 (M.D. Fla. 2003) ("Where an antitrust plaintiff fails to define its proposed relevant market with reference to rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, relevant market is legally insufficient and a motion to dismiss may be granted.").

*B.* *<u>TIKD Has Not and Cannot Allege that any Monopoly in the Relevant Market Is Unlawful</u>*

In order to prove unlawful monopolization, a plaintiff must show possession of monopoly power in the relevant market that was willfully acquired or maintained, and not merely acquired because of superior products, business acumen, or historical accident. *See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)); *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1555 (11th Cir. 1996). TIKD has not explained how the Bar itself is an unlawful monopoly, particularly since it was created pursuant to Florida law. *See Ramos*, 2017 WL 2889472, at *4. Nor, to the extent TIKD can define a relevant market, has it alleged an unlawful monopoly in any such market.

*C.* *<u>TIKD Fails to Allege a Dangerous Probability of Success to State a Claim of Attempted Monopolization</u>*

Counts II and IV include claims for attempts to monopolize. An attempt to

monopolize claim has three elements: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). "The dangerous probability element requires the definition of the relevant markets and an examination of market power—the market shares of participants in those markets, or similar data—that could support a conclusion of 'dangerous probability' of monopolization." *Valet Apartment Servs., Inc. v. Atlanta Journal & Constitution*, 865 F. Supp. 828, 832 (N.D. Ga. 1994) (footnote omitted). Here, dismissal is required because TIKD has offered no allegations supporting this element. *Id.*; *Middlebrooks v. City of Eustis*, 563 F. Supp. 1060, 1061 (M.D. Fla. 1983). Furthermore, as noted above, the Bar Defendants cannot monopolize a market in which they do not participate. *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1075.

*D. TIKD Fails to Allege a Specific Intent to Monopolize as Required to State a Claim for Attempted Monopolization and Conspiracy to Monopolize*

A claim for attempted monopolization under Section 2 of the Sherman Act also requires a "specific intent to monopolize." *Middlebrooks,* 563 F. Supp. at 1061. Similarly, a claim for conspiracy to monopolize must allege a specific intent. *See U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 1001 (11th Cir. 1993). TIKD's claims for attempted monopolization and conspiracy to monopolize must be dismissed because of TIKD's failure to allege facts supporting a specific intent to monopolize. *See Levine*, 72 F.3d at 1556.

*E. No Specific Facts Are Alleged About Conduct by Mr. Higer and Mr. Harkness, Who Cannot Be Vicariously Liable for Alleged Antitrust Violations*

The Complaint makes no specific allegations against Mr. Higer and Mr. Harkness other than that Mr. Higer is the President of the Bar and that Mr. Harkness is the Executive Director of the Bar. (Compl. ¶¶ 10-11.) A high-level officer may not be held personally liable for antitrust violations or tortious acts allegedly committed by the organization merely because he holds a high corporate office. That would amount to strict or vicarious liability, which has never been the law. *See, e.g.*, *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 852 (N.D. Cal. 1979) (collecting cases). Instead, to be personally liable for alleged antitrust violations a corporate officer must be shown to have "knowingly participat[ed] in effecting the illegal contract, combination or conspiracy." *United States v.*

*Wise*, 370 U.S. 405, 416 (1962); *see also Brown v. Donco Enters., Inc.*, 783 F.2d 644, 646-47 (6th Cir. 1986). Because TIKD has made no allegations of how Mr. Higer and Mr. Harkness "knowingly participat[ed] in effecting the illegal contract, combination or conspiracy," such claims must be dismissed.

## IV. The Complaint Should Be Dismissed Pursuant to Florida's Anti-SLAPP Statute

TIKD's Complaint should also be dismissed because it is a SLAPP suit ("Strategic Litigation Against Public Participation") designed to discourage and intimidate the orderly administrative process already underway to resolve the questions of whether TIKD is engaged in the unlicensed practice of law. Pursuant to section 768.295(3), Florida Statutes,

> A person or governmental entity in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

First, for all the reasons explained above, the claims against Bar Defendants lack merit. The Bar Defendants are immune in numerous ways and TIKD has presented no allegations that could support any relief requested.

