UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:17-cv-24103-MGC

TIKD SERVICES LLC,

    Plaintiff,

vs.

THE FLORIDA BAR, *et al.*,

    Defendants.

_____/

### MOTION BY THE FLORIDA BAR DEFENDANTS TO DISQUALIFY PLAINTIFF'S COUNSEL AND ACCOMPANYING MEMORANDUM OF LAW

    Defendants The Florida Bar, Michael J. Higer, John F. Harkness, Lori S. Holcomb, and Jacquelyn P. Needelman (the "Bar Defendants") move for the entry of an order disqualifying counsel Ramón A. Abadin and the law firm of Sedgwick LLP or any other firm with which Mr. Abadin is presently or may be affiliated in the future, and Graves, Dougherty, Hearon & Moody, P.C. from continuing to represent Plaintiff TIKD Services LLC ("Plaintiff" or "TIKD"), and any other counsel or law firm privy to The Florida Bar's confidential information learned from Mr. Abadin, for the reasons that follow.

### BASIS FOR DISQUALIFICATION

    During the course of his service as an officer of The Florida Bar, counsel for Plaintiff Mr. Abadin was provided attorney-client and attorney work-product communications and advice about and involving the specific antitrust issues and allegations asserted in this action. In addition, Plaintiff's Complaint and Motion for Preliminary Injunction establish that Mr. Abadin is a material and central witness to the facts giving rise to this action.

    Mr. Abadin had a fiduciary duty to maintain the confidentiality of privileged communications and advice he received while serving as an officer of The Florida Bar and the use and/or disclosure of such privileged information in the course of his representation of Plaintiff will severely disadvantage the Bar Defendants, as well as the public's confidence in the integrity of the legal profession.  Based on this clear conflict of interest and breach of

fiduciary duty, this Court should disqualify Mr. Abadin and his firm from this representation, as well as all other present co-counsel or prospective co-counsel with whom The Florida Bar's confidential information has been shared.

The Bar Defendants do not take the issue of disqualification lightly, but where a recent Bar President who was privy to the Bar's confidential and privileged information, and in fact centrally involved in leadership decisions on those issues on the Bar's behalf, ignores his conflict of interest and uses that confidential and privileged information to the Bar's disadvantage, extraordinary circumstances mandate this motion. The Florida Bar certainly respects, among others, its former officers and has asked Plaintiff's counsel to carefully consider withdrawal to avoid the necessity of this motion.

## STATEMENT OF FACTS

In this action, TIKD alleges that the Bar Defendants and The Ticket Clinic are engaged in anticompetitive conduct that violates the Sherman Antitrust Act and Florida Antitrust Act. Anticipating the Bar Defendants' defenses, TIKD says that The Florida Bar is not immune from federal or state antitrust liability under the "state action" doctrine based upon *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 135 S. Ct. 1101 (2015). In *Dental Examiners*, the U.S. Supreme Court held that the North Carolina State Board of Dental Examiners was not immune from antitrust liability under the state action doctrine because the decisions of the Board were final and not subject to "active supervision" by the State of North Carolina. The Court reasoned that because the members of the Board were active participants in the market for dental services that the Board regulated, the Board could not invoke state action antitrust immunity absent active supervision by the state itself.

In an attempt to paint the Bar Defendants with the same brush as the North Carolina State Board of Dental Examiners,[1] TIKD alleges that "The Florida Bar followed the *Dental*

---

[1] Unlike the North Carolina State Board of Dental Examiners which issues final orders that are enforceable, The Florida Bar has no final order authority on any matter but serves as the investigatory and administrative agent of the Florida Supreme Court. The Court is the head of one of the three branches of government in Florida and is vested by the Florida Constitution with authority over the judicial system including the licensure and regulation of lawyers and of the practice of law. *See* Art. V, §§ 2, 15, Fla. Const.; Fla. Stat. § 454.021. Actions by the Florida Supreme Court related to the regulation of the practice of law are acts of the State of Florida as sovereign. *See Hoover v. Ronwin*, 466 U.S. 558, 580-81 (1984); *Ramos v. Tomasino*, No. 16-15890, 2017 WL 2889472, at *3-4 (11th Cir. July 7, 2017).

*Examiners* case closely and hoped for a different ruling," even filing an amicus brief in support of application of the state action immunity doctrine in that case. (Doc. 1 ¶ 43 & n.6.) TIKD claims that while other state bar associations acted in the wake of the decision to reduce their legal exposure to antitrust claims, The Florida Bar did not. (*Id.* ¶¶ 43-46.) Indeed, TIKD says, "The Florida Bar made no changes to its structure, supervision, or processes after the *Dental Examiners* case was decided." (*Id.* ¶ 46.)

