UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 17-24103-Civ-COOK/GOODMAN

TIKD SERVICES LLC,

    Plaintiff,

vs.

THE FLORIDA BAR, MICHAEL J. HIGER,
JOHN F. HARKNESS, LORI S. HOLCOMB,
et al.,

    Defendants
_____/

**PLAINTIFF TIKD SERVICES, LLC's RESPONSE TO
FLORIDA BAR DEFENDANTS' MOTION TO DISMISS**

    Plaintiff TIKD Services LLC respectfully responds to the Rule 12 motion to dismiss filed by The Florida Bar, Michael J. Higer, John F. Harkness, Lori S. Holcomb, and Jacquelyn P. Needelman ("the Bar Defendants").

**I.   Introduction and summary.**

    The Bar Defendants make little effort to claim the acts alleged in TIKD's Complaint did not, in fact, violate the Sherman Antitrust Act and the equivalent Florida antitrust law. Nor do they deny these acts have, and are continuing to, wreak havoc on a small, innovative Florida company. Instead, the Bar Defendants blithely claim they may violate federal and state antitrust law with impunity because the Bar rules call the Bar "an arm" of a state governmental body. If it ever was, escaping antitrust scrutiny is no longer so simple.

    The 11th Amendment no longer, if it ever did, provide the Bar blanket immunity from antitrust suits. Under current 11th Circuit law, which the Bar does not cite, the Bar Defendants' actions at issue here are not immune because they were not authorized or supervised by the State. And TIDK is entitled to injunctive relief under *Ex parte Young*, regardless of immunity from damages under the 11th Amendment.

Likewise, state action immunity is not available because the Bar Defendants' actions (1) *violated*, rather than *followed*, a "clearly articulated" state policy to displace competition; and (2) were not supervised by a politically-accountable state actor in any way, let alone "actively supervised," as required.

The Supremacy Clause defeats any claim of antitrust immunity based on state law.

The Complaint states sufficient facts to support a finding that the individual Bar Defendants acted outside the scope of their authority to deny dismissal and allow discovery.

*Noerr-Pennington* immunity is unavailable because the Complaint is not based on any effort by the Bar Defendants to influence public officials. It is based on their unauthorized communications to members that the Bar had "found" TIKD engaged in UPL, and their issuance of an unauthorized ethics opinion to the same effect.

*Younger* abstention does not apply to federal claims at all, and would not, in any case, because the Complaint does not seek to interfere with an ongoing proceeding, only to stop and remedy extra-investigative acts.

TIKD's Complaint adequately alleges Section 1 and Section 2 *per se* and rule of reason antitrust claims.

Florida's anti-SLAPP statute does not apply in federal court, and would not apply to TIKD's claims, in any case.

The Motion to Dismiss should be denied in all respects, as explained in detail below.

II.     **The Florida Bar Defendants are not immune from suit.**

The Bar Defendants' primary ground for dismissal is a brash, but legally unsustainable, claim they are free to violate the Sherman Act with legal impunity. They claim complete 11th Amendment and state action immunity from any obligation to comply with federal antitrust law. Mot. at 3-12. If these arguments ever were valid, they no longer are, as the Florida Bar itself helped confirm.

In *Dental Examiners*, the North Carolina State Board of Dental Examiners had been found to have violated federal antitrust law in the course of its "investigation" into whether the state-granted monopoly over practicing dentistry was being violated by unlicensed teeth whiteners. *See N.C. State Bd. of Dental Examiners v. FTC*, 771 F.3d 359 (4th Cir. 2013), *aff'd*, 135 S. Ct. 1101 (2014). The board had violated the Sherman Act by telling non-dentist teeth-whiteners in cease-and-desist letters they were engaged in the "unlicensed practice of

dentistry," by telling mall operators to stop leasing kiosk space to teeth-whiteners, and by asking its sister Board of Cosmetic Art Examiners to tell its members and licensees not to provide teeth-whitening services. *Id*. at 365. The Fourth Circuit upheld these violations, holding the board was not immune from antitrust liability. *Id*. at 365-70.

The Florida Bar joined two other state bar associations in an *amicus curiae* brief urging reversal of the Fourth Circuit. Ex. 1, attached. The Florida Bar told the Supreme Court, in no uncertain terms, that if the Fourth Circuit was affirmed, the Bar would have to comply with the Sherman Act or face lawsuits and damage judgments:

> The Fourth Circuit's decision … will expose those charged by the state with regulating professionals – and their board or council members – to antitrust claims (and, potentially, to awards of treble damages and attorneys fees, as well as to criminal liability).
>
> State bars will have to defend expensive antitrust actions even though states explicitly authorize the state bars to regulate the conduct being challenged.
>
> Lawyers will be reluctant to serve as bar councilors for fear of being sued – and being held individually liable – in treble-damage antitrust actions.
>
> If the Fourth Circuit decision stands, those state bars will face Sherman Act liability … simply because a state legislature chose to populate the [agency] with practicing lawyers as the regulators.
>
> The Fourth Circuit's decision … threatens defendants with treble damages and awards of attorneys fees.

