UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:17-cv-24103-Cooke/Goodman

_____
                                    )
TIKD Services LLC,                  )
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )
The Florida Bar, *et al.*,          )
                                    )
            Defendants.             )
_____ )

STATEMENT OF INTEREST ON BEHALF OF
<u>THE UNITED STATES OF AMERICA</u>

MAKAN DELRAHIM
*Assistant Attorney General*

ANDREW C. FINCH
*Principal Deputy Assistant Attorney General*

KRISTEN C. LIMARZI
ROBERT B. NICHOLSON
STEVEN J. MINTZ
*Attorneys*

U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001
Phone: (202) 353-0256
Fax: (202) 514-0536
Email: Steven.Mintz@usdoj.gov

## INTEREST OF THE UNITED STATES

The United States respectfully submits this statement pursuant to 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the Department of Justice to attend to the interests of the United States in any case pending in a federal court. The United States is principally responsible for enforcing the federal antitrust laws, *United States v. Borden Co.*, 347 U.S. 514, 518 (1954); *see* 15 U.S.C. §§ 4, 25, and has a strong interest in their correct application.

## SUMMARY OF ARGUMENT

The Florida Bar defendants assert, as one ground for their motion to dismiss, that they are entitled to protection against Sherman Act claims by the state-action doctrine of *Parker v. Brown*, 317 U.S. 341 (1943), without having to satisfy either the "clear articulation" or "active supervision" requirements of that doctrine. That position is incorrect. The Supreme Court's most recent state-action decision, *N. Carolina State Bd. of Dental Examiners v. FTC*, 135 S. Ct. 1101 (2015), clarified the state-action doctrine with respect to state agencies that regulate learned professions. It requires that the Bar, if "controlled by active market participants," *id.* at 1114, must satisfy the clear articulation and active supervision requirements in order to obtain state-action protection.

## BACKGROUND

1. Courts have long recognized that vigorous competition is a crucial factor that fuels innovation. *See, e.g.*, *United States v. Aluminum Co. of America*, 377 U.S. 271, 281 (1964) (aggressive competitor "was a pioneer in aluminum

insulation and developed one of the most widely used insulated conductors"). Likewise, technological innovations often have enormous pro-competitive benefits. This reinforcing cycle of competition and innovation generates "dynamic efficiency" in the marketplace, which ultimately allows consumers to reap the rewards of new and exciting products. Thomas O. Barnett, "Maximizing Welfare Through Technological Innovation," 15 Geo. Mason L. Rev. 1191, 1200 (2008) ("[W]hen innovation leads to dynamic efficiency improvements . . . it is a particular *type* of competition, and one that we should be careful not to mistake for a violation of the antitrust laws.").

There are few modern technologies that exemplify dynamic efficiency and innovation better that the mobile device revolution and the "app" business culture it enabled. Once the subject of science fiction, mobile devices and apps "have sparked a revolutionary change in how Americans work, live, and shop." U.S. House of Representatives, Committee on Science, Space, and Technology, Subcommittee on Research and Technology, "Smart Health: Empowering the Future of Mobile Apps" (Mar. 2, 2016) *available at* https://science.house.gov/sites/republicans.science.house.gov/files/documents/HHRG-114-SY15-20160302-SD001.pdf. "Today, consumers spend more time on mobile apps than browsing the internet or watching traditional television. During the past Thanksgiving holiday weekend, shoppers purchased over $2.29 billion worth of products using mobile devices." *Id*. To be sure, new and innovative mobile device apps can be disruptive. Business models entrenched for decades have witnessed

new competition from mobile platforms that can profoundly change an industry. But almost invariably, the winners from the process of innovation and competition are *consumers*.

2.   Plaintiff TIKD Services alleges in its First Amended Complaint (FAC) that it uses smart-phone technology to allow Florida drivers to deal with traffic tickets more predictably and efficiently.  TIKD alleges that, although it is owned or operated by a non-lawyer, it competes legally against The Ticket Clinic and its "traditional model" of traffic ticket defense, because TIKD's platform merely brings together Florida drivers and independent Florida-licensed lawyers.  FAC ¶¶ 2, 25-28, 47.  TIKD alleges that the Florida Bar, several Bar officers, and The Ticket Clinic defendants conspired to eliminate TIKD as a competitor by waging a misinformation campaign to scare away lawyers who work with TIKD.  FAC ¶¶ 3, 58, 61-69, 73-78.  The misinformation consisted of giving the false impression that working with TIKD would violate Florida ethical rules and that the Bar already had determined that TIKD engages in the unlicensed practice of law (UPL).  FAC ¶¶ 4-5, 51-52, 57, 61-69.  This conduct, according to TIKD, violated (among other things) Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

