

IN THE DISTRICT COURT IN AND FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI, FLORIDA

| | |
|---|---|
| TIKD SERVICES, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case number: 17-24103-Civ - |
| vs. | ) Cooke/Goodman |
| | ) |
| THE FLORIDA BAR, | ) |
| MICHAEL J. HIGER, | ) |
| JOHN F. HARKNESS, JR., | ) |
| LORI S. HOLCOMB, | ) |
| JACQUELYN P. NEEDELMAN, | ) |
| GOLD & ASSOCIATES, P.A. | ) |
| MARK S. GOLD | ) |
| TED L. HOLLANDER; | ) |
| ROBERT AZCANO, | ) |
| JEFFERY R. LOTTER, | ) |
| ROBERT R. WILLHOIT | ) |
| | ) |
| Defendants. | ) |
| | ) |

## RULE 24 (b)(1)(B) MOTION TO INTERVENE OF ANTHONY ELADIO RAMOS

COMES NOW Anthony Eladio Ramos, *pro se*, and files this Rule 24 (b)(1)(B) Motion to

Intervene, pursuant to the Federal Rules of Civil Procedure, and states:

# I.

## INTRODUCTORY STATEMENT OF THE CASE
## AS TO ANTHONY ELADIO RAMOS[1]

1 . Anthony Eladio Ramos, (hereinafter, the intervenor), is the plaintiff who has appeared *pro se*, throughout in *Ramos v. Tomasino, et. al.*[2], the matter which is at the center of the arguments in the Statement of Interest by the United States Attorney General and the Response of the defendant, The Florida Bar, in this matter, *TIKD*.

# II.

## A BRIEF SUMMARY STATEMENT OF THE
## CASE IN *Ramos v. Tomasino, et.al.*

2 . The intervenor is the prevailing party in *Ramos v. Tomasino, et. al.* where, in appeal # 1, PACER: case # 16-15890- CC, the Eleventh Circuit Court of Appeals reversed the district court's dismissal of the intervenor's complaint with prejudice, making the dismissal, 'without prejudice.'

3 . Upon the issuance of the mandate, in the year, 2017, defendants common to *TIKD*, Harkness and The Florida Bar, among others, gave orders to the current Clerk of the Florida Supreme Court, Tomasino, a defendant in *Ramos v. Tomasino*.

---

[1] With the significant commonality and familiarity of case names as used extensively by the parties in this matter, such case names and styles will be used without full and formal citations, where possible.
[2] *Ramos v. Tomasino, et al.*,2017 WL 2889472 (11th Cir. 2017)

4. Tomasino was ordered to place on the intervenor's permanent public records indices with defendant, The Florida Supreme Court, the notation, 'records destroyed,' and placing various dates thereon.

5. The entries show that the records were destroyed in the year, 2008. The *Florida Rules of Judicial Administration,* applicable to matters concerning records of The Florida Bar disciplinary procedures, among others, require that the Clerk of Court make such entries onto the permanent public records index of a numbered matter, as the event takes place.

6. Tomasino made the entry nine years and nine months after the records were destroyed.[3]

7. The entries were placed on the permanent public records indices in Florida Bar case numbers 89,797, 91,462 and 91,464.

8. At the time of their destruction, Florida Bar case numbers 89,797, 91,462 and 91,464, were 'the record' in Florida Bar case number: SC07-2388.

9. In SC07-2388, a full opinion was written at *The Florida Board of Bar Examiners et. al. Re: Anthony Eladio Ramos,* 17 So.3d 268 (2009).

---

[3] The detailed listing of the violations of the Florida Rules of Judicial Administration by The Florida Bar, among others, may be viewed in the Amended Complaint, PACER: case # 9:16-cv-80681-BB / index # 103.

10. Tomasino's post-mandate entries that the records were destroyed, shows that the destruction came at the exact midpoint in the deliberations in SC07-2388.

