UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| TIKD SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case Number |
| | ) | |
| v. | ) | 1:17-cv-24103-MGC |
| | ) | |
| THE FLORIDA BAR, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| ______________________________ | ) | |

Transcript of a motion to dismiss hearing
before the Honorable Marcia G. Cooke
October 17, 2018; 1:13 p.m.
Miami, Florida

(Appearances on page two)

Proceedings recorded by mechanical stenography, transcript produced by computer.

---

Diane Peede, RMR, CRR, CRC
Federal Official Court Reporter
400 North Miami Avenue, Eighth Floor
Miami, Florida 33128

Appearances:

For the Plaintiff: GRAVES DOUGHERTY HEARON & MOODY, P.C.
BY: PETER D. KENNEDY, ESQ.
401 Congress Avenue, Suite 2200
Austin, Texas 78701

- and -

DEVINE GOODMAN RASCO & WATTS-FITZGERALD
BY: ROBERT J. KUNTZ, ESQ.
2800 Ponce De Leon Boulevard
Suite 1400
Coral Gables, Florida 33134

For the Defendant: HOLLAND & KNIGHT LLP
BY: KEVIN W. COX, ESQ.
315 South Calhoun Street
Suite 300
Tallahassee, Florida 32301

- and -

HOLLAND & KNIGHT LLP
BY: JEROME WAYNE HOFFMAN, ESQ.
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202

- and -

PILLSBURY WINTHROP SHAW PITTMAN LLP
BY: MARKENZY LAPOINTE, ESQ.
600 Brickell Avenue, Suite 3100
Miami, Florida 33131

P R O C E E D I N G S

(Call to the order of the Court.)

THE COURT: We're on the record in TIKD Services, LLC, versus The Florida Bar.

Appearing on behalf of the plaintiff?

MR. KUNTZ: Good afternoon, Your Honor. Robert Kuntz with Devine Goodman Rasco and Watts-FitzGerald.

At counsel table with me is Peter Kennedy of Graves, Doherty, Hearon and Moody in Austin, Texas, who is admitted before you pro hac vice. And Mr. Kennedy will be addressing the Court today.

Also at the table are Christopher Riley, the founder and C.E.O. of TIKD Services, and Robert Garvy, TIKD Services chairman.

THE COURT: Thank you very much.

On behalf of The Florida Bar?

MR. COX: Your Honor, Kevin Cox of the law firm of Holland and Knight here on behalf of The Florida Bar defendants.

Joining me at counsel table are my partner Jerome Hoffman of Holland and Knight; our co-counsel, Markenzy Lapointe, of the Pillsbury Winthrop firm.

And on behalf of our clients, Joshua Doyle, Executive Director of The Florida Bar, and John Stewart, who is the president-elect of The Florida Bar. Ms. Suskauer, who

is the president of The Florida Bar, would liked to have been here today, but she's leading a criminal justice summit and couldn't join us.

THE COURT: All right.

Plaintiffs, if you would, have a seat.

Florida Bar defendants, this is your motion, Docket Entry Number 17, to dismiss. Who will be arguing on behalf of The Florida Bar?

MR. COX: Your Honor, I will be arguing.

THE COURT: All right. Go right ahead, sir. So your argument is basically, if I understand it, The Florida Bar is the state, for lack of a better word. There's been no waiver of the state's right to be free from suit. So there's no jurisdiction for the Court here?

MR. COX: That's correct, Your Honor. And we've also prepared some slides for Your Honor.

THE COURT: Certainly. Is it on the computer or connected there?

MR. COX: It's currently on a computer which is connected here.

THE COURT: Okay.

MR. COX: It should be appearing. I can try to do something on my end.

THE COURT: Why don't you start and let me see if that helps us --

MR. COX: Certainly.

THE COURT: -- because we're getting something.

MR. COX: I also have a printed copy, Your Honor. If you want me to approach, I can provide that to the Court.

THE COURT: We'll take that, too. But I think if you start -- I think it's up, Ivan.

THE COURTROOM DEPUTY: Yes.

THE COURT: There it is.

MR. COX: Your Honor, I'm happy to still bring these up, if it would be helpful.

THE COURT: All right. Thank you very much.

The big monitor should be on now as well.

Counsel, you may proceed.

MR. COX: Yes, Your Honor. As you pointed out, our position is that we are here as the state and there is no jurisdiction. But just to put this in a -- frame this in a broader context, Your Honor, this is a claim against The Florida Bar related -- being brought by the plaintiff as a subject of the U.P.L. investigation, and the complaint is that The Florida Bar is involved in an ongoing antitrust conspiracy with folks who might have complained or asked for ethics advice or done other things to in some way allegedly protect their own economic interest.

We just think fundamentally challenging the bar in the midst of a U.P.L. investigation, to assign to the bar

that it's an antitrust conspiracy, an ongoing antitrust conspiracy, because all the lawyers in Florida are required to be a member of The Florida Bar and therefore The Florida Bar is some sort of monopoly or has the power to exclude attorneys from their profession or exclude other businesses when all of that is subject to the Florida Supreme Court is just something that doesn't make sense as a practical matter, and also is not supported by a lot of case law, which we'll go through. But I wanted to put that in context, Your Honor.

Quickly, the current status of the case, Your Honor, there's four counts remaining. There are four antitrust counts. They're against The Florida Bar and two individuals in their official capacity: the bar's president and its executive director.

Two of the counts arise under federal law -- Sherman Act, Section 1; Sherman Act, Section 2 -- and the parallel state law provisions.