Secondly, this suit is primarily filed in an effort to threaten and intimidate the Bar Defendants from carrying out their duties with respect to a public issue, some of which include exercising the constitutional right of free speech and assembly and, as warranted, petitioning for redress before various governmental entities of this state. In that regard, the circumstances and timing of this suit cannot be ignored. TIKD is subject to a Bar investigation that could result in prosecution for UPL before the FSC. TIKD knows that the proceedings have progressed to the final stages, and now has also requested preliminary injunctive relief (Doc. 12), designed to constrain the Bar from carrying out its FSC-authorized duties with respect to providing any information about the proceedings or even providing advisory ethics opinions that have any relation to the ongoing proceedings. TIKD has sued Bar Counsel, Ms. Needelman. Ms. Needelman is the designated prosecutor for the Bar for this UPL matter. TIKD has sued the Division Director of the Ethics and Consumer Protection Division, Ms.

Holcomb, whose oversight includes the UPL Department. TIKD has even sued the Executive Director of the Bar, Mr. Harkness, and its President, Mr. Higer, with no specific allegations against these individuals.

The Bar's duty here is to investigate, to facilitate assembly of committees for purposes of deliberating and freely expressing opinions on the matter, to instruct and advise its leadership (for example, presentations by Bar staff members to the UPL committees or the Board of Governors), and, if appropriate, to petition for redress of these issues before the FSC. As part of its active supervision over the Bar, the FSC requires these functions to be carried out by the Bar and its agents. Thus, this is a classic instance of a SLAPP suit: TIKD has filed an unsupported and unsupportable federal antitrust lawsuit in the midst of an ongoing administrative investigation of its business practices which is an important public issue and may result in a petition to the FSC. In an obvious attempt to influence the Bar's deliberations, TIKD has included numerous allegations that are direct defenses to the UPL investigation (Compl. ¶¶ 24-29) and it has named individuals responsible for that investigation and possible prosecution on meritless theories. The Court should not entertain this lawsuit, but instead should find that the claims against the Bar Defendants violate section 768.295(3), Florida Statues, and award the Bar Defendants all appropriate remedies including reasonable attorney's fees and costs pursuant to section 768.295(4), Florida Statutes.

## Conclusion

Because the Bar Defendants are immune, because this Court lacks jurisdiction, and because TIKD has otherwise failed to state a claim for which relief can be granted, this Court should dismiss the Complaint with prejudice.

WHEREFORE, the Bar Defendants ask that this Court grant this motion, dismiss the Complaint with prejudice, and provide the Bar Defendants with any other proper remedy.

Respectfully submitted on December 1, 2017.

**HOLLAND & KNIGHT**

/s/ Kevin W. Cox
Kevin W. Cox (FBN 34020)
shannon.veasey@hklaw.com
kevin.cox@hklaw.com
315 S. Calhoun Street
Tallahassee, Florida 32309
Telephone: (850) 425-5624

Facsimile: (850) 224-8832

Jerome W. Hoffman (FBN 0258830)
jerome.hoffman@hklaw.com
Dominic C. MacKenzie (FBN 705690)
donny.mackenzie@hklaw.com
dana.tompkins@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Markenzy Lapointe (FBN 172601)
600 Brickell Ave Ste 3100
Miami, FL 33131-3089
Telephone: (786) 913-4805
Facsimile: (850) 539-1307

*Counsel for Defendants The Florida Bar, Michael J. Higer, John F. Harkness, Lori S. Holcomb, and Jacquelyn P. Needelman*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished on December 1, 2017, via the Court's CM/ECF system to:

Ramón A. Abadin
ramon.abadin@sedgwicklaw.com
Sedgwick LLP
One Biscayne Tower, Suite 1500
Two South Biscayne Boulevard
Miami, Florida 33131

Peter D. Kennedy
pkennedy@gdhm.com
David A. King
dking@gdhm.com
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas 78701

*Attorneys for Plaintiff*

/s/ Kevin W. Cox
Attorney

#54517995_v2