The amicus brief that The Florida Bar signed along with the bar associations for the states of North Carolina, West Virginia, and Nevada in *Dental Examiners* was filed on May 30, 2014. (*Id.* ¶ 43 n.6.) At that time, Gregory W. Coleman—who also serves as counsel for TIKD on related issues (*see* Doc. 1-3 at 2-3)—was the President-Elect of The Florida Bar. Mr. Abadin was a member of The Florida Bar Board of Governors and by that time knew he was President-Elect designate. (*See* Ex. A, Decl. of John F. Harkness, Jr. ("Harkness Decl.") ¶ 4.) Not long thereafter, Mr. Abadin became President-Elect when he was sworn in as President-Elect in June 2014. (*Id.* ¶ 5.) Thus, when *Dental Examiners* was decided by the U.S. Supreme Court on February 25, 2015, Mr. Abadin was President-Elect of The Florida Bar, and he went on to serve as President from June 2015 to June 2016. (*See id.* ¶¶ 5, 9.)

Following *Dental Examiners,* The Florida Bar formally engaged outside counsel—Carlton Fields Jorden Burt P.A. ("Carlton Fields")—to evaluate its processes and structure. (*See id.* ¶ 7.) The purpose of such retention was to obtain a legal analysis assessing the arguments and challenges that could be raised against The Florida Bar in light of the *Dental Examiners* decision. In March 2015, internal counsel for The Florida Bar sent, among others, an email to Mr. Coleman and Mr. Abadin, explaining the legal issues presented by the recently issued *Dental Examiners* decision. (*Id.* ¶ 7.) That email also attached an engagement letter between The Florida Bar and Carlton Fields explaining the issues and the scope of work for the analysis of the *Dental Examiners* decision and advice as to any ramifications resulting from the decision for The Florida Bar. (*Id.*) This was also an issue that Bar leadership independently raised and inquired about. For instance, on May 13, 2015, then-President Coleman sent an email to President-Elect Abadin, Executive Director John Harkness, and to Mr. Abadin's designated successor, attaching a news article about the *Dental Examiners* case and asking if they wanted to discuss. (*Id.* ¶ 8.) Mr. Harkness advised that the Bar's review

3

was underway, including by the Bar's longtime antitrust counsel, and that a presentation to the Florida Bar Board of Governors ("Board") would be forthcoming. (*Id.*)

The next month, on June 30, 2015, Carlton Fields sent a confidential memorandum to be given to the full Board, including Mr. Abadin, which provided the law firm's analysis and legal advice regarding the possible implications of the *Dental Examiners* decision on The Florida Bar's regulatory activities. (*Id.* ¶¶ 10-13.) The document was titled "Memorandum Regarding the Potential Impact of *N.C. Bd. of Dental Examiners v. FTC* (2015) on the Florida Bar" ("Confidential Memorandum"), and was marked, on the header of each and every page thereafter in bold and underlined text, "**ATTORNEY-CLIENT COMMUNICATION ATTORNEY WORK PRODUCT Confidential and Privileged**." (*Id.* ¶¶ 10-11.)

The scope of the Confidential Memorandum included, among other things, substantive analyses of the impact of the *Dental Examiners* decision on The Florida Bar's practices regarding investigation of the unlicensed practice of law ("UPL") and regarding the procedures and content of advisory ethics opinions. (*Id.* ¶ 12.) Therefore, as explained further below, the Confidential Memorandum directly involves issues raised in this lawsuit.

During a closed executive session[2] at the Board's July 24, 2015 meeting, Sylvia Walbolt of the Carlton Fields law firm provided legal advice and recommendations regarding the *Dental Examiners* decision in light of the firm's analysis. Mr. Abadin was present at this meeting and indeed presided over that meeting as President. (*See id.* ¶¶ 14-15.) The scope of this advice included The Florida Bar's investigation of UPL and provision of advisory ethics opinions. (*Id.* ¶¶ 12, 15.)

Carlton Fields' legal advice prompted an intensive process review by The Florida Bar. (*See id.* ¶¶ 16-17, 19.) In October 2015, at a Florida Bar meeting over which Mr. Abadin presided, the Bar's Board Review Committee on Professional Ethics ("BRCPE") addressed these antitrust issues in executive session and directed staff to make certain changes in the ethics and advertising programs. (*Id.* ¶ 16.) The privileged minutes of that session were provided to Mr. Abadin. (*Id.*)

---

[2] Pursuant to the Rules Regulating the Florida Bar, an executive session (closed to the public) may be held in order to receive attorney-client advice. *See* R. Regulating Fla. Bar 2-3.10.

Likewise, the Standing Committee on the Unlicensed Practice of Law ("UPL Standing Committee") undertook a detailed analysis of the antitrust issues raised by the *Dental Examiners* case.  On January 13, 2016, internal legal counsel for The Florida Bar sent a confidential memorandum to the UPL Standing Committee—copying Mr. Abadin, among others—regarding the committee's upcoming meeting. (*Id.* ¶ 17.)  That memorandum also discussed the UPL Standing Committee's review of recommendations by outside counsel Carlton Fields regarding UPL.