Ex. 1 at 11, 12, 14.

Affirming, the Supreme Court rejected the dissent's simplistic immunity formula, which the Bar had urged there and inexplicably still urges here: if a state calls something "a state agency," "that is the end of the matter." *See* 135 S. Ct. at 1118 (Alito, J., dissenting). Having come out on the losing side of *Dental Examiners*, the Bar should know better.

### A.   The 11th Amendment does not immunize the Bar Defendants from suit.

Although it is their lead point, the Bar Defendants devote a perfunctory two paragraphs to their claim of 11th Amendment immunity. Mot. at 3-4. Although the Bar may have prevailed on this ground in other kinds of cases before, under the *current* 11th Circuit case law its Motion ignores, this argument fails.

#### 1.   The Florida Bar is not immune.

When the Florida Bar effectively admitted state action immunity would not protect its anticompetitive conduct in its *Dental Examiners* brief, it also effectively conceded its back-

up 11th Amendment immunity defense:

> Treating a state agency as a 'private actor' would not only potentially deprive state agencies and their officials of state action immunity, *but would also cast doubt on the availability of other immunities, such as immunity under the Eleventh Amendment*.

Ex. 1 at 16 n.3 (emphasis added).  This concise footnote more accurately states current law than the Bar's pending Motion.

The Bar Defendants, predictably, rely on *Kaimowitz v. The Florida Bar*, 996 F.2d 1151 (11th Cir. 1993).  Mot. at 3.  *Kaimowitz* was an unsigned panel decision adopting a district court order dismissing a *pro se* suit brought by a Bar member claiming the Bar had "support[ed] 'the exploitation and resegregation of blacks,'" *id*. at 1115, not a Sherman Act case based on the Bar's enforcement of its legal monopoly.  The district court had found 11th Amendment immunity based solely on the State Bar Rules' declaration that the Bar is "an official arm of the Court."  *Id.*

After *Kaimowitz*, the Supreme Court decided *McMillian v. Monroe County*, 520 U.S. 781 (1997), which provided further guidance on sovereign immunity claims.  Following *McMillian*, the 11th Circuit, sitting *en banc*, adopted a four-factor test:

> In Eleventh Amendment cases, this Court uses four factors to determine whether an entity is an "arm of the state" in carrying out a particular function:  (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.

*Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc).  *Manders*, which the Bar ignores, supplants *Kaimowitz*.[1]  The *Manders* test closely aligns 11th Amendment immunity doctrine with state action immunity after *Dental Examiners*.  Both doctrines now reject

---

[1] A panel decision is binding circuit precedent "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc."  *Walker v. Jefferson Cty. Bd. of Educ.*, 771 F.3d 748, 752 (11th Cir. 2014).  *Kaimowitz*'s perfunctory treatment of 11th Amendment immunity unquestionably was abrogated by *McMillian* and *Manders*' four-part test.  "In *Manders*, we established *a single test* to determine when an office or entity acts as an arm of the state."  *Lake v. Skelton*, 840 F.3d 1334, 1337-38 (11th Cir. 2016) (emphasis added).

The two unpublished and therefore non-binding 11th Circuit opinions that relied on *Kaimowitz*'s sovereign immunity holding did not recognize that its analysis has been abrogated by *Manders*.  *See Brown v. The Florida Bar*, 243 F. App'x 552, 553 (11th Cir. 2007); *Henry v. Florida Bar*, 701 F. App'x 878, 880 (11th Cir. 2017).  In *Manzini v. The Florida Bar*, 511 F. App'x 978 (11th Cir. 2013) (unpublished), the court concluded that the state bar official at issue acted within the scope of her discretionary authority because, unlike here, the Bar rules explicitly required the challenged conduct.  *Id.* at 981-82.

formulaic declarations and instead examine *specific* agency functions, requiring *actual* state control and oversight. The Bar's actions at issue in this case fail the *Manders* test.

<u>How state law defines the Bar</u>. The preamble to the Florida Bar Rules declares the Bar to be "an official arm of the Court." This is the start, not the end, of the analysis.

<u>The degree of State control</u>. Under *Manders*, the 11th Amendment immunity turns on the "particular function in issue." 338 F.3d at 1309. The State Bar Defendants' anticompetitive actions "in issue" here were neither controlled nor supervised by the State. *See* Section II.B, below.

<u>Where the entity derives its funds</u>. The Bar is funded by its members' dues, not the State of Florida.[2]

<u>The entity responsible for judgments</u>. The Bar itself told the Supreme Court that it and its officers would be exposed to antitrust damage judgments, not the State of Florida. Ex. 1 at 11. This suit does not threaten the State's coffers.

Under the now-applicable *Manders*' four-part test, the Bar Defendants have no 11th Amendment immunity from the claims against them in this lawsuit.