The Bar defendants and Ticket Clinic defendants moved to dismiss on several grounds, one of which is that the Bar is exempt from the antitrust laws under the state-action doctrine.  That doctrine provides that the Sherman Act does not reach the conduct of states, acting in their sovereign capacity, when they order their economies by displacing competition in favor of regulation or monopoly public

3

service. The Bar's initial state-action argument is that it is a sovereign entity—an "arm of the Florida Supreme Court"—and therefore entitled to state-action protection without having to meet the "clear articulation" or "active supervision" requirements that Supreme Court precedent has imposed as pre-requisites to state-action protection. Bar Mot. (Doc. 17) at 4-7. This is incorrect. To obtain state-action protection, the Bar must act pursuant to a clearly articulated state policy to displace competition, and its alleged conduct must be actively supervised by the state.[1]

## ARGUMENT

### I. The State-Action Doctrine Is Disfavored.

The Supreme Court repeatedly has emphasized that the state-action doctrine "is disfavored, much as are repeals by implication." *Dental Examiners,* 135 S. Ct. at 1110 (quoting *FTC v. Phoebe Putney Health Sys., Inc.*, 133. S. Ct. 1003, 1010 (2013) and *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 636 (1992)). The defense is disfavored because it detracts from "the fundamental national values of free enterprise and economic competition that are embodied in the federal antitrust laws." *Id.; see also United States v. Topco Associates*, 405 U.S. 596, 610 (1972) ("Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-

---

[1] The United States addresses only whether the Bar defendants are subject to the clear articulation and active supervision requirements of the state-action doctrine, and so takes no position now on whether the Bar defendants have satisfied those requirements, or on any other issue in the case.

enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms."). The party that asserts the state-action defense against antitrust liability accordingly bears the burden of showing that its requirements have been satisfied. *See Dental Examiners*, 135 S. Ct. at 1114 (state board "must satisfy [the] active supervision requirement"); *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38-39 (1985) ("municipalities must demonstrate" that their actions were taken pursuant to state policy).

II. **The Requirements of Clear Articulation and Active Supervision Apply to the Florida State Bar.**

   A. **After *Dental Examiners*, State Agencies that Regulate Professions, and Are Controlled by Active Market Participants, Are Treated as Non-Sovereign for Purposes of the State-Action Doctrine.**

The Florida State Bar's assertion that it need not satisfy the clear articulation and active supervision requirements is foreclosed by Supreme Court precedent. As the Court has explained, the state-action doctrine applies only when "the actions in question are an exercise of the State's sovereign power." *Dental Examiners*, 135 S. Ct. at 1110. That requirement is satisfied when the actions in question are those of a state legislature or state supreme court, "acting legislatively rather than judicially." *Id*. But states often rely on non-sovereign actors, including agencies and private businesses or individuals, to implement their policies. In *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980), the Court held that non-sovereign actors are entitled to state-action protection only when they can show (1) that the alleged anticompetitive conduct was taken pursuant to a "clearly articulated and affirmatively expressed . . . state policy" to displace

5

competition, and (2) that the conduct was "actively supervised by the State itself." *Id.* at 105.

A state bar, although it may act as a state agency in some contexts, is not sovereign. "The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of its members." *Goldfarb v. Va. State Bar*, 421 U.S. 773, 791 (1975). In *Goldfarb*, the Court denied state-action protection to the Virginia State Bar despite that bar's role as "the administrative agency through which the Virginia Supreme Court regulates the practice of law in that State." *Id.* at 776. For state-action purposes, the Court treated the Virginia State Bar as a separate entity from the Virginia Supreme Court. *See id.* at 790-91; *accord Edinboro College Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 575 (3d Cir. 2017) ("Even if the University were an arm of the state, the University is not 'sovereign' for purposes of *Parker*.").