11. Under any reading of the *Florida Rules of Judicial Administration,* the records could not have been destroyed until, at the earliest, August 28, 2019. The intervenor was relying on that date at the time that he made application to the New York Bar, in 2014.

12. SC07-2388 resulted when, after a nine-year forensic search, from 1997 to 2006, another defendant in the intervenor's case, and the former Clerk of Court of the Florida Supreme Court, Hall, provided a copy of the attached fax sheet to the intervenor.

13. The fax sheet is on the letterhead of 'The Florida Bar.' The sheet tells the tale of the corruption, how Florida Bar prosecutor, and another defendant in the intervenor's case, Liss, was able to convince the referee that the intervenor's attorney was withdrawing from the case, and that the intervenor had abandoned his case. Thus, a simple 5-year suspension, where staff members had embezzled trust funds, resulted in a sanction of a 20-year disbarment, when the attorney did not appear for the final hearing on the next business day.

14. Common defendant, Harkness, organized the secret fax and hearing scheme. Harkness, then, transmitted the fax sheet to Hall. Hall placed it in an unnumbered file, out of public view.

15. The *Florida Rules of Judicial Administration,* require that all papers in a pending matter be placed in a numbered file. Defendant, Tomasino, during the course of the proceedings in the intervenor's case, provided the unnumbered, private code that corresponded to the secret file.

16. SC07-2388, therefore, was a challenge to the legality of the disbarments, based upon the secret fax. The scathing opinion, authored by another defendant in the intervenor's case, is a way to cover up the proof of the corruption.

17. Two of the defendants in the intervenor's case, Harkness among them, then ordered the 'cleaned' file sent to the Florida Archivist. This information was also disclosed by the defendants only after the mandate, and was not on the intervenor's public records index in SC07-2308 until recently.

18. The Archivist has stated that the file will have come to the office with any records already destroyed, and that the record as sent is permanent.

19. The intervenor, therefore, now, could never present a complete record of his disciplinary history, as is required, to any lawyer admissions committee in any State, or in the District of Columbia.

20 . After appeal # 1, as indicated, the intervenor amended the original complaint. The intevenor

jettisoned, for now, Counts I & II, sounding in the Sherman Act, removed the single offensive

*Rooker-Feldman* clause from Counts III & IV, and added additional counts, consistent with the

opinion, for both injunctive relief and damages.


21. Florida has an extensive, developed body of case law, providing for damages in civil cases of

destruction, spoliation, alteration or concealment of records.


22 . Without a clear roadmap provided by the Eleventh to the District Court judge, the District

Court judge, upon the filing of the mandate, instead entered the order that the matter was

dismissed 'without prejudice,' but also closed the file.


23. Unclear as to how to proceed, the intervenor, then, filed appeal # 2.  PACER: case #

17-14220 - K.


24. During the course of that appeal, the Florida Supreme Court batch of defendants filed two

gap pleadings, a motion to dismiss the appeal, and a motion for extension of time to file a brief.


25. It was during this gap pleading phase that, for the first time, ever, an official, record,

admission against interest that the intervenor's records had been destroyed, was made.

26. The intervenor's appeal # 2 concerned only the question of seeking guidance from the court after the District Court closed the file.

27. In appeal # 2, the Florida Supreme Court batch of appellees, for reasons of their own knowing,  moved for a summary affirmance of appeal # 1, a motion to which the intervenor, of course, did not object.

28. In appeal # 2, the intervenor argued, simply that, despite the appellate court's  own recent extensive opinion, rejecting the closing of a file in the same term in *Napolitano,* that the District Court judge had violated the mandate, by closing the file.

29 . The Court in appeal # 2, granted the unopposed motion for summary affirmation, and therefore, cemented the 'without prejudice' component of the intervenor's case. *See,* footnote 5 of The Florida Bar's Response to DOJ's Statement of Interest.[4]

30. After the entry of the order in appeal # 2, which was a fairly quick ruling, the intervenor filed a motion for reconsideration on the technical matter of the appellees continuing to refer to the intervenor as a 'disbarred lawyer.'  PACER: case # 17-14220 - K.