TIKD has stipulated to dismissing certain individuals that were originally in this action. There were individual bar defendants, four of them, who were originally named in the complaint. They've been dismissed: Ms. Needelman, Ms. Holcomb, Mr. Higer, and Mr. Harkness. We have substituted in Mr. Doyle and Ms. Suskauer in their official capacities only.

The TIKD Clinic defendants, there was a company and

series of individuals. They've also been -- there's a joint stipulation of dismissal between TIKD and the TIKD Clinic defendants.

And there is, as I alluded to, an ongoing unlicensed practice of law proceeding pending before the Florida Supreme Court.

The allegations here are that the bar conducted a U.P.L. investigation. The bar has received and processed attorney ethics complaints. The bar has answered an inquiry for a non-binding informal written advisory opinion, and the bar didn't do certain things. The bar didn't promptly close a U.P.L. investigation when it was demanded, and the correspondence demanding that and asking for that just a month before the Complaint was filed, those are all exhibits to the Complaint; didn't immediately abate grievance proceedings as demanded by TIKD; and didn't make certain public statements demanded by TIKD.

And just to illustrate, there's a lot of conclusions in the Complaint. I think in a motion to dismiss, the Court can strip out the legal conclusions and look at what the actual factual allegations are.

There's a staff opinion that TIKD alleges a lot about. It says that this opinion was a disguised opinion designed to tell everybody that TIKD was engaged in the unlicensed practice of law, and therefore to discourage

attorneys from working for TIKD.

This is the staff opinion. It's not attached to the Complaint, but under Eleventh Circuit law, it's certainly referenced many times. And TIKD then subsequently attached it to a motion for preliminary injunction, and so I think there's no dispute about its authenticity.

These are some of the key provisions of what it says: Advisory opinions are entitled to provide guidance to the inquiring attorney and are not binding; the advisory opinion process is not designed to be a substitute for the judgment of a grievance committee -- I'm sorry -- substitute for a judge's decision or the decision of a grievance committee.

This is what it says up front. This is not a binding action at all. This is not an anticompetitive action. This is an attorney requesting an opinion and the bar will give it its best shot, but this is not something that's binding.

TIKD alleges that this was, as I said, a disguised U.P.L. opinion saying that TIKD was engaged in the unlicensed practice of law.

And the staff opinion says your inquiry raises questions regarding the unlicensed practice of law. You may wish to consider addressing this question with a different department, the Unlicensed Practice of Law Department. If

the non-lawyers involved are engaging in the practice -- unlicensed practice of law, then the lawyer couldn't accept referrals.

Importantly, the bar's ethics department gives ethics -- informal non-binding ethics opinions to attorneys about their own conduct. And so if an attorney asks, Can I work with this company, there might be a lot of ethical issues, particularly if the company is paying fines for its clients, if it's not having regulated advertising, if it's doing other things. And those are the types of Florida Supreme Court rules regulating professional conduct that are discussed in the ethics advisory opinion.

But with respect to unlicensed practice of law, it simply says that's beyond the scope, and it further confirms that at the end of the opinion. Whether it is lawful for the company to provide the services as described is a legal question beyond the scope of an ethics opinion.

So I wanted to put this up front. We're going to talk about the defenses that you raise, Your Honor, but I want to make sure we kind of put some facts and some meat on the bone in terms of what these allegations actually are to kind of see how the law applies.

So the bar, we do believe, is entitled to immunity from TIKD's claims, not just 12(b)(1) jurisdictional immunity under the Eleventh Amendment but also state action immunity,

absolute immunity, and Noerr-Pennington immunity. I'm just going to walk through briefly through each of those and, again, try and provide a quick roadmap for the Court of what our key arguments are. But if there are any areas the Court is most concerned about or wants to hear more about, please direct us in that regard.

The Eleventh Amendment immunity here we think is very well settled, and TIKD has argued that there's been changes to the law. We don't think there have been changes to the law.

Under Kaimowitz, which is a 1993 decision, the Eleventh Amendment prohibits actions against state courts and state bars. And Kaimowitz is important because it's been cited many, many times by the Eleventh Circuit and district courts, including in the Southern District, for why these cases simply can't go forward. There is not jurisdiction.

For instance, just last year, in 2017, the Henry case says, We previously held that The Florida Bar is entitled to Eleventh Amendment immunity. Likewise, Brown versus The Florida Bar also -- this is a 2007 case -- under the prior precedent rule, Kaimowitz bars the claim against the bar.

Now, TIKD's position is that a case in 2003, the Manders versus Lee case, abrogated or superseded or supplanted Kaimowitz and that Kaimowitz is no longer the law

and that The Florida Bar must meet a new series of tests in order to be afforded Eleventh Amendment immunity.

Our position is that Kaimowitz was not abrogated. More than 40 decisions in this circuit have cited Kaimowitz regarding the Eleventh Amendment after Manders versus Lee was decided. At least a dozen of those decisions, some of them district decisions that were then affirmed by Eleventh Circuit decisions, specifically recognized The Florida Bar's immunity.

The Eleventh Circuit has specifically discussed Manders in the same paragraph while -- with Kaimowitz, saying Manders says this. Kaimowitz requires The Florida Bar have immunity.

This is that case, the Henry case, which was decided just last year. And I believe Judge Tjoflat was on that panel and he was on Manders as well.

The Tjoflat case talks about Manders. To receive Eleventh Amendment immunity, a defendant need not be labeled a state officer or state official but instead needs only be acting as an arm of the state.

And in Manders, it's important to note that TIKD takes the position that labels don't matter. And that's true. If you have a sheriff of a county, there's a question: Is this a state official or not?

And the Eleventh Circuit has gone through and said

under those circumstances -- actually in the Manders case, there was Eleventh Amendment immunity, notwithstanding the label.