On February 2, 2016, internal legal counsel for The Florida Bar sent a confidential memorandum to the full Board, outlining the recommendations made by Carlton Fields with respect to antitrust liability under the *Dental Examiners* decision as it relates to UPL and apprising the Board of what changes were made in light of those recommendations and why. This memorandum was marked "ATTORNEY-CLIENT PRIVILEGED COMMUNICATION." (*Id.* ¶ 19.)

The Florida Bar also received a January 20, 2016 letter from the Florida Supreme Court advising that the Court had reviewed *Dental Examiners* and was "of the view that the Court is engaged in 'active supervision' of actions and policies that impact the legal profession." (*Id.* ¶ 18; Ex. C.)  To be cautious and conservative, however, the Court asked the Florida Bar to conduct an internal review on the issue. (Ex. C.)  It was customary for a communication of this type to be provided to the President and President-Elect of the Florida Bar.  (Harkness Decl. ¶ 18.)

Pursuant to the Rules Regulating the Florida Bar promulgated by the Florida Supreme Court, the offices of President and President-Elect have specific duties and obligations.  The Florida Bar President is charged with

> conduct[ing] and presid[ing] at all meetings of The Florida Bar and the board of governors. The president shall be the official spokesperson for The Florida Bar and the board of governors. Unless otherwise provided herein, the president shall appoint all committees. The president shall be the chief executive of The Florida Bar and shall be vested with full power to exercise whatever functions may be necessary or incident to the full exercise of any power bestowed upon the president by the board of governors *consistent with the provisions of these Rules Regulating The Florida Bar. It shall be the duty and obligation of the president to furnish leadership in the accomplishment of the aims and purposes of The Florida Bar.*

5

R. Regulating Fla. Bar 2-4.1 (emphasis added).³

The President-Elect is charged as follows:

> It shall be the duty of the president-elect to render every assistance and cooperation to the president and provide the president with the fullest measure of counsel and advice. The president-elect shall be familiarized with all activities and affairs of The Florida Bar and shall have such other duties as may be assigned to the president-elect by the board of governors. . . .

R. Regulating Fla. Bar 2-4.2.

Thus, at the time The Florida Bar received, through its outside antitrust counsel and internal legal counsel, confidential legal advice related to the *Dental Examiners* decision, Mr. Abadin was President of The Florida Bar and presided over the deliberation and decision-making process that resulted in—as TIKD claims—"no changes to [The Florida Bar's] structure, supervision, or processes" (Doc. 1 ¶ 46) and allegedly "ignored" *Dental Examiners* (Doc. 12 at 2). Notably, during the material time in question:

- Mr. Abadin was on the Board when The Florida Bar decided to sign the amicus curiae brief in *Dental Examiners*;

- Mr. Abadin received attorney-client and attorney work product contained in confidential communications regarding outside counsel's evaluation of The Florida Bar's structure, supervision, and processes in light of *Dental Examiners*; and

- Mr. Abadin received attorney-client and attorney work-product contained in confidential communications regarding decisions by internal counsel and staff regarding how to best address the recommendations made by outside counsel.

Throughout the Plaintiff's Complaint, TIKD and Mr. Abadin have placed directly at issue The Florida Bar's response to *Dental Examiners*, and have indicated that they are bringing this suit because they believe The Florida Bar did not adequately insulate itself from antitrust liability under *Dental Examiners*. (Doc. 1 ¶¶ 42-46.)

Importantly, neither Mr. Abadin, nor his associated firm, has ever sought a waiver or

---

³ As the chief executive and official spokesperson for The Florida Bar, the President arguably sets the example and owes the highest level of fiduciary duty to The Florida Bar and board of governors over which he or she presides.

6

consent by The Florida Bar as to the use or disclosure of the privileged information that Mr. Abadin received as an officer of The Florida Bar;[4] nor have they asked The Florida Bar for a waiver of or consent to the conflict of interest they have in their representation of TIKD or any other antitrust plaintiff adverse to the Bar Defendants.[5] (Harkness Decl. ¶ 20.)

The Florida Bar does not waive its attorney-client or attorney work-product privileges as to the content of any such advice or information received by it from its counsel and discussed in confidence relating to its response to *Dental Examiners*. (*Id.* ¶ 21.)

### MEMORANDUM OF LAW IN SUPPORT OF DISQUALIFICATION

For a recent Bar president to not only review confidential information and advice provided to him while acting in his capacity as an officer and fiduciary of The Florida Bar but then to represent an adverse party shortly thereafter against the Bar using such confidential information requires withdrawal or disqualification of Mr. Abadin, TIKD's other current counsel, and any prospective counsel granted access to this confidential information.

**I.     Legal Standard**

Although a party is presumably entitled to the counsel of its choice, "compelling reasons" may override that right. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003).

---

[4] As the U.S. Supreme Court has explained, "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers, installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985).