### 2. Regardless of immunity to damages, TIKD can obtain injunctive relief under *Ex parte Young*.

The Bar Defendants also ignore *Ex parte Young*, 209 U.S. 123 (1908), which recognizes federal courts' power to enjoin state officials from violating federal law. *Summit Medical Associates, PC v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (*Ex parte Young* "is a long and well-recognized exception" to 11th Amendment immunity for suits against state officers seeking equitable relief to end violations of federal law). Even if the State Bar were immune from damages (and it is not, under *Manders* and *Dental Examiners*), the State Bar Defendants in their official capacity remain subject to this Court's power under *Ex parte Young* to grant injunctive relief, and so should not be dismissed.

---

[2] See "Annual Fees" reported under "Source of Funds" and "General Revenue & Expense" in Florida Bar proposed budget for fiscal year 2017-18, available at
https://www4.floridabar.org/TFB/TFBResources.nsf/Attachments/0821D88E07496C0E852580FE004820B1/%24FILE/FY%2017-18%20Budget%20for%20News.pdf.

B.  **The Defendants are not entitled to state action immunity for the acts made the basis of TIKD's Complaint.**

As with 11th Amendment immunity, merely being called an "official arm" of the state is insufficient to obtain state action immunity. "The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of its members." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791 (1975). The Bar concedes, as it must, that to earn state action immunity, it must meet the standard set by *Parker*, *Midcal* and, most recently, *Dental Examiners*.[3] Mot. at 5. "A nonsovereign actor controlled by active market participants … enjoys *Parker* immunity only if it satisfies two requirements: first, that the challenged restraint … be one clearly articulated and affirmatively expressed as state policy, and second that the policy … be actively supervised by the state." *Dental Examiners*, 135 S. Ct. at 1110 (citations omitted). Although it must meet both prongs, for the actions challenged here, the Bar fails *both*.[4]

1.  **The anticompetitive actions at issue are not part of a clearly articulated state policy to displace competition.**

What constitutes "the practice of law" is famously difficult to define. The Florida Supreme Court reserves the exclusive right to make that state law determination. For that reason, the Bar's delegated power over its members' legal monopoly is narrowly prescribed: it can investigate, it can bring suit, and that's it. Bar Rule 10-6.3. It cannot send cease-and-desist letters or make "findings" that a company is engaged in UPL, let alone to help a private law firm eliminate competition. *That* is the conduct at issue here, not, as the Bar claims, a broad challenge to its "rules and policies" or "process." Mot. at 8. The State Bar Defendants do not, and cannot, point to a "clearly articulated state policy" justifying the conduct alleged in this lawsuit. In fact, the rules governing the State Bar give no authority

---

[3] *Parker v. Brown*, 317 U.S. 341 (1943); *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980) ("*Midcal*"); *N.C. State Bd. of Dental Examiners v. FTC*, 135 S. Ct. 1101 (2015) ("*Dental Examiners*").

[4] Two non-binding cases that fail to apply *Midcal* or *Dental Examiners* do not apply here. The first, *Ramos v. Tomasino*, 701 Fed. App'x 798 (11th Cir. 2017) (unpublished) is an unpublished circuit opinion, and thus is not precedent. Eleventh Circuit Rule 36-2 ("unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."). That pro se case was brought by a serial vexatious litigant complaining about the Bar's destruction of old disciplinary proceeding records, not actual anticompetitive conduct. The second, *Rosenberg v. State of Florida*, 15-22113-CIV, 2015 WL 13653967 (S. D. Fla. Oct. 14, 2015), declined to even apply *Midcal*, because the plaintiff did not even "attempt to explain what acts violated the Sherman Act."

to issue UPL opinions disguised as ethics opinions, *compare* Bar Rule 2-9.4(d) *with* Bar Rule 10-9, and they *prohibit* issuing ethics opinions while a UPL investigation or ethics complaint is pending[5] – both of which are the case as to TIKD.

### 2. The anticompetitive actions at issue were not "actively supervised."

The Bar Defendants claim *carte blanche* to violate the Sherman Act because the Florida Supreme Court promulgated the rules authorizing it to conduct UPL investigations and file suit. Mot. at 7. This hardly shows active supervision of the anticompetitive acts on which this lawsuit is based.

To be "actively supervised," a politically accountable supervisor "must review the substance of the anticompetitive decision, not merely the procedures followed to product it," "have the power to veto or modify particular decisions to ensure they accord with state policy," and "may not itself be an active market participant." *Dental Examiners*, 135 S. Ct. at 1118. Beyond these "constant requirements," "the adequacy of supervision otherwise will depend on the circumstances of a case." *Id*.

The Bar's interminable investigation of TIKD has been wholly unsupervised by a politically accountable state actor, and its Motion does not claim (let alone prove) otherwise. Defendants' extra-investigative communications to lawyers about TIKD were unsupervised. The "non-binding opinions" the Motion admits they expressed were unsupervised. The Bar's mysterious, unsigned staff opinion targeting a suspiciously TIKD-like company was not approved by the Florida Supreme Court, nor was the Bar's giving that opinion to The Ticket Clinic to use against TIKD's cooperating attorneys. This information-opinion-accusation feedback loop between the Bar staff and The Ticket Clinic, so devastating to TIKD's ability to compete, was not supervised by the Florida Supreme Court. The Bar admits this. Mot. at 11 (Florida Supreme court "does not review the Bar's ethics opinions").