The Court's most recent treatment of the state-action doctrine, *Dental Examiners*, clarifies the applicability of state action to state agencies. It held that any state agency that is "controlled by active market participants" in the profession that the agency regulates, must satisfy both of the *Midcal* requirements to qualify for state-action protection. 135 S. Ct. at 1114. The Court's rule reflects its recognition that, when "a State empowers a group of active market participants to decide who can participate in its market," there is a "structural risk" that they will pursue "their own interests" instead of "the State's policy goals." *Id.* In its

6

discussion of state agencies that may be "controlled by active market participants," the Court likened the North Carolina Board of Dental Examiners to state bars. The Court cited *Goldfarb* as an example of a state bar, controlled by market participants, to which state-action protection properly was denied. *See id.* (in *Goldfarb* "the Court denied immunity to a state agency (the Virginia State Bar) controlled by market participants (lawyers) because the agency had 'joined in what is essentially a private anticompetitive activity' for the 'benefit of its members'"). *Dental Examiners* thus confirms that state bars, if controlled by active market participants, are state agencies subject to the active supervision requirement.[2]

Thus, the Bar's position that it need not satisfy the *Midcal* requirements is inconsistent with *Dental Examiners*. The inconsistency is made even more obvious by the position that the Bar (joined by three other state bars) took in an amicus curiae brief in *Dental Examiners*. *See* TIKD's Response to Florida Bar Defendants' Motion to Dismiss (Doc. 31), Exhibit 1; 2013 WL 6236868. In that brief, the Florida Bar argued that state bars like it were functionally the same as the North Carolina Board of Dental Examiners, so that if the Court ruled against the Board of Dental Examiners, "State bars will have to defend expensive antitrust actions," *i.e.*, state bars would not be considered sovereign and thus not automatically entitled to state-

---

[2] TIKD alleges, similarly to *Goldfarb*, that the Florida Bar joined in The Ticket Clinic's private anticompetitive activity for the benefit of incumbent traffic defense lawyers. By contrast, *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977), is inapposite because the challenged restraints in that case were rules of the Arizona Supreme Court that restricted attorney advertising, *see id.* at 359-60, not any private anticompetitive activity that the state bar allegedly joined.

action protection. Ex. 1 at 3-4, 6. The Court subsequently did rule against the Board, and so the Florida Bar's position was rejected by the Court. The Bar cannot credibly claim now that it is sovereign for purposes of state action.

Despite the rejection of the Bar's position in *Dental Examiners*, it continues to argue here that it is an "arm of the [Florida Supreme] Court" under Florida law. But for purposes of state action, which is an interpretation of a federal statute, the "formal designation given by States to regulators" should be disregarded, *Dental Examiners*, 135 S. Ct. at 1114. Whether the *Midcal* requirements apply is a question of federal law. The critical test is functional, not formalistic: if a regulatory agency is controlled by active market participants, then it is subject to the *Midcal* requirements.

The Bar's chief authority is *Ramos v. Tomasino*, 701 Fed. App'x 798 (11th Cir. 2017), but that decision does not compel a finding that the Bar is a sovereign actor here. In that case, a disbarred Florida attorney brought antitrust claims against the Florida Supreme Court itself and other defendants, including the Bar, alleging that the defendants conspired to monopolize the attorney admission process and deny him the ability to practice law by destroying the records of his disciplinary proceedings. The court held the claims barred by the state-action doctrine, without the defendants having to show clear articulation or active supervision.

*Ramos*, as an unpublished decision, is not binding on this Court. In any event, *Ramos* is distinguishable because Ramos challenged the substance of a

8

Florida Rule of Judicial Administration, which expressly authorized destruction of his Bar disciplinary proceedings records, as anti-competitive. The court of appeals thus properly treated Ramos' suit as directed against the Florida Supreme Court itself, because the Florida Supreme Court had created or approved that rule. 701 Fed. App'x at 804 ("Ramos's counts are, in effect against the Supreme Court of Florida.").[3] By contrast, TIKD challenges neither a Bar rule nor a state supreme court decision. TIKD alleges instead that the Bar improperly *enforced* its rules and abused its authority, and that its improper enforcement had anti-competitive effects.

More fundamentally, the reasoning of *Ramos* is not persuasive and should not be followed because it does not even mention *Dental Examiners*, and therefore does not account for the Court's latest guidance on when state agencies that regulate occupations must satisfy the *Midcal* requirements. *See Edinboro College Park Apartments*, 850 F.3d at 573 (after *Dental Examiners*, "*Midcal* scrutiny applies to private parties and state agencies controlled by active market participants"). To illustrate, *Ramos* says that *Hoover v. Ronwin*, 466 U.S. 558 (1984), establishes that "*Midcal* only applied when private actors sought *Parker* immunity for their conduct." 701 Fed. App'x at 803. If that had been the law, it certainly is not the law after *Dental Examiners*, which holds that the *Midcal*

---

[3] Ramos named as defendants the Florida Supreme Court, the Office of the Clerk of the Florida Supreme Court, a Florida Supreme Court justice, and the current and former Clerks of the Florida Supreme Court. 701 Fed. App'x at 800. Ramos' records apparently were destroyed by the Clerk. TIKD, by comparison, did not sue any of these entities or individuals associated with the Florida Supreme Court.