---

[4] It is true that, in the order, the Court expressed some concern with the intervenor appearing *pro se.* In fact, however, the intervenor had filed all of the pleadings, and the appeal in appeal # 1, and was and remains the prevailing party. The intervenor simply saw a strategic opening with the filing by the defendants of a motion for summary affirmation of a case in which he had prevailed. The tactic of not opposing the motion for summary affirmation paid off.

31. The intervenor argued that, irrespective of the fact that the institutional defendants had nullified the disbarment in 2008, by destroying his records, in any event, the time of the penalty had recently expired.

32. The common defendants, The Florida Bar and Harkness, with all of the other defendants joining in *Ramos v. Tomasino, et. al.*, responded to the motion for reconsideration by citing a Florida Bar Rule 3-5.1(f).

33. According to them, Rule 3-5.1(f), makes disciplined lawyers some type of coerced or indentured members, so that such lawyers never lose their disciplinary status.

34. In its order denying the motion for reconsideration, however, the Eleventh was having no more of the constant attempts at escaping liability by the defendants including the common defendants, stating: "It is unclear, what, if any the expiration of that term had on Ramos's status as a disbarred attorney…" PACER: case # 17-14220 - K:

https://drive.google.com/file/d/19Ksj53oNBd_-wxtZ3ODAsQHE0SqluvXY/view?usp=sharing

35. At the time of the filing of this motion to intervene, therefore, the intervenor is finalizing further forensic information, based solely upon what the defendants made known, and kept secret for years. The intervenor will add new parties, and new counts to the new complaint, and same will be filed in District Court in the District of Columbia.

36. In conclusion as to this section, therefore, the intervenor is the holder of two orders from the Eleventh Circuit Court of Appeals, in fact, the only two such, where the Eleventh has not dismissed proceedings brought against the defendants, 'with prejudice.'[5]

## III.

## COMMON QUESTIONS OF LAW AND FACT ARE MADE IN *TIKD* AND IN *RAMOS*

37. The intervenor is filing this motion because there are common questions of law and fact, and also because, as will become clear, The Florida Bar is making false statements as to the intervenor's case.

38. The intervenor speaks only for himself here, but the legal question is equally framed by the Statement of Interest of the U.S. Attorney: if this Court decides to dismiss *TIKD* it should do so 'without prejudice.' This is now the law of the case in *Ramos I* and *Ramos II*, and it signals in the

---

[5] Importantly for antitrust purposes, including the relevant market, for which the defendants made no objection, the intervenor would not seek any affiliation with any of the institutional defendants in Florida. The intervenor is the president of five startup companies, now just emerging from the start up phase, with headquarters in Washington, D.C. The companies will always have business before the District Court for the District of Columbia, the *Marbury v. Madison* court, as issues relate either to Cabinet level actions or actions of independent commissions, such as the Federal Communications Commission. Further, the companies have founding business in the State of New York. Of significance, is the fact that the intervenor, and his companies are under constant scrutiny by both the United States Securities and Exchange Commission, as well as the Office of the New York Attorney General, Blue Sky qualification division. The intervenor is the Issuer's representative, so qualified by both agencies for the qualified securities offerings of the companies.

In this regard, it was the intervenor's application to the New York Bar, which triggered the disclosure by the defendant, Tomasino, in 2014, that the records had been destroyed. It is the inability to produce such records which, apparently permanently, now bars him from being admitted in New York, and then in Washington, D.C., and, therefore, throughout the Federal Court system, on behalf of his companies.

Eleventh Circuit Court of Appeals, a willingness to look at the allegations in these complaints with a view towards allowing discovery and trial to be had in cases of violations of the rules.