In the very next sentence of that Henry case, they say, We previously held that The Florida Bar is an arm of the state to which Eleventh Amendment immunity is extended.

So the idea to us that Manders abrogated Kaimowitz is completely contradicted by this decision and others.

The lower -- the trial court in that same case, Judge Mendoza in the Middle District of Florida, addressed this same argument: Is the bar no longer entitled to Eleventh Amendment immunity?

The court said this has been conclusively resolved by the Eleventh Circuit and that by citing back to cases -- other cases similar to Manders, saying that there's a new test, this is -- cannot be accepted. He even said that the plaintiff might agree with the Eleventh Circuit conclusion, but that can't be resolved here. He was following the prior precedent rule. He even said it speaks sanctionable conduct to raise that argument in conjunction with case law citing to the contrary.

THE COURT: Counsel, do you think this issue of immunity is so well settled that the plaintiff's Complaint here should be considered frivolous, that they should have known that this area of the law -- there's no reason here to

bring any sort of litigation?

MR. COX: We think, given this weight of authority, yes.

THE COURT: Continue, please.

MR. COX: The plaintiff also argues that even if the Eleventh Amendment still applies to The Florida Bar, that there's the ex parte Young exception. The ex parte Young exception is certainly well recognized that it applies in only very limited circumstances. It applies only against individuals in their official capacity. So the claim against The Florida Bar cannot survive ex parte Young.

It only involves claims under federal law. There are two state law claims in this case. They cannot survive. It involves only claims for perspective injunctive relief to remedy ongoing violations of federal law, usually constitutional law.

We don't think there's any application here in that case, and for that last factor, we don't think there's any alleged perspective injunctive relief that could be sought here. The Complaint asks only for relief very generically against The Florida Bar. This is paragraphs 112 and 113. It doesn't say against the president because the president has the power to do this or against the executive director because the executive director has the power to do this. It doesn't specify a particular enforcement of a particular rule

or how this injunctive relief is going to work.

It does ask for an injunction against ongoing violations of this antitrust conduct against The Florida Bar and all of its officers, employees. And so it's a very generic request and we don't think comes close to meeting the prospective injunctive relief to remedy a specific ongoing violation. It can't be a retroactive violation or any of the sorts of conduct that we think has been alleged here, even if you accept it as true.

Moving on to state action immunity, Your Honor, the state action immunity is another bedrock of TIKD's case in the sense that they say that The Florida Bar no longer enjoys state action immunity. State action immunity is a principle that the Sherman Act does not apply to acts of the sovereign acting as a state.

Again, there's case law -- even though Dental Examiners is a fairly recent case, there's case law from this district, one of which has been affirmed by the Eleventh Circuit, that says state action immunity still applies.

First, the Rosenberg case, a Southern District case, says that Dental Examiners is not applicable because The Florida Bar is an arm of the state, a sovereign entity, not a non-sovereign actor that is authorized by the state to regulate its own profession.

And just to give you some background on Dental

Examiners, it was a board of Dental Examiners in North Carolina, private dentists who formed the board. They were given the authority to regulate dentistry.

They sent -- and we'll look at the facts of this. But their conduct was found by the Fourth Circuit and ultimately the U.S. Supreme Court to not be entitled to state action -- well, not be entitled to state action immunity, but let me say it a little clearer. They actually didn't assert that they were being supervised by the state, merely that they had -- that they were authorized to enforce the practice of dentistry and regulations related to that.

On the other hand, The Florida Bar is an arm of the Florida Supreme Court. It is the sovereign. It is a state agency.

And by example, the U.P.L. proceeding that is going on right now is going to be in front -- is already pending, actually, in front of the Florida Supreme Court.

The Florida Supreme Court creates the rules that are cited in these ethics opinions, including the ethics opinion we just looked at. The Florida Supreme Court sets forth all of these rules and is -- and has defined The Florida Bar as its arm to carry out these specified functions. And so that's why Rosenberg said The Florida Bar is an arm of the state, a sovereign entity.

And so this idea that you have to look further at a

group of private regulators who have been authorized to do something is not applicable because The Florida Bar is an arm of the state. It is the sovereign.

Another case is from 2017. Again, after Dental Examiners is Ramos versus Tomasino. Basically, it said the same thing. The exception to Parker immunity expressed in Dental Examiners is not applicable in this case because the defendants -- in that case there were several, including the bar -- are arms of the state and active pursuant to state law and directive.

I don't think there's any allegation that the U.P.L. investigation, the receiving ethics complaints, providing ethics advice is not something that the bar is required to do by state law here, as opposed to non-sovereign actors merely authorized by the state of Florida to conduct business.

So this is our position, but it is the position that has been announced by the courts of this district. And in the Ramos case, that case was affirmed by the Eleventh Circuit. It was remanded on subject matter jurisdiction grounds. It was remanded on grounds because there was a Rooker Feldman issue that the Eleventh Circuit said should have been dismissed without prejudice instead of with prejudice. So it was remanded only in that respect but not with effect to the state action immunity issues.

Here are the facts in Dental Examiners. And I'm sure the plaintiff will talk about Dental Examiners and how they've changed the landscape. The board issued 47 cease-and-desist letters to folks that were providing teeth whitening services that the dentist said were not the practice of dentistry and were in violation of what they were trying to enforce. They actually sent letters to these people in all caps saying, Cease and desist.

They warned them that the unlicensed practice of dentistry is a crime. And these are just quotes from the Dental Examiners' decision.

They went to another regulatory board, the North Carolina Board of Cosmetic Examiners, to warn them against this providing teeth whitening, and they sent letters to mall operators stating that kiosk teeth whiteners were violating the Dental Practices Act.