[5] Moreover, by raising these issues, the Bar Defendants do not intentionally relinquish any right to maintain attorney-client communication or work-product privileges. Under Rule 4-1.9 of the Rules Regulating the Florida Bar, Defendants are "not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." R. Regulating Fla. Bar 4-1.9 cmt. "In other words, once the presumption has been invoked, it is irrelevant what the actual confidences were. Thus, whether those confidences have since been revealed is not dispositive." *U.S. ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc.*, 101 F. Supp. 3d 1268, 1279 (S.D. Fla.), *aff'd*, 101 F. Supp. 3d 1280 (S.D. Fla. 2015). However, to the extent Plaintiff would dispute the content of any attorney-client communications or work product referenced herein, such disputes should be resolved by an *in camera* inspection by the Court so that The Florida Bar's privileged information is not open to the public and not further disclosed to Plaintiff.

The party moving to disqualify counsel bears the burden of proving the grounds for disqualification. *Id.* A violation of the rules of professional conduct governing attorneys can be sufficient reason to warrant disqualification. *See McGriff v. Christie*, 477 F. App'x 673, 677-78 (11th Cir. 2012) (affirming the district court's disqualification of an attorney based on a violation of the Georgia Rules of Professional Conduct); *see also Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997) (court must identify a specific rule of professional conduct that the attorney violated). Moreover, under the Local Rules of this Court, the professional conduct of all members of the Southern District of Florida shall be governed by the rules adopted by the Florida Supreme Court to govern the professional behavior of the members of The Florida Bar. S.D. Fla. Local R. 11.1(c).

TIKD's counsel's violations of the following rules of professional conduct warrant disqualification of all law firms with access to The Florida Bar's confidential privileged information as a result of their association with Mr. Abadin.

II.     **Rule 4-1.9 and the Restriction on Using Confidential Information Against a Party**

A lawyer who has had access to confidential information from a person or entity should be disqualified from a representation against that person or entity where (1) there is proof that confidential information was actually disclosed and (2) this information gives the non-movant an unfair tactical disadvantage. *See* R. Regulating Fla. Bar 4-1.9; *Gutierrez v. Rubio*, 126 So. 3d 320, 321 (Fla. 3d DCA 2013). When considering a motion for disqualification, the "lawyer's involvement in a matter can also be a question of degree." *Royal Caribbean Cruises, Ltd. v. Buenaagua*, 685 So. 2d 8, 10 (Fla. 3d DCA 1996) (quoting R. Regulating Fla. Bar 4–1.9 cmt. (1992)). If it can be said that counsel has essentially changed sides in the matter, disqualification is required. *Id.* at 10. As explained further below, the application of this rule requires disqualification even where the attorney was not acting in a legal representative capacity when the confidential information was obtained. *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1311-12 (S.D. Fla. 2010); *Tuazon v. Royal Caribbean Cruises Ltd.*, 641 So. 2d 417, 417 n.1 (Fla. 3d DCA 1994); *see also, e.g.*, *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 303-10 (E.D.N.Y. 2010); *In re Mortgage & Realty Trust*, 195 B.R. 740, 750-54 (Bankr. C.D. Cal. 1996); *Berry v. Saline Mem'l Hosp.*, 907 S.W.2d 736, 739-40 (Ark. 1995). Here, there is no doubt that Mr. Abadin changed sides with respect to The Florida Bar's position relating to UPL investigations.

8

### A. Plaintiff's Counsel Obtained Confidential Information Which It Is Already Using Against the Bar Defendants

TIKD has expressly injected the critical, confidential information Mr. Abadin acquired from The Florida Bar's attorneys while Mr. Abadin was The Florida Bar's chief executive. This obviously puts the Bar Defendants at a significant disadvantage in this case, and understandably shakes the public's confidence in the legal system. For instance, Plaintiff attempts to analogize the North Carolina State Board of Dental Examiners to The Florida Bar and specifically alleges that The Florida Bar should have made changes to its "structure, supervision, or processes" in the wake of the *Dental Examiners* decision, but took no action. (Doc. 1 ¶¶ 42-46.) Likewise, in its Motion for Preliminary Injunction, TIKD alleges "The Florida Bar participated in *Dental Examiners* as amicus curiae, but it has ignored that case's lesson." (Doc. 12 at 2.) The Motion for Preliminary Injunction repeatedly argues about the content and transmission of Bar staff ethics opinions (*see, e.g.*, Doc. 12 at 2, 6, 9-10, Ex. 3-D, Ex. 5-B), but the procedures and content of ethics opinions were substantially addressed in the legal advice provided to The Florida Bar by Carlton Fields during the time Mr. Abadin was its President.