The Bar's behavior eerily echoes the North Carolina dental board's. The Bar was not foolish enough to send formal cease-and-desist letters, but it made statements and issued a written opinion (in violation of its own rules) intended to cause attorneys to stop representing TIKD customers. The Bar's much-belated admission to this Court that it "has

---

[5] *See* Florida Bar Procedures for Ruling on Questions of Ethics, Rule 2(a)(1)(F) (hereinafter, "Ethics Rule 2(a)(1)(F)"), available at https://www.floridabar.org/ethics/ethotline/ethotline001/.

no power to determine that any specific conduct constitutes UPL" does not erase the effect of its staff's behavior, or the harm caused by The Ticket Clinic's use of the Bar's willingness to state, imply, and hint that TIKD is violating Florida law.

The Bar claims its communications about the status of its UPL investigation complied with Bar rules, but this contradicts the Complaint's allegations, which must be taken as true, and is simply wrong. The Bar's "disclosure of information" rules do not permit the Bar to state or suggest it has "found" or "determined" UPL, *see* Bar Rule 10-8(e), and it is precluded from giving opinions on pending matters, *see* Ethics Rule 2(a)(1)(F). The mere existence of rules does not show "active supervision" by the state. "The active supervision requirement demands, inter alia, that the state officials *have and exercise power to review particular anticompetitive acts*" and then "disapprove of those that fail to accord with state policy." *Dental Examiners*, 135 S. Ct. at 1112 (emphasis added).

The Bar also claims its "staff opinion" was issued pursuant to Bar rules. Mot. at 9. Again, this assertion contradicts the Complaint's allegations, and cannot be a basis to dismiss on Rule 12(b). In any case, the opinion did *not* follow the rules, for at least three reasons: (1) it was a UPL opinion disguised as an ethics opinion, and the Rules do not permit the Bar to issue UPL advisory opinions without following strict procedural rules, including public notice and a public hearing, none of which the Bar followed;[6] (2) even if it was an ethics opinion, it was issued to The Ticket Clinic, not a TIKD-cooperating lawyer, contrary to the requirement that opinions must concern the requesting lawyer's "own contemplated conduct;"[7] and (3) there was a pending UPL investigation of TIKD and multiple pending ethics complaints against lawyers who represented TIKD's clients (filed by a The Ticket Clinic lawyer, of course), and the Bar rules *prohibit issuing ethics opinions when such internal matters are pending*.[8]

The Bar's admission that its formal ethics opinions (let alone "staff opinions" and oral "non-binding" statements) are not reviewed (or reviewable) by the Florida Supreme Court ends the "active supervision" inquiry. *Dental Examiners*, 135 S. Ct. at 1112 (active

---

[6] *See* Bar Rule 10-9.

[7] *See* Bar Rule 2-9.4(d).

[8] *See* Ethics Rule 2(a)(1)(F) ("Staff opinions will not be issued if it is known to staff that the inquiry . . . is the subject of a proceeding brought under the Rules Regulating The Florida Bar.").

supervision demands that the state officials "have and exercise power to review particular anticompetitive acts" and then disapprove of those that do not accord with state policy).

### C. The individual Bar Defendants are not entitled to qualified immunity.

The individual Bar Defendants argue they are entitled to qualified immunity claiming all of their challenged actions fell within the scope of their legitimate job functions. Mot. at 12-13. This ignores TIKD's Complaint, which alleges "The Florida Bar, through its agents [the individual Defendants], engaged in a concerted effort to exclude TIKD from the Relevant Market" through action that "plainly exceeds The Florida Bar's narrow authority to investigate alleged [UPL]." Comp. ¶ 86. The Defendants' argument that their actions were authorized is a merits argument, it is contrary to TIKD's well-pled facts, and it cannot support Rule 12(b) dismissal.

Even if the Court were to look outside the Complaint, the Bar Defendants misstate their authority under the Bar Rules. The Rules make clear that only limited information is appropriate for disclosure about the status of ongoing UPL investigations. Rule 10-8(e) provides that bar representatives should respond to inquiries about UPL investigations by providing *only*: (1) the fact an investigation is pending; and (2) the investigation status. Likewise, the Bar Rules prescribe specific procedures for issuing ethics and UPL opinions, which, as described above, the Bar Defendants did not follow. UPL opinions require public notice and hearing before issuance, ethics opinions may only be issued to a requesting attorney concerning his or her "own contemplated conduct," and they cannot be issued *at all* on matters that are the subject of active UPL or ethics investigations.[9]

Here, TIKD has alleged direct and indirect evidence that the Bar Defendants individually, and in collaboration with the Ticket Clinic, ignored Florida Bar rules to take the following unauthorized actions to harm TIKD:

- After being falsely told by the Ticket Clinic that the Bar had determined TIKD was engaged in UPL and that they should call Bar UPL Counsel Jacquelyn Needelman, Needelman repeated The Ticket Clinic's falsehoods. Needelman told one attorney that the Florida Bar had "found" TIKD was engaged in UPL in response to inquiries, when no such finding had been made nor is the bar authorized to make such a finding. Comp. ¶ 69. Another attorney was so "deeply concerned after speaking with [Needelman]" that he stopped representing TIKD customers. *Id.* ¶ 80.