9

requirements apply to sub-state entities controlled by market participants, not just private actors. *Ramos* also errs in relying on the Bar's status under state law. As shown above, the Court in *Dental Examiners* indicated, by its reliance on quotations from *Goldfarb*, that state bars should be treated like the North Carolina Board of Dental Examiners and not as equivalent to a state supreme court.

The Bar also quotes one sentence from an order in *Rosenberg v. State of Florida*, No. 15-22113-civ-Lenard/Goodman, 2015 WL 13653967 (S.D. Fla. Oct. 14, 2015), saying that *Dental Examiners* does not apply to claims against the Bar. But that sentence, like *Ramos*, overlooks the fact that the Court in *Dental Examiners* applied its concern about the risks posed by state agencies controlled by active market participants directly to state bars, using *Goldfarb* as an example. 135 S. Ct. at 1114. The other district court decisions cited by the Bar (Bar Mot. (Doc. 17) at 4-5 & n.2) pre-date *Dental Examiners* and thus do not represent the current law.

### B. The Complaint Alleges That the Florida Bar Is Controlled by Active Market Participants.

The FAC alleges that the Bar's UPL committee in each state judicial circuit consists of "'not fewer than 3 members,' two-thirds of whom are lawyers," and the committee chair must be a member of the Florida Bar. FAC ¶ 40. The FAC further alleges that the Bar's UPL Standing Committee must have a majority of Bar members. FAC ¶ 39. The Bar apparently agrees, saying that this committee "consists of 13 lawyers and 12 non-lawyers." Bar Mot. (Doc. 17) at 8. Also, members of the Bar make up 50 of the 52 members of the Bar's Board of Governors, FAC ¶ 34, which makes the final decision on whether to petition the Florida

Supreme Court for a determination of UPL. A majority of the Governors constitutes a quorum for the transaction of all Board of Governors business. FAC ¶ 34. Since these factual allegations must be taken as true on a motion to dismiss, the relevant Bar entities appear to be controlled, under the reasoning of *Dental Examiners*, by practicing lawyers. *See* 135 S. Ct. at 1107 ("[a] majority of the board's members are engaged in the active practice of the profession it regulates"), 1114 ("a state board on which a controlling number of decisionmakers are active market participants in the occupation the board regulates must satisfy *Midcal*'s active supervision requirement in order to invoke state-action immunity").[4]

But whether a state agency actually is "controlled by active market participants" can be a question of fact in a particular case. To the extent that it is not clear whether the relevant Bar UPL committees are controlled by active market participants, or if that fact is genuinely disputed, this Court should not rule on the state-action defense at the motion to dismiss stage but instead should wait for discovery to clarify the question of control.

---

[4] Under *Dental Examiners*, state agency officials need only practice in the "occupation" regulated by the agency in order to be considered active market participants. State officials need not be direct competitors of the plaintiff. Thus, in *Dental Examiners*, although the Court noted that "some" of the dentist members of the Board of Dental Examiners offered teeth whitening services, 135 S. Ct. at 1116, the Court did not demand proof that every member of the board practiced in direct competition with non-dentist teeth whiteners.

11

## CONCLUSION

If the Court addresses the Florida Bar's state-action defense, the Court should rule that the Bar bears the burden of satisfying the *Midcal* requirements of clear articulation and active supervision. If, however, the current record is unclear on whether the relevant Bar entities are "controlled by active market participants," or if that fact is genuinely disputed, the Court should not rule on the Bar's state-action defense at the motion to dismiss stage.

Respectfully submitted.

s/ Steven J. Mintz

    MAKAN DELRAHIM
    *Assistant Attorney General*

    ANDREW C. FINCH
    *Principal Deputy Assistant Attorney General*

    KRISTEN C. LIMARZI
    ROBERT B. NICHOLSON
    STEVEN J. MINTZ
    *Attorneys*

    U.S. Department of Justice
    Antitrust Division
    950 Pennsylvania Avenue, N.W.
    Washington, D.C. 20530-0001
    Phone: (202) 353-0256
    Fax: (202) 514-0536
    Email: Steven.Mintz@usdoj.gov

Dated: March 12, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2018, I electronically filed the foregoing Statement of Interest on Behalf of the United States of America with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record.

Respectfully submitted.

s/ Steven J. Mintz