39. With respect to the intervenor's case, the legal question of the Sherman Act counts, I and II, are common to *TIKD*. The fact is that the intervenor, in his case, seeking every fact that would allow for an understanding of how his New York bar application would be denied, undertook the extensive forensic work after the disclosure of the destruction to him in the year, 2014.

40. By contrast, the U.S. Attorney has been able to focus on the underlying facts of active supervision, in support of its motion.

41. The allegations made by the intervenor are lacking the key allegations being posited by the U.S. Attorney.

42. The manner in which this Court rules on that issue, therefore, will have a direct impact on the intervenor as he re-files his own action. For this reason, the distortions of the facts and the law by The Florida Bar, in its response to the Statement of the U.S. Attorney, have led to the intervenor filing this motion.

43. The discovery of common questions of fact in support of Sherman Act jurisdiction, therefore, allow for this motion to intervene.

## IV.

## STATEMENTS MADE BY THE FLORIDA BAR
## AS CONCERNS THE RECORDS
## DESTRUCTION ARE FALSE AND
## INACCURATE

44. It is the statement made by The Florida Bar, and not the statement of the U.S. Attorney, which, if adopted by this Court, would cause the most prejudice to the intervenor and to the plaintiffs in *TIKD*.

45. The secret fax cover sheet is the one that The Florida Bar, and particularly, defendant, Harkness, does not wish for this Court to see.

46. Thus, the anecdotal statement of The Florida Bar, that 'the defendants properly destroyed Ramos' records after ten years because no opinion was written,' is false.[6]

47. This Court must exercise extreme caution with this misstatement, because if adopted, The Florida Bar is arguing that allegations by *TIKD* must also be false.

48. Only by requiring the defendants to file an Answer in both cases can discovery proceed.

---

[6] This comment was also made by the appeals court in appeal #1, but the court was making the commentary based upon the false statements of The Florida Bar at that time as well. As there was no record at the time of that appeal, the court had no record testimony to go on, and made the unsupported comment.

<u>**V.**</u>

<u>**STATEMENTS MADE BY THE FLORIDA BAR,
AS TO INTERVENOR'S MATTER BEING
DISMISSED 'WITH PREJUDICE' AS TO THE
FLORIDA BAR, ARE FALSE AND INACCURATE**</u>

49. This Court must exercise extreme caution when reading the pleadings of The Florida Bar.

50. At page 5 of its Response to the DOJ Statement, The Florida Bar states:

"After collecting numerous authorities, the District Court held that "[i]n light of this

overwhelming precedent, Mr. Ramos's Sherman Act claims against state-entity Defendants The

Florida (and others) must be dismissed with prejudice."

51. Such a reading would walk this Court directly into the error of this statement, because

in appeal # 1,  there is not one statement, ruling or holding that any portions of the intervenor's

matter  are dismissed 'with prejudice.'

52. A dismissal for failure to state a cause of action is a simple dismissal without prejudice,

which, if the plaintiff can correctly state a cause of action, may be simply re-filed.

53. A dismissal for lack of jurisdiction, as the court clearly indicates, is not a dismissal 'with

prejudice' under any circumstances.

54. The intervenor seeks to enter into this matter, among other reasons, specifically because The Florida Bar is making these false statements as to his case.

55. Such are comments designed to mislead this Court.

## VI.

### STATEMENTS MADE BY THE FLORIDA BAR AS TO *GOLDFARB* ARE INACCURATE AND MISLEADING

56. The fact is that the analysis made by the U.S. Attorney, and the necessity of pleadings as to that analysis, were not made by the intervenor.

57. The Florida Bar's assessment, however, that the the court in appeal # 1 'relied on *Goldfarb* in place of *N.C. State*, is misleading.

58. The intervenor defeated each and every defense raised by the defendants in his case, save for two clauses as to *Rooker-Feldman*, and pleading defects as to Counts I and II.