There's -- even assuming that The Florida Bar -- for the sake of argument, that The Florida Bar wasn't a sovereign, that The Florida Bar should be treated like just a group of private attorneys who are not supervised, given no direction, and are just running around deciding what is the practice of law, what isn't, sending letters to people, none of that is alleged here.

The Florida Bar, it's alleged, again, conducted U.P.L. investigation, it's alleged that they received and

processed ethics complaints.

And we've looked at the staff advisory opinion. It's not a cease-and-desist letter. It's very qualified and very appropriately measures the bar's authority.

So that was state action immunity, Your Honor.

There's also an absolute immunity argument here with respect to prosecuting U.P.L. issues with respect to doing anything that The Florida Bar does on behalf of the Florida Supreme Court as an arm of the Florida Supreme Court. There's cases that say you get absolute immunity.

The Watson case is a very recent one that I'm quoting from here. They're entitled to absolute immunity when acting as agents of the Florida Supreme Court.

There's also specific rules. For instance, Rule 10-10.1 of the rules regulating The Florida Bar -- and, by the way, all the rules regulating The Florida Bar have been promulgated by the Florida Supreme Court, which provides absolute immunity for U.P.L.-related matters. So anything related to prosecuting or doing the U.P.L. investigation.

THE COURT: Counsel, can you conceive of any manner in which in its present organization that the bar would not be immune from suit --

MR. COX: So if --

THE COURT: -- in the way it's presently organized as an arm of the Florida Supreme Court?

MR. COX: If -- I'm trying to think of a particular rule that hasn't been -- for instance, if there was a rule -- and there has been in the past, and I'm trying to think of one that would be good to challenge now. I can't think of one. But if there was a rule that said you can't -- information that you provide, like an ethics opinion or information about a U.P.L. investigation, if you're the complainant and you receive that information, you're not allowed to disclose that information. And I think that has been found to be a rule that cannot be enforced based on First Amendment reasons.

Likewise, any of the information that the bar provided -- for instance, that staff ethics opinion we just looked at, the bar provided that to the person that requested it. Once it's out of the bar's possession, they can do with it whatever they want without and otherwise. If there was a rule against that, it would be a First Amendment violation.

I'm trying to think of a particular rule that -- without thinking of how to challenge --

THE COURT: So it would have to be something that would be outside its rule-making authority and might constitute maybe a violation of some sort of constitutional right?

MR. COX: Correct. And the Florida Supreme Court, by the way, again, promulgates these rules and passes these

rules. And so if the Florida Supreme Court passed a rule that was a constitutional violation and the bar, of course, simply enforces the Florida Supreme Court rules, then, yes, someone could challenge that and say that violates the First Amendment. I should be able to circulate this ethics opinion. I should be able to tell somebody that I just heard from -- I just learned from the bar that there's a pending U.P.L. investigation. I shouldn't be gagged by that.

So, yes, Your Honor. I don't know if that answers your question directly, but that's the sort of thing where I could imagine a challenge surviving the Eleventh Amendment and all of these various immunities that we're discussing, absolute immunity in particular.

Another form of immunity, Your Honor, is Noerr-Pennington immunity and this does specifically relate to the First Amendment. There's a couple of different flavors of this that apply to this case, Your Honor. If you're going to accept the proposition that The Florida Bar is a bunch of private attorneys unregulated by the Florida Supreme Court but their job is to prosecute U.P.L. or ethics violations in front of the Florida Supreme Court, then that's a petitioning activity that they should be immune for.

Now, we actually think that The Florida Bar is an agent of the state. But if you were to accept the proposition that it's not, I think this conduct would still

be immune under the Noerr-Pennington immunity concept.

Likewise, assuming that The Florida Bar is a state agent or actually even if it's not, when The Florida Bar receives petitions, petitions to the government, it might be a petition in the form of a complaint about a U.P.L. issue or about an attorney ethics issue or about a petition for ethics advice, the bar's response -- those are all protected, and the bar's response to those should similarly be protected, the result of the resulting government action.

And Noerr-Pennington is closely tied to the anti-SLAPP statute, which exists under Florida law and which -- I think in terms of jurisdiction, Your Honor, you've got two claims under federal question and two counts under supplemental jurisdiction. There's a Florida substantive statute that prevents SLAPP lawsuits, and we think that would readily apply to the two state law counts that you have before you.

The SLAPP law prohibits filing suit for exercising a free speech right or petitioning the government.

TIKD's Complaint alleges that they were fed up with the interminable investigation, that shortly before filing their lawsuit they demanded that the bar promptly close this investigation. We think this is directly a suit in response to these sorts of not getting what they wanted, basically.

Abate the ethics complaint proceedings, make

certain public statements.

Again, if the First Amendment is a musical scale, we're hitting a lot of the notes here maybe other than freedom of religion. There's petitioning the government. There's restraint of speech. They ask that the bar not say certain things, that it retract the staff ethics opinion, and that it also make certain statements, basically compelled statements. These all invoke speech protections under the SLAPP statute, and so we think they are all -- certainly we are entitled to the remedies under the SLAPP statute.

Putting those immunities aside, assuming that the bar has no immunity whatsoever, it's not a state agent, there's an entirely lawful explanation for a U.P.L. investigation in response to ethics complaints and inquiry. If that's the bar's job, when people make complaints to the bar, when people make complaints about U.P.L. or attorneys or the people ask for ethics opinion, the bar responds. And what these allegations are are that the bar did these things.

The -- and if you look and you think about the standards on a motion to dismiss, under Iqbal and Twombly, that if there's an obvious lawful explanation for all of this, you should accept that rather than inferences asked for by the party that believes it's being grieved by things that could simply be explained by the bar doing its job.