Moreover, TIKD alleges that "The Florida Bar followed the *Dental Examiners* case closely and hoped for a different ruling." (Doc. 1 ¶ 43.) TIKD further alleges that "The Bar was so worried, in fact, that it filed an amicus brief, arguing that unless the Supreme Court granted the North Carolina dental board immunity, The Florida Bar would face antitrust liability based on its unsupervised regulation of the market for legal services." (*Id.*) These allegations expressly put at issue The Florida Bar's deliberation, motivation, and decision-making on these issues, all of which involved confidential attorney-client and attorney work-product communications, discussed and decided in Mr. Abadin's presence as an officer of The Florida Bar.

Mr. Abadin now represents a client directly adverse to the Bar on those same issues on which The Florida Bar received privileged legal advice *on behalf of the Bar*. Indeed, TIKD has injected into this litigation the precise issues about which their counsel received legal advice and over which they deliberated as officers of The Florida Bar. Mr. Abadin's use of The Florida Bar's privileged information against the Bar, information which he received in confidence while serving as its President in precisely the type of lawsuit covered by that legal

9

advice, is a clear conflict of interest and plainly grants TIKD an unfair advantage. There can be little question that the confidential information Mr. Abadin was privy to is also substantially related to this matter, as TIKD concedes that The Florida Bar's claimed "failure" to implement changes as a result of *Dental Examiners* is why TIKD feels confident it may bring this lawsuit. (*See* Doc. 1 ¶¶ 42-46.)

> The Restatement (Third) of the Law Governing Lawyers is illustrative and persuasive:
>
> 2. Lawyer represented Client A for a period of five years lobbying on environmental issues relating to uranium production. In the course of the representation in one matter, *Lawyer learned the basis for Client A's uranium-production decisions*. Lawyer now has been asked to represent Client B, a purchaser of uranium, in an antitrust action against A and others alleging a conspiracy to impose limits on production. *It is likely that Client B's claims against A would include addressing the same production decisions about which Lawyer earlier learned. Use of confidential information concerning A's production decisions learned in the earlier representation would materially advance the position of Client B in the antitrust matter. The matters are substantially related, and Lawyer may not represent Client B without effective consent of both A and B . . . .*
>
> 3. Lawyer was general inside legal counsel to Company A for many years, dealing with all aspects of corporate affairs and management. Lawyer was dismissed from that position when Company A hired a new president. *Company B has asked Lawyer to represent it in an antitrust suit against Company A based on facts arising after Lawyer left Company A's employ but involving broad charges of anti-competitive practices of Company A that, if true, were occurring at the time that Lawyer represented Company A. Lawyer may not represent Company B in the antitrust action.* Because of the breadth of confidential client information of Company A to which Lawyer is likely to have had access during the earlier representation and the breadth of issues open in the antitrust claim of Company B, a substantial risk exists that use of that information would materially advance Company B's position in the later representation.

Restatement (Third) of the Law Governing Lawyers § 132 cmt. d(iii) illustrations (2000) (emphasis added); *see also, e.g.*, *Lewis v. Haskell Slaughter Young & Rediker, LLC*, 582 F. App'x 810, 819 (11th Cir. 2014) (looking in part to the Restatement (Third) of Law Governing Lawyers to determine whether lawyer was required to withdraw).

Much like these illustrations in the Restatement, Mr. Abadin was privy to and indeed actively part of the evaluation process regarding The Florida Bar's antitrust liability in the wake of *Dental Examiners* in his capacities as President and President-Elect. As President, Mr.

Abadin learned and helped shape The Florida Bar's response to *Dental Examiners*, and this suit seeks to exploit the response he helped craft.

Mr. Abadin has now effectively switched sides and is using that information to The Florida Bar's disadvantage in their representation of TIKD. This is exactly what Rule 4-1.9 prohibits. *See, e.g.*, *ATC Logistics Corp. v. Jackson*, 168 So. 3d 292, 296 (Fla. 1st DCA 2015) (where attorney actually used knowledge of the strengths and weaknesses of her former client's case, disqualification was proper); *see also Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 756 (11th Cir. 2006) (disqualifying counsel when the former representation involved determining whether the client was complying with employment and wage and hour laws and the current representation alleged that the client failed to comply with those laws); *U.S. ex rel. Bumbury*, 101 F. Supp. 3d at 1277 (disqualifying counsel after finding that "[t]o the extent that [the attorney] provided advice concerning compliance with Medicare regulations, the current matter could involve [the attorney] attacking work that he performed for [Defendant]").

      **B.**    **This Prohibition Applies to Mr. Abadin Even Though He Did Not Serve as Counsel to The Florida Bar**

TIKD may attempt to argue that Rule 4-1.9 does not apply because TIKD's counsel has never served as counsel to The Florida Bar.[6] However, as courts in the Southern District have recognized when applying Rule 4-1.9, the focus is not on whether a prior attorney-client relationship existed; instead, "the focus should be on what information was learned [by counsel] . . . and whether that confidential information would put the defendants at an unfair advantage if [counsel] were allowed to represent the plaintiff." *See Armor Screen*, 709 F. Supp. 2d at 1312. Thus, where in a prior, non-counsel capacity, counsel is privy to the confidential information of a defendant relevant to the matter at hand, the situation "falls squarely within the proscription of the rule." *See Tuazon*, 641 So. 2d at 417 n.1.