---

[9] *See* notes 5-7, above.

- When asked directly by Hollander of the Ticket Clinic, Needelman improperly shared information related to the Bar's UPL and ethics investigations—information which Hollander then used to bolster his ethics complaint against an attorney representing TIKD customers. *Id.* ¶ 78.
- The Bar provided a Bar Staff Opinion to The Ticket Clinic, implying TIKD's business model was illegal and would expose attorneys to ethics violations. *Id.* ¶¶ 60-62. The Opinion was issued while UPL and ethics investigations regarding TIKD and lawyers representing TIKD customers were underway. *Id.* ¶¶ 49-52. Defendant Lori Holcomb is the Division Director of the Bar's ethics division from which the Opinion would have originated. *Id.* ¶ 12.

Based on these specific factual allegations that the Bar Defendants were acting outside the scope of their discretionary authority, dismissal at this stage of the case is premature. *Cf. Lopez v. United States*, 656 F. App'x 957, 964 (11th Cir. 2016) (defendants acted within their discretionary authority because their actions were authorized by relevant agency regulations); *see also Bey v. Abrams*, No. 7:14-CV-02205-RDP, 2015 WL 3839908, at *6 (N.D. Ala. June 22, 2015) ("At this stage [12(b)(6)], the court finds that absent some limited and targeted discovery, a qualified immunity decision on certain of Plaintiff's Fourth Amendment claims would be premature."). At a minimum, limited discovery on qualified immunity is appropriate before dismissing any of the individual defendants, so TIKD may determine who, if anyone, authorized Bar staff's actions. *See Anderson v. Bd. of Regents of Univ. Sys. of Georgia*, No. CIV.A 104CV3135JEC, 2010 WL 427652, at *6 (N.D. Ga. Feb. 2, 2010) (noting that limited discovery on job duties, underlying acts, and official policies was appropriate to resolve qualified immunity issues).

D.  **The Florida Bar cannot immunize itself or its officials from violations of federal law.**

The individual Bar Defendants claim impunity to violate federal law under Bar Rule 10-10.1, but the Rule does not, and cannot provide such immunity. Under the Supremacy Clause, only federal law can provide immunity from violations of federal law; state law does not control. *Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 771 (11th Cir. 2014). Because the Bar Defendants are not immune under federal law, a clam of state law immunity – especially a Bar Rule – cannot protect them.

### E.   *Noerr-Pennington* immunity is not available.

*Noerr-Pennington* provides "[j]oint *efforts to influence public officials* do not violate the antitrust laws even though intended to eliminate competition." *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965) (emphasis added).  This doctrine does not apply.

The Bar Defendants' argument again depends on its mischaracterizing of TIKD's lawsuit as an effort to prevent the Bar from "petition[ing] the [Florida Supreme Court] to take action."  Mot. at 15.  TIKD seeks no such thing.  Just like *Dental Examiners*, TIKD's suit is focused on halting and redressing the harm caused by the Bar's extra-investigative actions:  falsely telling lawyers that it has "found" TIKD has violated the law, issuing unauthorized opinions to that effect, and facilitating a competitors' smear campaign against TIKD.  The Bar remains free to do the two things it *can* do – investigate, and file suit.

The Bar euphemistically describes its activity as "expressing its non-binding opinions on what constitutes UPL," Resp. at 15, but it has *no authority to do that*—not even under its own rules.   The cease-and-desist letters in *Dental Examiners* expressed "non-binding opinions" about unlicensed practice of dentistry, too.  This striking admission that the Bar is inflicting antitrust injury without active supervision does not place its actions within *Noerr-Pennington*, because those unauthorized UPL "opinions" were not "efforts to influence public officials." *United Mine Workers of Am.*, 381 U.S. at 670.  The Bar can express its "opinion" to public officials if and when it files suit.[10]

Indeed, courts have held that virtually identical conduct falls outside of the doctrine. *See, e.g., Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 358 (7th Cir. 1990) (anticompetitive communications by AMA targeting chiropractors "were not aimed at obtaining legislative action.  They were instead aimed at medical physicians and hospitals, cautioning them that it was unethical ... to associate professionally with chiropractors.").  Nor were these

---

[10] *See In the Matter of the N. Carolina Bd. of Dental Examiners*, 152 F.T.C. 640 (F.T.C. 2011) ("The ALJ's Order does not prohibit the Board from investigating, filing a court or administrative action, or communicating notice of its intent to file a court or administrative action against a non-dentist provider for an alleged violation of the Dental Practice Act.").  In light of the demonstrated coordination with TIKD's competitor, further discovery may prove the Bar's formal UPL investigation was to interfere with TIKD's business, regardless of the merits of any UPL allegation.  If so, not even the Bar's petitioning to the Florida Supreme Court would be protected by *Noerr-Pennington*.  *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993).  TIKD reserves the right to pursue this claim, if needed, after further discovery.