59. The analysis in *Goldfarb*, by the intervenor, was the correct one as to the defenses raised.

60. The *Goldfarb* analysis went to four issues and defenses, and not not to 'active supervision.'

61. These are:

a ) whether all of the named parties were proper parties in the action. The intervenor prevailed as to that issue, as is made clear in the opinion in appeal # 1;

b ) Article III questions of standing, where, as in *Goldfarb*, and also, parenthetically as alleged by *TIKD*, liability is triggered where bar rules require lawyers to live in fear or disciplinary prosecution. The intervenor prevailed on that issue as well;

c ) the 11th Amendment defense. In fact, the 11th Amendment defense was the primary defense relied upon by the District Court. In appeal # 1, the Court assigned a full footnote, footnote 4, to the rejection of the 11th Amendment as a defense. The intervenor successfully argued that *Goldfarb* specifically rejected the 11th Amendment as a defense. The intervenor argued that, in this regard, the Court would need to reverse *Goldfarb* in order to sustain the District Court's order as to that defense. The appellate court rejected that approach. Further, *Goldfarb* was written at the height of government corruption, the Watergate era, in 1974. And, importantly, *Edelman v. Jordan,* 415 U.S. 651 (1974), which is the 11th Amendment case, was also decided in the same era. The Court in the intervenor's matter will have had to reverse *Edelman* as well, and;

d ) case classification. The intervenor's extensive analysis of the types of cases which have arisen before the U.S. Supreme Court, permitted the appeals court in appeal # 1, to discuss and rely on *Goldfarb* for the issues discussed here. The other two classifications are defined by the cases in *Bates v. State Bar of Arizona,* 433 U.S. 350 (1977), and *Hoover v. Ronwin,* 466 U.S. 558 (1984). In fact, in discussing all three, the appeals court in appeal #1 recited the arguments made by the intervenor: he never challenged the right of the sovereign to make rules, only the liability for breaking those rules.

## VII.

## STATEMENTS MADE BY THE
## FLORIDA BAR, AS TO
## THE 'UNWISE' ACTIONS OF
## THE DEFENDANTS ARE NOT IMMUNITY
## STATEMENTS

62. The Florida Bar attempts to convince this court that the language in the appeal about the sovereign acting 'wisely' are, somehow, immunity rulings in appeal # 1.

63. Were such the case, the appeals court will have affirmed the dismissal of the trial court with prejudice.

64. This analysis refers to pages 3 through 5 of The Florida Bar's response to the U.S. Attorney.

65. This statement, by The Florida Bar, at page 4, is false: "But Ramos *did* allege that improper enforcement of the rules led to anticompetitive effects." To the contrary, there was no 'enforcement' of the rules. Were such to have been enforced, the intervenor would have no case, because there will have been no secret file, no records destruction, and the permanent public indices will have been correct. The *violation* of the rules is what is at stake in the intervenor's matter.

66. The further analysis in this section, in addition, is misleading as to The Florida Bar. It may be true that all of the rules in question are promulgated by the Florida Supreme Court.

67. It is not true, however, for example, that The Florida Supreme Court sent a secret fax, on The Florida Bar letterhead, to a disciplinary referee, a sitting judge, to hold a secret hearing in *violation* of the rules. The notion that any persons other than Florida Bar employees did this, or that any entity other than The Florida Bar took such illegal action, is misleading.

68. This quote from the opinion, made by The Florida Bar at page 4 of its response, is particularly misleading to this Court: "*Parker* immunity has never required a sovereign to act "wisely after full disclosure from its subordinate officers."

69. Once the sovereign has acted, as in the intervenor's case, the presumption of wisdom does not carry to an immunity defense in the *violation* of the wisdom. The sovereign ordained that all matters filed in court in Florida must be filed in a file with a file number. The filing of a secret

fax, for a secret hearing, in an unnumbered file is a violation of the wisdom of having numbered

files.

70. This Court must guard against transgressing to that attempted doctrinal argument of The

Florida Bar.