We've also at the end of our motion also explained

some concerns we have with other just simple pleading defects. When you look at how an antitrust claim must be framed, you have to allege a proper relevant market. You have to allege an unlawful monopoly.

The allegation here is that the bar is interfering with the market for access to legal services and that the bar somehow has control over that because the bar is made up of all the lawyers who are required to be members of the bar of the state, and therefore somehow the bar is a monopoly or somehow otherwise able to control or exclude participation in these markets. You have to allege a dangerous probability of success. You have to allege a specific intent to monopolize.

We just -- none of these arguments really make sense. When you're looking at a state agency which performs very specific functions at the direction of the Florida Supreme Court, and all of which are the types of conduct that are alleged in this Complaint and are entirely lawful and don't really -- it just doesn't kind of quite fit for what they're trying to accomplish, which is turning a disappointment in the result in the ongoing proceedings in a U.P.L. proceeding into an antitrust claim.

Finally, Younger abstention, Your Honor. Younger abstention -- when you have a matter that is ongoing in state court -- and here we have a U.P.L. proceeding that is before the Florida Supreme Court and TIKD alleges that and Your

Honor has taken judicial notice of that proceeding, that it's ongoing -- we think that fundamentally one of the issues in this case is going to be whether TIKD is or not engaged in U.P.L.

If they are engaged in U.P.L., it's going to be difficult for them to show that they were harmed by engaging in an unlawful activity. In any event, there's so many intertwined issues going on here that the Florida Supreme Court has before it, we think this Court should abstain or at least abate this case until those issues are resolved.

And in terms of the status of it, right now it's been appointed to a referee who will be doing a report of some form to the Florida Supreme Court, potentially after discovery, potentially on dispositive motions in that proceeding, and then the Florida Supreme Court will have an opportunity to hear full argument and TIKD will have full opportunity to be heard and due process in terms of how that proceeding unfolds.

So we think that's something that the Court really shouldn't be moving forward on this case while the Florida Supreme Court is still addressing those issues.

THE COURT: Let me hear from the counsel for the plaintiff.

MR. KENNEDY: Your Honor, good afternoon. I appreciate the opportunity to appear before the Court, having

come here from Texas.

The argument that the Court just heard regarding the bar's immunity as an entity from any antitrust case is 180 degrees opposite from what the Florida state bar itself told the United States Supreme Court in the North Carolina Dental Examiners case.

To back up just a bit, the Dental Examiners case is an antitrust suit that was brought by the F.T.C. against a regulatory board that regulated dentists, structured similarly in North Carolina to the way the bar is structured, which regulates lawyers.

The dental board did not like that non-dentists were engaged in teeth whitening and it went out -- without filing a lawsuit in court, it went out and essentially chased away all of the non-dentist teeth whiteners from malls and other locations. They were sued by the Federal Trade Commission for having violated the Sherman Act, for having chased away competition in the market for dental services.

The Federal Trade Commission found that they had violated antitrust laws and the dental board appealed to the Fourth Circuit and said, among other things, we're immune because we're an arm of the state. We're immune because our activity chasing away competition from dentists is an action of the state. So under the Supreme Court's precedent, under Parker and Midcal, we're immune from antitrust liability.

The Fourth Circuit said, no, you're not because it applied the Midcal test. And Midcal is a test that was developed concerning agencies very much like the Florida state bar, which are delegated governmental authority but they are made up of participants in a market. And under the Sherman Act, if participants in a market gather together and decide to exclude competitors, they can be held liable for what's called a concerted refusal to deal. That was the F.T.C.'s allegation against the Dental Examiners and they claimed they were immune.

When the Fourth Circuit said no, in order to be immune, you have to show two things. One is you have to show that the anticompetitive action that you were doing is pursuant to a clearly stated state policy, and you have to show that your actions were actively supervised by the state.

All right. And the Dental Examiners couldn't show either of those things and so the Fourth Circuit said you do not have Parker immunity.

THE COURT: Why should I look to cases about this particular board where it appears that there are many Eleventh Circuit cases that discuss The Florida Bar and The Florida Bar having immunity? Don't we look at other circuits when we don't have law in our own circuit in order to look to as a trial court for guidance? But I don't have that here.

I mean, the Eleventh Circuit has many, many cases

where they discuss the state bar and immunity.

MR. KENNEDY: Well, they have some and there's two types of immunity. What we do have is a very recent U.S. Supreme Court case, the North Carolina Dental Board case, which the Florida Supreme Court itself said that if the Fourth Circuit decision wasn't overturned, then it would be subject to antitrust liability.

In an extensive amicus brief, what they told the Supreme Court is if that Fourth Circuit decision wasn't overturned, state bars will have to defend expensive antitrust actions. Lawyers will be reluctant to serve. They went at length and argued that because the state bar is structured like the dental board, it's captured by market participants, that if it had to meet the standard, then it would be subject to the type of lawsuit that TIKD brought.

What the Court won't find in looking at any cases past the Dental Examiners is that there were any suits actually walking through the Midcal test or saying that The Florida Bar is somehow excused from them.

The cases that the bar is relying on are a narrow set of lawsuits -- I think the Court has seen some of these -- which are brought by lawyers who are disgruntled about individual disciplinary actions. That's what Kaimowitz was.

THE COURT: Well, shouldn't you at least then wait?

I mean, that's one of the arguments that defendants make is you're now in the middle of this unlawful practice of law investigation.

MR. KENNEDY: Right.

THE COURT: That if, if you were to have the ability to access to the court, it would be after there was some sort of ruling. You have no ruling here. You have what you think might happen and what you think may be the result, but asking me to tell the bar to stop doing something they haven't even finished or haven't technically done yet.