For example, in *Armor Screen*, an attorney was consulted by defendants for a single hour about possibly serving as a patent expert in the case but was never retained for that

---

[6] The Rule states: "A lawyer who has formerly represented a client in a matter must not afterwards: . . . . (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known." R. Regulating Fla. Bar 4-1.9.

11

purpose. 709 F. Supp. 2d at 1313. Later, the plaintiff hired that attorney as its counsel. *Id.* The district court granted the motion to disqualify plaintiff's counsel, rejecting any argument that Rule 4-1.9 did not apply because there was no prior attorney-client relationship. *Id.* at 1311, 1321. The focus instead, the court said, was on what confidential information was obtained in that prior conversation. *Id.* at 1312. Because plaintiff's counsel acquired confidential information—including regarding specific litigation strategies about the claims at issue, *id.* at 1313, 1322—which would put the defendants at an unfair advantage, it was enough to warrant disqualification under Rule 4-1.9, *id.* at 1312.

In *Tuazon*, the attorney was disqualified from representing an injured seaman against the cruise line because he had served as an adjuster for the cruise line and in that role was privy to confidential information as to substantially similar matters brought by other seamen. 641 So. 2d at 417-18.

In this matter, Mr. Abadin was much more than an adjuster. He was intimately involved, occupying a leadership and decision-making role with The Florida Bar during a critical time period in which he learned confidential, legal advice regarding The Florida Bar's litigation and defense strategies for facing antitrust challenges such as the one TIKD now brings. If a potential expert must be disqualified for knowledge obtained in a one-hour consultation and if an insurance adjuster must be disqualified for knowledge of how a party addressed similar matters, as in *Armor Screen* and *Tuazon*, then certainly a past President of The Florida Bar, who is required by Florida Supreme Court rules to preside and effectuate the policy of The Florida Bar, cannot be allowed to use confidential information obtained in that position against The Florida Bar. Particularly on these facts, disqualification of Mr. Abadin is required.

Other courts have similarly disqualified attorneys from representing clients adverse to entities for which the attorney served in a non-attorney capacity. For example, In *Filippi v. Elmont Union Free School District Board of Education*, 722 F. Supp. 2d 295 (E.D.N.Y. 2010), the plaintiff's law firm in an employment case against the school district was disqualified because the firm employed an associate who was also vice-president of the school district's board. Disqualification was justified, because, "as a member of the Elmont Union Free School District Board of Education, defendant in this action, [the associate] is a fiduciary with a duty of loyalty to the Board; she is also the Board's Vice President." *Id.* at 304. The court in that

case rejected the argument that the associate was not serving as an attorney for the school district and was appropriately screened from participation in the lawsuit. *Id.* at 303. In *Berry v. Saline Memorial Hospital*, 907 S.W.2d 736, 739-40 (Ark. 1995), the court affirmed the disqualification of a firm representing a patient in a lawsuit against a hospital where an attorney at the firm had formerly served on the hospital's board of directors and learned confidential information substantially related to the case. Similarly, in *In re Mortgage & Realty Trust*, 195 B.R. 740, 750-54 (Bankr. C.D. Cal. 1996), an attorney and his firm were disqualified from representing a creditor due to the fact that the attorney had received confidential information while a member of the debtor's board of trustees. The disqualifications addressed above were mandated because the attorneys received confidential information in their roles as fiduciaries without regard to their status as attorneys.

Because Mr. Abadin is using against The Florida Bar confidential, attorney-client and attorney work-product privileged information he obtained in confidence while he was a fiduciary of The Florida Bar, he should be disqualified.

### III. Rule 4-1.10 and the Imputation of Conflicts of Interests to Co-Counsel

This conflict of interest should also be imputed to Mr. Abadin's firm, his co-counsel Graves, Dougherty, Hearon & Moody, P.C., and any other firm or attorney that has obtained (or will obtain) confidential information from Mr. Abadin.

Where a lawyer is properly disqualified under Rule 4-1.9, Rule 4-1.10 imputes the knowledge held by that lawyer to all members of his firm. R. Regulating Fla. Bar 4-1.10(a). Disqualification of the conflicted lawyer's entire firm is required when the attorney had actual knowledge of material confidential information. *Philip Morris USA Inc. v. Caro*, 207 So. 3d 944, 950-51 (Fla. 4th DCA 2016) (citing R. Regulating Fla. Bar 4-1.10 cmt.). Here, The Florida Bar has demonstrated that Mr. Abadin received privileged, attorney-client communications and advice directly concerning the *Dental Examiners* decision as it related to The Florida Bar's response to the issues raised by *Dental Examiners*. There is no question that this information and advice is substantially related to this case. The burden then shifts to TIKD to prove that Mr. Abadin did not actually acquire confidential information to this case, which TIKD cannot do. *See Caro*, 207 So. 3d at 950-51. Accordingly, and at the very least, Mr. Abadin's firm, Sedgwick LLP (or any other firm with which he is, or may be in the future,

affiliated) should be disqualified because Mr. Abadin's conflict should be imputed to his associated firm.