statements "intimately related to the Bar's UPL investigation or potential litigation, as it claims. Resp. at 15 (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006)). To the contrary: the Bar Rules *prohibit* issuing opinions when the matter is subject to a pending UPL investigation of ethics complaint. *See* Ethics Rule 2(a)(1)(F); Bar Rule 10-6(a) (Conduct of Proceedings). The cases the Bar cites, all involving direct pre-litigation activity, do not apply.[11]

### F. The Bar Defendants are not immune from state antitrust liability.

Incorporating all their other immunity arguments by reference, the Bar Defendants claim immunity from Florida antitrust law. Resp. at 15. Plaintiff does likewise. Because the Bar Defendants are not immune from federal law, they are not immune from state law.

### III. *Younger* abstention does not apply.

*Younger* abstention is inapplicable. First, *Younger* does not apply to federal antitrust claims at all, in light of the exclusivity of federal jurisdiction over such claims. *See Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 62 (2d Cir. 1986) ("[A]bstention is clearly improper when a federal suit alleges claims within the exclusive jurisdiction of the federal courts.").[12]

Second, TIKD does not seek to enjoin an "ongoing state bar disciplinary proceeding," *Thompson v. Florida Bar*, 526 F. Supp. 2d 1264, 1272 (S.D. Fla. 2007), or any other proceeding. The Bar's UPL investigation is not an "official proceeding," but even if it were, TIKD does not seek to enjoin it, or a lawsuit if filed. The Bar Defendants' actions at issue in this lawsuit – statements to outside attorneys, stating "non-binding" opinions that TIKD is engaged in UPL, and issuing an unauthorized written staff opinion – were not part of any "official proceeding." They were, in fact, *prohibited* by the Bar's own rules.

As to the staff opinion, TIKD's antitrust claims based on that opinion cannot be barred by *Younger* because there was no "opportunity in the state proceedings" to have these

---

[11] *See McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1559 (11th Cir. 1992) (pre-suit litigation threats to targeted defendant); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006) (demand letters).

[12] Defendants claim the Sixth Circuit applied *Younger* to abstain from deciding federal antitrust claims in *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 722 (6th Cir. 1993), but this is wrong. *Berger*, which was decided long before *Dental Examiners*, held the antitrust claims in that case barred by state action immunity. *Berger* applied *Younger* to the plaintiff's *other* claims, but not to the antitrust claims.

challenges decided, as *Younger* requires. *Thompson*, 526 F. Supp. 2d at 1272. The "ethics opinion" process is opaque and non-adjudicative. *See* Mot. to Dismiss at 11. There was no opportunity for TIDK to raise these objections under the Florida Bar Procedures for Ruling on Questions of Ethics.

IV.    **TIKD's Complaint states Section 1, Section 2 and state antitrust claims.**

In federal courts, "dismissals [on the pleadings] are particularly disfavored in fact-intensive antitrust cases." *Andrx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1235 (11th Cir. 2005) (alterations in original) (citation omitted). The Bar Defendants' scatter-shot arguments fall far short of the high hurdle set under Rule 12(b)(6) for antitrust cases.

A.    **The Complaint properly alleges the relevant market.**

TIKD, working with licensed Florida lawyers, competes in the market by providing ticked drivers access to legal services. The Bar Defendants, alone and with The Ticket Clinic, have sought to exclude TIKD from this market by scaring away attorneys who would represent TIKD's customers. This is a *per se* antitrust violation. Compl. ¶ 89. *See Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212 (1959) ("Group boycotts, or concerted refusals [to deal], have long been held to be in the forbidden category.").

Because TIKD has alleged a *per se* violation, the Bar Defendants' criticism of TIKD's market definition fails. *See* Areeda & Hovenkamp, Antitrust Law, ¶ 307, at 97 ("As long as both the rule of reason and per se claims are in play, the complaint will not be dismissed for failure to allege a relevant market."); *see also F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 422, 436 (1990) (no proof of market or market power required "to warrant condemnation under the antitrust laws" of attorneys' "concerted refusal to serve an important customer in the market for legal services"). Nonetheless, TIKD accurately defined the relevant market. Compl. ¶ 85.

The Bar argues that as "an arm of the Supreme Court of Florida," it "does not engage in the practice of law nor does it provide legal services," and only its members do. Mot. at 17. The Bar cites no authority dismissing an antitrust claim against a bar association on this ground. *Id*. The Supreme Court already rejected this argument. "The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of its members." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791 (1975) (state bar, by imposing

price floor, "has voluntarily joined in what is essentially a private anticompetitive activity, and in that posture cannot claim it is beyond the reach of the Sherman Act").

"When an organization is controlled by a group of competitors, it is considered to be a conspiracy of its members." *N. Texas Specialty Physicians v. F.T.C.*, 528 F.3d 346, 356 (5th Cir. 2008). In addition to alleging this "conspiracy of members" theory, TIKD alleges the Bar Defendants have conspired with a law firm and lawyers in private practice, thereby making the Bar's claim that it does not directly participate in the market irrelevant. Comp. ¶¶ 60-61, 73-79, 86-89.