71, The Florida Bar would have this court ignore such admonition in appeal # 1:

> Finally, the records in Ramos's disbarment cases
> were properly destroyed pursuant to the Florida Rules of
> Judicial Administration, which specifically allow for the destruction
> of records related to cases disposed without opinion after 10 years.
> Fla. R. Jud. Admin. 2.430(c)(3)(B). But even if the destruction
> of records somehow violated that rule, Parker immunity has
> never required a sovereign to act "wisely after full disclosure from its
> subordinate officers." *Id. Hoover* specifically indicates that the "only
> requirement is that the action be that of the State acting as a sovereign,"
> 466 U.S. at 574 (quotation omitted), which this clearly is.

> In short, the Parker immunity doctrine serves as a bar to Counts 1 and 2…

72. Neither *Parker*, nor the allegations in Counts 3 and 4, save for the *Rooker-Feldman*

violations in the intervenor's matter, require, therefore, a dismissal with prejudice.

73. The intervenor is not seeking from the sovereign any 'act.' He, neither seeks a new set of

rules, nor any enforcement by the perpetrators.

74. Like the incidence of a person violating a traffic sign and running over a pedestrian in a

crosswalk. The rule has been violated, and whether the sovereign acts or not, will not return the

pedestrian from the dead.

75. The liability for the act of the violation, however, is subject to legal redress.

76. The Florida Bar's statement that, somehow, the quoted section now opens the floodgates to immunity to violate its own rules runs contrary to the fact that, at no place in the decision in appeal # 1 or # 2, does the term, as a holding, 'with prejudice' appear.

77. The U.S. Attorney's analysis, if correct, would remove the 'bar' to counts 1 and 2.

78. In conclusion as to this section, The Florida Bar is attempting a manipulation of the decision in the intervenor's case. Were this Court to permit such, every act of corruption, of which there are many in the intervenor's matter, would be immune. Had this been the court's ruling in appeal # 1 and # 2, the court will have dismissed the matter with prejudice.

## IX.

### STATEMENTS MADE BY THE FLORIDA BAR
### AS TO IMMUNITY DEFENSES ARE
### FALSE AND MISLEADING

79. In footnote 2 of its response to the U.S. Attorney's Statement of Interest, the Florida Bar indicates that it has numerous other defenses, stating that "the Court can dismiss this case without ever commenting, or ruling, upon the state action defense…"

80. Such is a false and misleading statement.

81. With a painstaking accuracy of analysis, the bulk of the defenses listed in the footnote have been swept away by the court in appeal # 1.

82. These include: "Eleventh Amendment immunity, qualified immunity, *Younger* abstention, *Noerr-Pennington* immunity…"

83. In the intervenor's case, The Florida Bar even threw in an 'omnibus' immunity defense, which was also rejected.

84. This Court would, therefore, have to reverse the decision of the court in appeal # 1 and # 2 in order to 'dismiss the case without ever commenting or ruling upon the state action defense…'

85. The Florida Bar, however, does not appear to be calling for such a reversal.

## X.

## CONCLUSION

86. There is not only a commonality of law and fact in this matter, with that of the intervenor, but also a clearly determined effort to obscure the holding of the appeals, and in fact, to escape liability by having this court impose a dismissal as to *TIKD* 'with prejudice.'

87. The relief sought by the U.S. Attorney is entirely consistent with the holding in appeal # 1 and # 2: the *TIKD* matter should not be dismissed with prejudice.

88. There is nothing in the holding in appeal # 1 or # 2 which, at any place, states that any of the counts are dismissed, 'with prejudice.'

89. The intervenor has no comment on the allegations as contained in *TIKD*'s complaint, but, to the extent that such allege acts *in violation of* any such rules, these are consistent with the cause of action which the intervenor has created in these matters.

90. There is no immunity for breaking the law.

WHEREFORE, the intervenor requests the entry of an order granting his motion to intervene.