MR. KENNEDY: Well, that's why we have carefully pled this case, Your Honor, because we were aware of these issues. And here is the reason we came to court now, Your Honor, is because the focus of this lawsuit isn't the fact that the bar is conducting an investigation, and the focus of the lawsuit isn't the fact that the bar filed a lawsuit, which will be decided by the Florida Supreme Court. The problem is the bar didn't stay on the tracks it was supposed to stay on during its investigation.

And what we've pled and what we've learned more about in discovery is instead of just doing what it was supposed to do, which is investigate and then file a lawsuit if it found probable cause to file a lawsuit, it issued a written ethics opinion at the request of a competitor of TIKD that is clearly interpreted by TIKD's cooperating lawyers as

saying that if you work with TIKD, you will face grievance.

THE COURT: But if you are using the opinion that was issued August 29th, 2017, how could that be the basis for the lawsuit, given what's actually stated in the answer to the question, where the bar itself says advisory opinions are intended to provide guidance to the inquiring attorney and are not binding?

MR. KENNEDY: And that's right. They're not binding, but, Your Honor, we have pled both facts and logic that lawyers comply with ethics opinions that are issued by bars, even when they're non-binding, and there is direct authority that non-binding ethics opinions can violate the Sherman Act. We've cited these cases. Again, these are cases that this lawsuit is modeled on.

The first one is Goldfarb versus the Virginia State Bar. And in Goldfarb, there was a local voluntary bar association that had set minimum prices. And then the state bar issued an ethics opinion saying that if you are a lawyer and you don't follow the minimum price guidelines that are recommended by this local bar association, then that's an ethics violation. So it was a non-binding ethics opinion that had anticompetitive impact on the market. It set the prices.

And the Virginia bar was sued for violating the Sherman Act and the Supreme Court said, yes, The Florida Bar

-- I'm sorry -- the Virginia bar violated the Sherman Act by issuing an ethics opinion that told lawyers they could be held liable if they don't follow the minimum guidelines, and the minimum guidelines were anticompetitive.

There's an exact parallel in this case. Instead of just doing its investigation behind closed doors, as they are done, the bar told all the lawyers that it jumped the gun. It didn't wait. It gave an opinion that was clearly interpreted by lawyers as saying that working with TIKD was unethical and chased away a large number of lawyers who were willing to represent TIKD's customers. That's the anticompetitive impact.

It came from an ethics opinion which was issued by the bar. Now, we allege -- and this is briefed more in later briefing, but both that the ethics opinion shouldn't have issued at all because there were pending grievances and the U.P.L. action in the same manner, and the board's own rules say don't issue ethics opinions when a matter is under investigation. And because the opinion covered the unauthorized practice of law and there's a whole separate set of rules that governs when The Florida Bar can issue a U.P.L. opinion, those rules were not filed -- followed.

So there's clear case -- and in addition to the Goldfarb case, there are a number of other cases involving professional associations. These are Supreme Court cases.

The National Society of Professional Engineers, the American Society of Mechanical Engineers, these professional associations issues ethics opinions that have an anticompetitive impact that state Sherman Act claims.

So the reason that we brought the suit wasn't because we were being investigated. We cooperated with the investigation. We're participating in the lawsuit in defending our position that we're not engaged in U.P.L.

But the damage that was being done and has been and continues to be done is the fact that the bar has an opinion out there that lawyers are relying on that has an anticompetitive impact. They have jumped the gun and essentially usurped the Florida Supreme Court's authority.

So we're not here to ask the Court to take over from the Supreme Court and make its decision, but this action is intended to protect the Supreme Court's authority to make the decision so that the bar isn't stepping outside its own rails in making that decision for us. This is the kind of thing that could kill a small company at the beginning when you never have a chance to go to the actual authority who's going to say whether you are or aren't in compliance with state law.

The focus on the ethics opinion and oral statements that have been made that track the ethics opinion or worse shows that the bar has stepped outside the immunity that it

claims. Under state action immunity, it's outside the immunity because it can't show any active supervision over that activity. It can't show that the Supreme Court reviewed, the Supreme Court approved or the Supreme Court had the ability to veto that staff opinion or oral statements.

That's required by Midcal and by Parker and the North Carolina Dental Board case. It's got to be actively supervised by the state. The state can't just hand over its authority to a group of market participants without supervising how they exercise that authority.

It also steps outside Eleventh Amendment immunity because it's clear now from the Supreme Court and from multiple Eleventh Circuit cases that Eleventh Amendment immunity is not a broad brush if you are a -- if you're characterized in a certain way, then you have immunity from any type of suit.

The key case that the bar ignores -- again, a Supreme Court case -- is McMillian versus Monroe County. This came down in 1997, and the Supreme Court made it clear that the question of Eleventh Amendment immunity and whether an agency is or isn't an arm of the state is not answered in some categorical all-or-nothing manner. You don't just get a rubber stamp that says arm of the state. Do whatever you want.

The Kaimowitz case that the bar cites and still

depends on was decided in 1993, four years before McMillian made it clear that it is not some categorical immunity.

And the Eleventh Circuit in Manders took this issue up in 2003 and decided this en banc, the issue about when an agency claims it has Eleventh Amendment immunity, when it is entitled to it. And it made it very clear it's a four-part test. Again, the bar doesn't mention anything about Manders in the four-part test in its argument, and only the first part of the test is how state law defines the entity.

So once state law says, well, we consider this an arm of the Supreme Court, that's the beginning, not the end now of the Eleventh Amendment test.