The conflict should also be imputed to co-counsel, Peter Kennedy, David King, and their firm Graves, Dougherty, Hearon & Moody, P.C. ("Graves Firm"). "[A] court will impute disqualification between independent firms only where there is more than a small actual risk of confidential information spreading from the primarily-conflicted attorney to the associating firm." *See Baybrook Homes, Inc. v. Banyan Constr. & Dev., Inc.*, 991 F. Supp. 1440, 1445 (M.D. Fla. 1997). Here, there is a substantial, actual risk that confidential information was shared by Mr. Abadin with co-counsel, and given their collaboration, they may be treated as one firm for the imputation rule.

Both Mr. Abadin's firm and the Graves Firm have associated together in order to represent a single client, TIKD, in this lawsuit. In addition, Mr. Kennedy, Mr. King, and the Graves Firm have signed the Complaint and the Motion for Preliminary Injunction in this case along with Mr. Abadin. They presumably collaborated together to draft the Complaint, which at paragraphs 43-46 shows that all of these attorneys acquired confidential information regarding The Florida Bar's litigation strategies concerning antitrust claims in the wake of the *Dental Examiners* decision. They also presumably collaborated together to draft the Motion for Preliminary Injunction which describes the "significan[ce]" of the *Dental Examiners* case to The Florida Bar, interpreting the positions taken by the Bar in an amicus brief it joined with several other bar associations, and then describing the Bar's alleged decision to "ignore the case's lessons." (Doc. 12 at 2, 5-7.)

Furthermore, under these circumstances, Mr. Abadin's firm and the Graves Firm may be treated as a single firm for purposes of the imputation rules. *See Zarco Supply Co. v. Bonnell*, 658 So. 2d 151, 154-55 & n.2 (Fla. 1st DCA 1995) (disqualifying co-counsel's firm, reasoning that "[t]o the extent the two firms worked together to draft the complaint and bring the lawsuit, it appears illogical to assume the two firms have *not* exchanged confidential information. Thus, for purposes of analysis under rule 4-1.10(b), the two firms may be viewed as 'one firm.'" (emphasis in original)); *cf. Baybrook Homes*, 991 F. Supp. 2d at 1445 (refusing to impute conflict to co-counsel's firm where attorneys did not "collaborate[] in such a manner that [co-counsel] would have access to confidential information held by [the conflicted attorney]" and noting they "worked together for less than two hours").

14

Even assuming no actual ethical misconduct has occurred, the situation at hand is "rife with the possibility of discredit to the bar and the administrative of justice" and presents a conflict of interest "too strong to ignore." *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 634 (Fla. 1991) (internal quotation marks omitted).  Furthermore, given the fact that this issue is raised early in the proceedings, although TIKD may be deprived of its "counsel of choice," "[t]he fact that this case is in its infancy lessens this burden." *Stone v. Bowen*, No. 17-14050-CIV, 2017 WL 3017709, at *5 (S.D. Fla. July 14, 2017).  For these reasons, the Court should disqualify Mr. Abadin, Sedgwick LLP (and any other firm with which Mr. Abadin associates), and the Graves Firm from representing TIKD in this case.

IV.     **Rule 4-3.7 and the Restriction on Serving as Witness and Advocate**

TIKD has also put at issue several facts for which Mr. Abadin is a central and necessary witness.  One is the allegation that "Defendant Lori Holcomb told counsel for TIKD that she believed TIKD was engaging in unlicensed practice of law.  Holcomb cited no applicable authority; despite repeated requests by TIKD for authority supporting Holcomb's statement, none has been provided." (Doc. 1 ¶ 67.)  TIKD relies on this alleged conversation multiple times in support of its request for immediate injunctive relief against the Bar Defendants in its Motion for Preliminary Injunction. (Doc. 12 at 9, 12, 15.)  Consistent with the letter attached to the Complaint as Exhibit 3 (Doc. 1-3 at 2), The Florida Bar and its staff will dispute that characterization of the conversation.  Thus, Mr. Abadin is not only a necessary witness to support that allegation, but indeed he is TIKD's only witness who can do so.

 TIKD has also alleged that The Florida Bar decided not to act despite the U.S. Supreme Court's decision in *Dental Examiners*. (Doc. 1 ¶¶ 42-46; Doc. 12 at 2.)  The Florida Bar and its staff will dispute that allegation.  The sources and likely witnesses to that allegation are also likely Mr. Abadin, who presided over The Florida Bar during the actual time period in which The Florida Bar decided to—in TIKD's words—"ma[k]e no changes to its structure, supervision, or processes after the *Dental Examiners* case was decided." (Doc. 1 ¶ 46.)