Market-participant-controlled professional associations are regularly held subject to federal antitrust law. *See Dental Examiners*, 135 S. Ct. at 1110 (a "nonsovereign actor controlled by active market participants – such as the [North Carolina Dental] Board" is subject to antitrust laws); *In the Matter of the N. Carolina Bd. of Dental Examiners*, 152 F.T.C. 640 (F.T.C. 2011) ("[T]he Board has market power based on the Board's power to exclude competition."); *Teladoc, Inc. v. Texas Med. Bd.*, 112 F. Supp. 3d 529, 540 (W.D. Tex. 2015) (granting preliminary injunction against Texas Medical Board for Sherman Act violations) (citing *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679 (1978); *Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975); *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447 (1986)). Imposing antitrust liability on the "organization – which is best situated to prevent antitrust violations through the abuse of its reputation – is most faithful to the congressional intent that the private right of action deter antitrust violations." *Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 572-73 (1982).

In one sentence, the Bar quibbles over TIKD's precise definition of the relevant market, claiming "'access to legal services' and 'legal services' are not interchangeable substitutes." Mot. at 18. This empty assertion "fails to provide clarity," not TIKD's definition. TIKD alleged in detail how customers obtain legal representation through its services. Comp. ¶¶ 24-32. TIKD alleges customers switch from The Ticket Clinic to TIKD, showing interchangeability – and competition – of the services offered. *Id.* ¶ 47.

**B.      The Complaint properly alleges monopolization by the Bar.**

Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce." 15 U.S.C. § 2. However, "the possession of monopoly

power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (emphasis in original). Section 2 is violated when monopoly power is used in anticompetitive conduct. This is what TIKD alleges, in detail.

TIKD alleged monopoly power. Compl. ¶ 33 (Bar's "membership is comprised of all persons admitted ... to practice law in the state"). The Bar has monopoly power, by definition, because its membership constitutes all licensed lawyers, and only licensed lawyers may practice law. Without the Bar's members, there would be no market.

The Bar reductively claims its monopoly power cannot be "unlawful," since "it was created pursuant to Florida law." Resp. at 17. If this is true, *Dental Examiners* and the entire state action doctrine was needless. State-granted monopoly power is the *starting* point for the analysis, not the end. "The use of monopoly power, however lawfully acquired, to foreclose competition, to gain a competitive advantage, or to destroy a competitor, is unlawful." *United States v. Griffith*, 334 U.S. 100, 107 (1984). TIDK alleges the Bar Defendants have violated Section 2 by abusing the Bar's monopoly power in exactly that way – by using its authority over its members, alone and in combination with the Ticket Clinic, as a weapon to stifle the competition TIKD represents. Comp. ¶¶ 60-61, 73-79, 86-89. "[I]f a monopolist abuses its monopoly power and acts in an unreasonably exclusionary manner vis-à-vis rivals or potential rivals, then [Section 2] is violated." *Byars v. Bluff City News Co., Inc.*, 609 F.2d 843, 853 (6th Cir. 1979) (listing cases finding monopolists' refusal to deal unlawful).

TIKD has alleged monopoly power and anticompetitive conduct, and thus has stated a claim for the Bar Defendants' violation of Section 2.

      **C.    The Complaint adequately alleges claims for attempted monopolization and conspiracy to monopolize.**

Even if there were a question as to the Bar's monopoly power, and there is not, the Bar would still be answerable to TIKD's claim of attempted monopolization and conspiracy to monopolize. *See Woods Expl. & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1304 (5th Cir. 1971) ("The related offenses of attempting to monopolize and combining or conspiring to monopolize do not require that actual possession of monopoly power be shown before the cause of action is established.").

TIKD has adequately alleged the "dangerous probability of success" of the attempted monopolization in its allegations of the relevant market and the Bar's market power. Compl. ¶¶ 33, 85. This is sufficient at the motion to dismiss stage. *Iris Wireless LLC v. Syniverse Techs.*, 49 F. Supp. 3d 1022, 1030-31 (M.D. Fla. 2014) ("[a] dangerous probability of success arises when the defendant comes close to achieving monopoly power in the relevant market;" plaintiff's allegation of market power "sufficient at this stage of the proceedings to survive a motion to dismiss").

TIKD has also adequately alleged the Bar's intent to monopolize. Compl. ¶ 92 (the Bar engaged in "willful acquisition, maintenance, and/or enhancement of monopoly power"); *id.* ¶ 4 ("The Bar issued an informal 'opinion' with the intent and effect of scaring lawyers away from working with TIKD."); *id.* ¶ 61 ("[T]he Bar understood, knew, and intended that the Bar Staff Opinion would be used by The Ticket Clinic and its attorneys to deter lawyers from representing TIKD customers and thereby competing with The Ticket Clinic."); *id.* ¶ 86 ("The Florida Bar, through its agents, engaged in a concerted effort to exclude TIKD from the Relevant Market by enabling and reinforcing The Ticket Clinic's anticompetitive propaganda campaign."). TIKD's allegations of the Bar Defendants' exclusionary conduct itself sufficiently alleges intent. *See Volvo N. Am. Corp. v. Men's Intern. Prof'l Tennis Council*, 857 F.2d 55, 74 (2d Cir. 1988) ("Proof of the first element of an attempted monopolization claim, anticompetitive or exclusionary conduct, may be used to infer the second element, specific intent to monopolize … .").