EXHIBIT A

 FRI 11:31     THE FLORIDA BAR          FAX NO. 000 000 0000          P.01 

**THE FLORIDA BAR**
**Ft. Lauderdale Office**
Cypress Financial Center
5900 North Andrews Avenue
Suite 835
Ft. Lauderdale, FL 33309
(954) 772-2245

# FAX TRANSMISSION

### THE FLORIDA BAR

954-772-2245
Fax:

| | | | |
|---|---|---|---|
| **To:** | Judge Howard H. Harrison, Jr. | **Date:** | November 7, 1997 |
| **Fax #:** | 1-561-498-3998 | **Pages:** | 6,   including this cover sheet. |
| **From:** | Cheryl L. Anker<br>Legal Assistant | | |
| **Subject:** | The Florida Bar v. Ramos | | |

COMMENTS:

Following is the decision of the Supreme Court of Florida in The Florida Bar v. Segal, 663 So.2d 618 (Fla. 1995). The decision is being faxed to you with Mr. Kline's permission, which was conveyed during his telephone conversation with Mr. Liss this morning.

I also need you to call me as soon as possible. Mr. Liss and Mr. Kline want to schedule a telephone hearing on Mr. Kline's Motion to Withdraw. Since the final hearing is scheduled for Monday, the hearing needs to be held this afternoon.

Thank you for your cooperation in this matter.

Cheryl Anker
Legal Assistant

99

9

RESPECTFULLY SUBMITTED,

_____
Anthony Eladio. Ramos, *pro se*
1805 Key Blvd
Apt. 513
Arlington, VA 22201
202-236-3427
00aramos@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th  day of March, 2018 the original of this document was mailed to: the Clerk of Court, United States District Court for the Southern District of Florida, 400 North Miami Avenue, 8th Floor Miami, Florida 33128, and that a copy was emailed to: Ramón A. Abadin, Esquire, Sedgwick, LLP, Co-Counsel for Plaintiff, ramon.abadin@sedgwicklaw.com; Peter D. Kennedy, Esquire, Graves, Dougherty, P.C., Co-Counsel for Plaintiff, pkennedy@gdhm.com; Robert J. Kuntz, Esquire, Devine Goodman, LLP, rkuntz@devinegoodman.com, Co-Counsel for Plaintiff; Steven J. Mintz, Makan Delrahim, Andrew C. Finch, Kristin C. Limarzi, and Robert B. Nicholson, Assistant Attorneys General / U.S. Department of Justice / Antitrust Division, c/o Steven.Mintz@usdoj.gov; Kevin W. Cox, Esquire, kevin.cox@hklaw.com, Shannon Veasey, Esquire, shannon.veasey@hklaw.com, Jerome W. Hoffman, Esquire, jerome.hoffman@hklaw.com, and Dominic C. MacKenzie, Esquire, donny.mackenzie@hklaw.com, Holland & Knight, LLP, and Markenzy LaPointe, Esquire, markenzy.lapointe@pillsburylaw.com, Co-Counsel for defendants, The Florida Bar, Michael J. Higer, John F. Harkness, Lori S. Holcomb and and Jacquelyn P. Needelman; and, Chris Kleppin, Esquire, ckleppin@gkemploymentlaw.com; Steven I. Peretz, Esquire, Peretz, Chesal & Herrmann, P.L., speretz@pch-iplaw.com; Gregg D. Thomas, Esquire, gthomas@tlolawfirm.com; James J. McGuire, Esquire, jmcguire@tlolawfirm.com; and, Allison K. Simpson, Esquire, asimpson@tlolawfirm.com, Counsel for Gold and Associates, P.A.; Ted L. Hollander, Robert Azcano, Jeffery R. Lotter, and Robert Willhoit.

_____
Anthony Eladio Ramos, *pro se*

Tony Manos
1803 Key Blvd.
Apt. 513
Arlington VA
Folle

CLERK OF COURT
U.S. DISTRICT COURT
400 N. MIAMI AVE.
8th FLOOR
MIAMI, FL
33128

USMS INSPECTED
BY