There's three other factors. What degree of control the state maintains over the entity, very similar to Parker immunity question, state action question: Is there control over this entity by the state? And then it also looks to the issue of money, because at the bottom line, the Eleventh Amendment really is about suing the state for money in federal court.

So the second -- the third part is: Where does the entity derive its funds? And then who would be responsible for a judgment against the entity? And The Florida Bar fails all three of those elements.

For the actions at issue in this lawsuit, it doesn't have any control by the state. We talked about that.

It's not supervised or controlled. It derives its funds not from taxpayers but from members. Then who's responsible for the judgments? The judgment here would be satisfied by The Florida Bar.

In another case that the bar ignores, Your Honor, is Nichols versus Alabama State Bar. So the Eleventh Circuit has looked at this issue, the Eleventh Amendment immunity as applied to state bars. It looked at it with regard to the Alabama State Bar.

In that case was one of these kind of nutty pro se 1983 actions that the lawyer was complaining about disciplinary action that the Alabama State Bar took against that says the lawyer wasn't granted due process.

But the Nichols court, the Eleventh Circuit goes through the Manders four-part test and at the end says as to the disciplinary action being taken against the lawyer, it has immunity.

But the court won't find any of these cases dealing with a claim that a bar has abused its authority with regard to competition. Not that it's disciplining a lawyer or disciplining a judge under authority given to it, but where it's doing what it is here, which is excluding competitors from the marketplace.

And as to the question of whether Manders, the four-part test abrogated Kaimowitz, the Eleventh Circuit got

about as close as you could hope in answering that question in Walker versus Jefferson County Board of Education. In that case, the Eleventh Circuit was facing a district court that had followed a Fifth Circuit case called Huber and Hunt which had granted immunity based on the first part, simply the designation of the entity as a state agent.

And what the Eleventh Circuit said in Walker is to the extent Huber held that Eleventh Amendment immunity is governed solely by how state law characterizes an entity, it has been superseded by the later en banc decision in Manders.

And then to reinforce that, the Supreme Court -- I'm sorry -- the Eleventh Circuit said in Lake versus Skelton, just in 2016, In Manders, we established a single test to determine when an office or entity acts as an arm of the state. A single test, and the single test is the Manders or Walkers test, which has four elements to it, only the first of which the bar even argues, let alone satisfies.

Now, there are unpublished Eleventh Circuit decision cases that still cite Kaimowitz. The Court will find that all of those have to deal with lawyers complaining about discipline, which is a core function of the Florida state bar. And our position -- well, we don't take a position as to where that ends up on the Eleventh Amendment immunity scale, but it certainly is distinguishable here.

For the same reason, the bar's argument that

they're entitled to absolute immunity, which I don't find actually in their motion to dismiss, it's an argument they raise in the summary judgment motion, but absolute immunity is a common law doctrine that protects agencies or individuals when they are acting as a prosecutor or acting as a judge or similarly acting as a prosecutor or a judge.

So the bar can't claim absolute immunity when it steps outside the path of authority that's given to it as an investigator or -- well, really as an investigator and then as a party, as a prosecutor to file a U.P.L. action.

So the focus on what our claims are about and what our claims are not about determines whether or not the bar can claim any of those immunities.

I'll address ex parte Young briefly. Ex parte Young is a long-standing doctrine of the Supreme Court that allows a lawsuit for injunctive relief against state agencies even when they may be immune from damages.

We don't agree that a request for injunctive relief is moot because as long as the Supreme Court case is pending and it hasn't issued an opinion, we don't know what the bar is doing. As far as we know, the bar is continuing to answer hotline calls and tell lawyers who are calling up that TIKD is engaged in U.P.L., and if you work with TIKD or you represent its customers, you're going to be grieved against. So we do have a live request for injunctive relief to stop

that from happening.

We also have a live request for affirmative injunctive relief to ask the bar to make clear that it does not have the authority to make the decision as to whether TIKD is or isn't engaged in U.P.L., which we think the ethics opinion clearly stated; and we have an injunctive -- a request for injunctive relief to have them withdraw the ethics opinion, because our contention is that ethics opinion is in violation of the Sherman Act. So we think there's clearly a ripe issue for injunctive relief.

Noerr-Pennington is an immunity doctrine unique to antitrust cases. It does arise out of the First Amendment right to petition, but it involves either petitioning the government -- petitioning the government to take some action, which might be anticompetitive, or filing a lawsuit, which itself might result in anticompetitive consequences. In this case, we're not talking about the defendant here, the bar petitioning the government. The defendant's problem here is it is speaking out to the members and telling them not to do business with us.

And then, again, the broader request for abstention because of the U.P.S. case we think is a red herring. The problem with what the bar is doing isn't resolved after the lawsuit. The problem is now, which is they have exceeded the authority that they're granted under state law. They have

violated the Sherman Act by issuing the opinions and then answering questions over the phone from lawyers in a way that has chilled competition in the marketplace, and where they're entitled to a remedy now because this is when the problem occurs. It isn't something that's going to be solved after the Supreme Court rules.

Then just briefly on the sort of nits on the quality there on the pleading, we've cited this and we've cited the case law, both under Section 1 and Section 2. We think we've clearly stated a claim, satisfied Rule 11 -- or Rule 8 and Iqbal and Twombly. There are a series of cases which hold that bar associations alone, not even conspiring with outsiders but professional associations alone are themselves a combination in restraint of trade. They're well recognized as concerted refusal to deal cases.

F.T.C. versus Superior Court Trial Lawyers Association is a good example, where all the trial lawyers got together in D.C. and decided not to take any more appointed cases because the rates were too low. They all got together. They decided not to deal with the court system. They were found to have violated the federal antitrust laws.