Except in limited circumstances not applicable here, the Rules Regulating the Florida Bar provide that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client."  R. Regulating Fla. Bar 4-3.7(a).  Thus, Rule 4-3.7(a) "prohibits a lawyer from acting as an advocate and witness in the same trial."  *See*

15

*Scott v. State*, 717 So. 2d 908, 910 (Fla. 1998); *see id.* (stating that Rule 4-3.7 is intended "to prevent the evils that arise when a lawyer dons the hats of both an advocate and witness for his or her own client," such as prejudicing the opposing side or creating a conflict of interest).

TIKD might try to avoid application of the rule by simply saying that it does not intend to call Mr. Abadin as a witness. However, Mr. Abadin is the *only* identified witness who can support the allegations about the conversation with Ms. Holcomb identified above. Moreover, the focus of the analysis under Rule 4-3.7 is on the prejudice to the client, not prejudice to the opposing side who may call the attorney as a witness. *See Shaw v. Broad & Cassel, P.A.*, No. 11-23689-CIV, 2012 WL 315050, at *5 (S.D. Fla. Feb. 1, 2012).

Mr. Abadin is also a necessary witness to the development of The Florida Bar's alleged strategy of *not* addressing the *Dental Examiners* decision. Florida state courts have defined a necessary witness as a "central" or "featured" witness. *See, e.g.*, *Flietman v. McPherson*, 691 So. 2d 37, 38 (Fla. 1st DCA 1997). To be sure, even when an attorney was intimately involved in material events, however, he is not a "necessary witness" if another witness is capable of testifying to the matters at issue. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, No. 04–80090–CIV–Cohn, 2007 WL 433084, at *2 (S.D. Fla. 2007). Yet, as currently pled, it is difficult to ascertain what other witness TIKD could produce to testify in support of its allegations about the September 2017 conversations alleged in paragraph 67 of the Complaint and pages 9 and 15 of the Motion for Preliminary Injunction, or about The Florida Bar's decision not to change "its structure, supervision, or process after the *Dental Examiners* case was decided" in paragraph 46 of the Complaint. Tellingly, of the four witnesses in Plaintiff's papers, only Mr. Abadin makes a direct attribution of what Ms. Holcomb allegedly actually said. (Doc. 12 at 9). The other witnesses "quoted" speak only of their "impression," what they perceived and what they understood when speaking to another Bar employee, Ms. Needelman. (*Id.*) Thus, from the nature of the allegations themselves, it is evident Mr. Abadin's testimony is central to the dispute and it is obvious that TIKD has chosen to make him a featured witness in this matter. For these reasons, the Court should also disqualify Mr. Abadin under Rule 4-3.7 of the Rules Regulating the Florida Bar.

## CONCLUSION

For the foregoing reasons, the Bar Defendants respectfully request that the Court enter an order disqualifying counsel Ramón A. Abadin, the law firm of Sedgwick LLP, Peter

Kennedy and David King and the law firm of Graves, Dougherty, Hearon & Moody, P.C., and any other prospective counsel who has received such confidential information directly or indirectly from representing Plaintiff TIKD, and such other and further relief as the Court deems just and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. In particular, the Bar Defendants' counsel provided a draft copy of this motion to Mr. Abadin (through Mr. Abadin's counsel upon such counsel's request), Mr. Kennedy, and Mr. King to give Plaintiff's counsel an opportunity to withdraw as counsel before this Motion was filed.

Respectfully submitted on December 1, 2017.

**HOLLAND & KNIGHT**

/s/Kevin. W. Cox
Kevin W. Cox (FBN 34020)
kevin.cox@hklaw.com
shannon.veasey@hklaw.com
315 S. Calhoun Street
Tallahassee, Florida 32309
Telephone: (850) 425-5624
Facsimile: (850) 224-8832

Jerome W. Hoffman (FBN 0258830)
jerome.hoffman@hklaw.com
Dominic C. MacKenzie (FBN 705690)
donny.mackenzie@hklaw.com
dana.tompkins@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Markenzy Lapointe (FBN 172601)
600 Brickell Ave Ste 3100
Miami, FL 33131-3089
Telephone: (786) 913-4805
Facsimile: (850) 539-1307

*Counsel for Defendants The Florida Bar, Michael J. Higer, John F. Harkness, Lori S. Holcomb, and Jacquelyn P. Needelman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished on December 1, 2017, via the Court's CM/ECF system to:

Ramón A. Abadin
ramon.abadin@sedgwicklaw.com
Sedgwick LLP
One Biscayne Tower, Suite 1500
Two South Biscayne Boulevard
Miami, Florida  33131

Peter D. Kennedy
pkennedy@gdhm.com
David A. King
dking@gdhm.com
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas  78701

*Attorneys for Plaintiff*

/s/Kevin W. Cox
Attorney

#54517853_v1