Defendant cites one case where an antitrust complaint was dismissed for failure to allege "intent," but the plaintiff there had wrongly argued "specific intent and dangerous probability of success are ... not elements that are required to be pled." *Middlebrooks v. City of Eustis*, 563 F. Supp. 1060, 1061 (M.D. Fla. 1983). TIKD does not make that argument. TIKD has adequately alleged intent.

**V.     The Bar Defendants' Florida anti-SLAPP argument fails.**

Perhaps in an effort to tack on an attorney's fee claim, the Bar Defendants have alleged a "violation" of Florida's anti-SLAPP statute. This fails for two reasons.

**A.     The Florida statute does not apply in federal court or to federal claims.**

Florida's anti-SLAPP state is procedural, not substantive, so it does not apply in federal court at all. *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015)

("A federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. Anti–SLAPP Act's special motion to dismiss provision."); *cf. Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1362 (11th Cir. 2014) (Georgia anti-SLAPP statute's verification requirement does not apply in federal court).

Moreover, the Supremacy Clause bars application of a state anti-SLAPP statute to dismiss federal claims. *See Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1231 (W.D. Wash. 2012) ("anti-SLAPP statutes are not applicable to federal claims"). S*ee also* 19 Fed. Prac. & Proc. Juris. § 4509.

**B.     Even if it applied, this case is not subject to anti-SLAPP dismissal.**

TIKD's claims fall outside the Florida statute.  The Bar Defendants cannot show any "[f]ree speech in connection with public issues" at issue in this case.  The statute narrowly defines that term to include only two categories of speech: "statement[s] ... [1] made before a governmental entity ..., or ... [2] made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work."  Fla. Stat. § 768.295(2)(a).  None of the other grounds for invoking the statute apply (*i.e.*, "petition for redress of grievances," "peaceful assembly," or "instruction of representatives of government").  TIKD's lawsuit is not based on any such rights, as defined, let alone was this suit filed "primarily because" of an exercise of those rights.  Fla. Stat. § 768.295(a)(3).  TIKD filed this suit *primarily because* of the antitrust injury Defendants have inflicted.

**VI.    Conclusion.**

For these reasons, Plaintiff TIKD Holdings, LLC respectfully requests the Court deny the Florida Bar Defendants' Motion to Dismiss, award TIKD its attorneys' fees under Fla. Stat. § 768.295 (only if the Court concludes it applies), and grant such other and further relief to which it may be justly entitled.

Respectfully submitted,

*/s/  Ramón A. Abadin*
Ramón A. Abadin
Florida Bar No. 707988
ramon.abadin@sedgwicklaw.com
**SEDGWICK LLP**
One Biscayne Tower, Suite 1500
Two South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305)670-4777
Facsimile: (877) 540-6951


*/s/  Peter D. Kennedy*
Peter D. Kennedy
Texas Bar No. 11296650
pkennedy@gdhm.com
Admitted *pro hac vice*
David A. King
Texas Bar No. 24083310
dking@gdhm.com
Admitted *pro hac vice*
**GRAVES, DOUGHERTY, HEARON & MOODY, P.C.**
401 Congress Ave., Suite 2200
Austin, Texas 78701
Telephone: (512) 480-5764
Facsimile: (512) 536-9908

**ATTORNEYS FOR PLAINTIFF
TIKD SERVICES LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing has been served on the counsel of record identified below in a manner authorized by the Federal Rules of Civil Procedure on the 15th day of December, 2017:

Kevin Cox
HOLLAND & KNIGHT LLP
315 S. Calhoun Street, Ste. 300
Tallahassee, FL  32301
kevin.cox@hklaw.com

Markenzy Lapointe
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Ave., Ste. 3100
Miami, FL 33131
markenzy.lapointe@pillsburylaw.com

Dominic C. MacKenzie
Jerome Wayne Hoffman
HOLLAND & KNIGHT LLP
50 N. Laura St., Ste. 3900
Jacksonville, FL  32202
donny.mackenzie@hklaw.com
jerome.hoffman@hklaw.com

Steven I. Peretz
PERETZ CHESAL & HERRMANN PL
2 S. Biscayne Blvd., Ste. 3700
Maimi, FL 33131
speretz@pch-iplaw.com

Chris Kleppin
GLASSER & KLEPPIN, P.A.
9862 W. Broward Blvd., Ste. 105
Plantation, FL 33324
ckleppin@gkemploymentlaw.com

/s/  *Ramón A. Abadin*
Ramón A. Abadin