And then the same for Goldfarb. The only defendant in Goldfarb or at least the sufficient defendant in Goldfarb was the Virginia State Bar, and its issuance of the ethics opinion that told lawyers they had to charge a minimum rate

was a per se violation of the Sherman Act.

So we think, Your Honor, our case stands on very well-trod grounds, not just on what the Supreme Court said in the Dental Examiners case, but also what it said in Goldfarb and also what it said in earlier cases involving professional associations that told their members to behave in anticompetitive ways.

And that's all we're at. We think the standard is low. We think we pled a very detailed and specific Complaint. We think we focused on things that are outside of the state bar's immunity.

And just in closing, the Court, I would recommend as reading the state bar's own amicus brief before the U.S. Supreme Court in the Dental Board case because they argue my case better than I do in explaining to the court what the consequences would be or could be if the Fourth Circuit wasn't overturned. They made those arguments, but they lost and now they're in front of this Court, simply ignoring that decision and saying, Oh, well, we still have blanket immunity under these other decisions.

The case law simply does not support their argument when it comes to this type of anticompetitive conduct directed at competition in the marketplace as opposed to specific disciplining of lawyers.

If the Court has any further questions?

THE COURT: No. I'm fine. Thank you very much, counsel.

MR. KENNEDY: Thank you.

MR. COX: Your Honor, may I have a short rebuttal?

THE COURT: Very, very short, counsel.

MR. COX: Very short, Your Honor. Quickly, on the amicus brief, the amicus brief did argue that, depending on how the Dental Examiners decision came out, that could provoke expensive litigation against bars. And this is an example, although I think the decision -- I think the amicus brief alerted the Court to the sensitivities, and as a result, Dental Examiners is very -- it really defines the facts very well and it explains it doesn't apply to non-sovereigns. And I think that's why The Florida Bar shouldn't be here. But it's certainly an issue that extended an invitation to some plaintiffs to bring these cases.

The Eleventh Amendment didn't apply in Dental Examiners. It was an F.T.C. case. So there was no Eleventh Amendment issue to be concerned with.

The bar has stayed on the tracks. Discovery -- we're not going to talk about discovery, but just my comment on that is that discovery has borne that out.

We have specific Florida Supreme Court rules that are embedded in that staff opinion. If you review that staff opinion, we have -- we are required to provide those staff

opinions under the circumstances we did.

When an attorney seeks guidance on whether to -- it would be a violation to work or ethics issues would arise from working with another company, The Florida Bar can give guidance on that conduct even though the company can be separately subject to a proceeding. That's not how -- the way that TIKD asks you to read the rule is that no attorney could ever get guidance on anything involving that company. That's not how the rule works or how the rule reads.

In Goldfarb -- we heard several times about Goldfarb. In Goldfarb, there were minimum fee schedules that a local private bar association had promulgated. They were not endorsed, approved, created, promulgated by the Virginia Supreme Court or any other sovereign. And the Virginia bar -- and maybe this goes to your example. The Virginia bar did -- and I guess if there was such a minimum fee schedule in Florida and The Florida Bar said this would be an absolute ethical violation if you violate the Tallahassee Bar Association's minimum fee schedule, okay. Well, I guess that would be square on Goldfarb. That's not what happened here.

The Florida Bar said these are a series of rules that apply to the types of question, ethical question you're raising. Not all of them involve U.P.L., by the way. Some of them involve fee splitting, obtaining clients from unregulated advertisers and others that typically come up in

business arrangements with non-lawyers. The Florida Bar simply cited those rules, made its recommendation based on those rules, and as we saw, said we can't answer the U.P.L. question. We can't answer the question that TIKD says The Florida Bar answered.

We're not a private trade association. The Florida Bar is not. We've heard a lot of comparisons to trade associations, private entities that make default sort of standard setting, and that that can be harmful in the market. The Florida Bar is not a private trade association and the, quote, unquote, standards that it is quoting are rules set forth by the Florida Supreme Court.

The McMillian case is similar to the Manders case. It also came after Kaimowitz and it also has existed during the course of all of these other Eleventh Circuit opinions that have addressed those factors.

I think those Eleventh Circuit opinions make clear that we don't have to do this Manders analysis; but if the Court wants to hear my version of those factors, we're happy to give it. But I'll keep moving otherwise.

On absolute immunity, I think we do think that the conduct -- I guess the conduct alleged here is that we're committing antitrust violations, but the way we are doing it is through these communications related to U.P.L. and other things that receive absolute immunity. So I don't think you

can get outside of absolute immunity by saying it's an antitrust violation when all of the conduct involves things that are entitled to absolute immunity.

I know you wanted me to be brief, and I think I've covered it, but I'm happy to answer any other questions you have, Your Honor.

THE COURT: Thank you.

I agree with the defendants in this case. Whatever room was left for any sort of argument about whether or not state bar associations might not be subject to immunity from the recent Supreme Court decision don't factually meet this case. And when you look at the plethora of Eleventh Circuit decisions that talk about whether or not the state bar enjoys immunity to prosecution, under the constitutional amendment it's here. I mean, we've had them as recently as 2017 stating that The Florida Bar is immune from suit. There is nothing in this case that makes me think otherwise, given the long line of decisions to the contrary in the federal court.

The defendant's motion to dismiss the Complaint is granted and any pending motions are denied as moot.

Thank you, counsel.

(Proceedings concluded at 2:17 p.m.)

\- - - - - - - -

Reporter's Certification

I certify that the foregoing is a correct transcript from the

record of proceedings in the above-entitled matter.

s/Diane Peede, RMR, CRR, CRC
Official Court Reporter
United States District Court
Date: October 23, 2018 Southern District of Florida